UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| INTERNATIONAL SALT COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Docket No.05-cv-10921-RGS |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF BOSTON, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CITY OF BOSTON STATEMENT OF
UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1**

Pursuant to Local Rule 56.1, Defendant City of Boston ("the City") submits the

following statement of undisputed facts in support of its motion for summary judgment.

**UNDISPUTED MATERIAL FACTS**

1.      ISCO imports and sells rock salt and solar salt it purchases from Sociedad Punta

de Lobos ("Sociedad"), a Chilean-based holding company that has been servicing the

United States, South America and the Far East with salt products for nearly twenty-five

years. (ISCO's Complaint ¶ 6)(See attached hereto as Exhibit A).

2.      The City, acting through its Purchasing Agent with the approval of the Mayor,

issued request for bid No. 1253 for the supply of 75,000 tons of sodium chloride bulk

Rock Salt to the City from October 2004 through June 2005.  (City of Boston Contract

No. 15878-05) (See attached hereto as Exhibit B).

3.      ISCO was the lowest responsible bidder for the contract with the City, No. 1253

(ISCO's Complaint ¶ 8) (Exhibit A).

4.      On or about October 20, 2004, the City approved and the parties executed the City of Boston Contract No. 15878-05 "the Contract".  (City of Boston Contract No. 15878-05) (Exhibit B).

5.      The Contract required ISCO to deliver to the City an estimated 75,000 tons of Rock Salt at $36.42 per ton for a total contract price of $2,731,500.00 between October 1, 2004 and June 30, 2005.  (City of Boston Contract No. 15878-05 Standard Contract Form CM 10 and 11) (Exhibit B).

6.      The Contract stated "PRICE WILL BE HELD FOR THE TERM OF THE CONTRACT AND SHALL NOT BE LIMITED TO THE ESTIMATED NUMBER OF ITEMS." (City of Boston Contract No. 15878-05, Pricing Section page 1) (emphasis in original) (Exhibit B).

7.      On February 7, 2005, ISCO informed the City that because of a substantial increase in ocean freight, ISCO would be required to raise its price to $42.36 per ton for any shipments above 75,000. (Faxed letter from Daniel Thompson, ISCO's Vice President of Highway Bidding and Sales; Letter dated April 20, 2005 from William Hannon, Purchasing Agent, in response to Attorney Neil Epstein's letter dated February 15, 2005) (See attached hereto as Exhibit C and Exhibit D).

8.      On February 8, 2005, Vincent Caiani, Assistant Purchasing Agent for the City, and William Hannon, Purchasing Agent for the City, telephoned Daniel Thompson, ISCO's Vice President for Highway Bidding and Sales, Caiani and Hannon explained that the City did not have authority under the law to change the contract price pursuant to G.L. c. 30B and the City of Boston Charter.  (Letter dated April 20, 2005 from William

Hannon, Purchasing Agent, in response to Attorney Neil Epstein's letter dated February 15, 2005) (Exhibit D).

9.      The City informed ISCO that the quantity of Rock Salt listed as 75,000 tons in the Contract was an estimate made for bidding purposes.  (Letter from William Hannon, Purchasing Agent for the City, to Robert Jones, CEO of ISCO, dated February 10, 2005) (See attached hereto as Exhibit E).

10.     The City informed ISCO that pricing was to remain fixed throughout the term of the Contract, from October 1, 2004 through June 30, 2005. (Letter from William Hannon, Purchasing Agent for the City, to Robert Jones, CEO of ISCO, dated February 10, 2005; City of Boston Contract No. 15878-05, Pricing Section page 1) (See Exhibit B and Exhibit E).

11.     In a letter dated February 10, 2005, ISCO offered to provide Rock Salt to the City in excess of the 75,000 tons for an undetermined price.  (Letter from Robert Jones, CEO of ISCO, to Commissioner Casazza) (See attached hereto as Exhibit F).

12.     ISCO offered to enter into a separate contract with the City for the supply of additional Rock Salt at the price of $42.36 per ton.  (Letter dated February 18, 2005 from Robert Jones, CEO of ISCO, to William Hannon, Purchasing Agent for the City, in response to Hannon's letter dated February 10, 2005). The parties did not enter into an additional contract. (See attached hereto as Exhibit G).

13.     As of March 31, 2005, ISCO delivered a total amount of 102,021.84 tons of Rock Salt.  (Letter from Attorney Neil Epstein dated April 15, 2005) (See attached hereto as Exhibit H).

14.     The City repeatedly and explicitly made its position clear that the Contract price was to remain fixed throughout the term of the Contract from October 1, 2004 through June 30, 2005. (Letter dated April 20, 2005 from William Hannon, Purchasing Agent for the City, in response to Attorney Neil Epstein's letter dated February 15, 2005) (Exhibit D).

15.     The City paid the total amount of $3,748,688.01 at the agreed upon amount of $36.42 per ton for the total amount of Rock Salt provided by ISCO.  The City has paid the Contract in full. (The City's Detailed Payment History By Vendor page 8) (See attached hereto as Exhibit I).

16.     ISCO now demands an additional payment from the City in the amount of $538,650.00 regarding the $56.37 price per ton or $160,380.00 regarding the $42.36 price per ton.

Respectfully submitted,

DEFENDANT, CITY OF BOSTON
By its attorneys:

William F. Sinnot
Corporation Counsel


/s/ Anouk Danan
Anouk Danan, BBO# 657821
Assistant Corporation Counsel
Scott C. Holmes, BBO# 544545
Senior Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
617.635.4034

Dated:  October 4, 2007

## <u>CERTIFICATE OF SERVICE</u>

I, Anouk Danan, certify that on this 4th day of October, 2007, a copy of the foregoing was served via the court's electronic service upon all counsel of record.

<div align="center">

/s/ Anouk Danan
Anouk Danan

</div>

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

FILED
CLERKS OFFICE

# 05 10921 RGS

2005 MAY -4 P 12: 27

U.S. DISTRICT COURT
DISTRICT OF MASS.

INTERNATIONAL SALT COMPANY, LLC,    :

       Plaintiff,    :    Civil Action No. _____

                     :

       v.    :

CITY OF BOSTON,    :

       Defendant.    :

                     :

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

Plaintiff International Salt Company, LLC ("ISCO") and the City of Boston ("the City") entered into a written contract pursuant to which the City agreed to purchase and ISCO agreed to deliver 75,000 tons of sodium chloride rock salt at the price of $36.42 per ton for a total contract price of $2,731,500. However, in response to a series of snow emergencies over the winter of 2004-2005, the City demanded delivery of approximately 27,000 tons in excess of the contract amount after ISCO informed the City that it would be unable and unwilling to adhere to the original contract price for the excess amounts due to rising supply and shipment costs.

ISCO now brings this action for declaratory relief and damages arising out of the City's breach of an implied contract and/or the City's unjust enrichment because the City now refuses to pay fair market price for quantities of rock salt which ISCO delivered in excess of the contract quantity.

{K0302266.1}

## THE PARTIES

1.      ISCO is a Delaware limited liability company, having its principal place of business at 655 Northern Boulevard, Clarks Summit, Pennsylvania 18411-0540.

2.      The City is a body politic and corporate entity, existing under the laws of the Commonwealth of Massachusetts and is located in Suffolk County, Massachusetts.

## JURISDICTION AND VENUE

3.      The City is incorporated and organized under Massachusetts General Law ("M.G.L.") chapter 39, chapter 40, and Article II of the Massachusetts Constitution and may be sued in its corporate capacity pursuant to M.G.L. c. 40 § 2.

4.      Jurisdiction is proper pursuant to 28 U.S.C. §1332 because ISCO and the City are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.  Pursuant to 28 U.S.C. § 1332(c)(1), ISCO is deemed to be a citizen of Pennsylvania and Delaware, and the City is deemed to be a citizen of Massachusetts.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

6.      ISCO imports and sells rock salt and solar salt that it purchases from Sociedad Punta de Lobos ("Sociedad"), a Chilean-based holding company that has been servicing the United States, South America and the Far East with salt products for nearly twenty-five years.

7.      The City, acting through its Purchasing Agent with the approval of its mayor, issued request for bids No. 1253 for the supply of 75,000 tons of sodium chloride bulk rock ("Rock Salt") to the City.

8.    ISCO was the lowest responsible bidder for a bid/contract with the City, No. 1253 ("the Contract").

9.    On or about October 27, 2004, the Contract was approved and executed by the parties. A true and correct copy of the Contract is attached hereto as Exhibit A.

10.    The Contract expressly obligates ISCO to supply a fixed amount -- 75,000 tons -- of Rock Salt to the City at the price of $36.42 per ton for a total contract price of two million seven hundred thirty-one thousand five hundred dollars and no cents ($2,731,500.00).

11.    Prior to its receipt of the full amount established by the Contract, the City experienced a series of extraordinary snow storms. In response, the City advised ISCO by letter and telephone calls that the City would require more than 75,000 tons of Rock Salt.

12.    In response, ISCO notified the City orally and by two letters that the Contract established a fixed amount of Rock Salt to be delivered by ISCO to the City.

13.    ISCO also informed the City that, to the extent the City requested deliveries of Rock Salt in excess of 75,000 tons, ISCO would deliver such additional amounts of Rock Salt at its then-prevailing fair market value.

14.    The City did not respond to either of ISCO's letters.

15.    On February 10, 2005, ISCO's chief executive officer, Robert Jones, and the City's Commissioner of Public Works, Joseph Casazza, held a telephonic conversation. Jones and Casazza discussed an impending snowstorm predicted to hit the New England region, during which conversation Casazza expressed the City's immediate need for additional amounts of Rock Salt. Because ISCO appreciated the City's situation, ISCO agreed to accommodate the City by delivering Rock Salt to the City in excess of the contractually-established 75,000 tons,

while reserving all of ISCO's rights regarding the amount and price of the shipments in excess of 75,000 tons.

16.     After receipt of ISCO's letters and the February 10, 2005 telephone conversation between Jones and Casazza, the City placed additional orders with ISCO for amounts of Rock Salt in excess of 75,000 tons.

17.     By placing orders in excess of contractually-established tonnage, the City implicitly agreed to pay the fair market value for any amounts of Rock Salt in excess of 75,000 tons.

18.     As of March 31, 2005, ISCO had delivered to the City quantities of rock salt totaling 102,021.84 tons.

19.     As of March 31, 2005, ISCO supplied the City with 27,021.84 tons of rock in excess of the original contract amount.

20.     During the time period in which ISCO delivered the additional 27,021.84 tons of Rock Salt, the average fair market value of Rock Salt in the Boston area was $56.37 per ton.

21.     On information and belief, the fair market value of Rock Salt in the Boston area rose during the late 2004-early 2005 period due to the economics of short supplies, and high demands resulting from extraordinary snow falls and dramatic increases in supply costs and shipping expenses.

22.     Accordingly, the total amount due and owing from the City to ISCO for the additional 27,021.84 tons of Rock Salt is $1,523,221.10.

23.     To date, the City has submitted payment only in the amount of $591,028.86 for the additional 27,021.84 tons of Rock Salt.

{K0302266.1}                                    4

24.     Consequently, the total principal amount due from the City to ISCO is $932,192.30, plus interest.

25.     The General Laws of Massachusetts require that in all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent (12%) per annum from the date of the breach or demand.

26.     The agreement between the parties does not establish an interest rate for late payments.

### FIRST COUNT
### (Breach of Contract)

27.     ISCO hereby incorporates by reference as though fully set forth herein the averments of paragraphs 1 through 26 inclusive.

28.     The parties' express or implied contract regarding quantities in excess of 75,000 tons of Rock Salt constitutes a valid and enforceable contract between ISCO and the City.

29.     The City has failed and refused to perform as required under the contract and has materially breached the contract by failing to pay the fair market value of tons of Rock Salt in excess of 75,000 tons, which the City purchased from ISCO.

30.     ISCO has performed its obligations under the Contract, and all conditions precedent necessary to bring this action have occurred.

31.     As a direct and proximate result of the City's breach of contract, ISCO has been harmed.

WHEREFORE, plaintiff International Salt Company, LLC respectfully requests judgment in its favor and against the City of Boston in such amount as the Court deems

appropriate, plus the statutorily-prescribed rate of twelve per cent (12%) per annum from the date of the breach or demand, costs and such other relief as the Court deems equitable, just and proper.

## SECOND COUNT
### (Quantum Meruit / Unjust Enrichment)

32.    ISCO hereby incorporates by reference as though fully set forth herein the averments of paragraphs 1 through 31 inclusive.

33.    As described above, ISCO conferred certain benefits upon the City, including, but not limited to, providing Rock Salt to the City in excess of the amount that ISCO was contractually required to do, and for a price that was below the fair market value of such Rock Salt.

34.    The City appreciated or knew of these benefits.

35.    The City accepted and retained these benefits.

36.    The City has failed and refused to compensate ISCO by remitting the fair market value for the benefits that ISCO conferred upon the City.

37.    Based upon the foregoing circumstances, it would be unjust for the City to accept and retain the benefits provided by ISCO without payment of value to ISCO of the fair market value of the Rock Salt provided to the City.

38.    As a direct and proximate cause of the City's unjust enrichment, ISCO has been damaged, including the foregoing reasonable value for the benefits conferred upon the City.

WHEREFORE, plaintiff International Salt Company, LLC respectfully requests judgment in its favor and against the City of Boston in such amount as the Court deems appropriate, plus the statutorily-prescribed interest rate of twelve per cent (12%) per annum from

the date of the breach or demand, costs and such other relief as the Court deems equitable, just and proper.

### THIRD COUNT
#### (Declaratory Judgment)

39.    ISCO hereby incorporates by reference as though fully set forth herein the averments of paragraphs 1 through 38 inclusive.

40.    By delivering 75,000 tons of rock salt to the City at the price set forth in the Contract during the term of the Contract, ISCO fulfilled its contractual obligations to the City.

41.    For the amounts of Rock Salt in excess of 75,000 tons that were ordered by the City and delivered by ISCO, the City has refused to negotiate or pay any price other than the price set forth in the Contract.

42.    ISCO's delivery of Rock Salt in excess of 75,000 tons requires that ISCO be granted relief under the doctrine of equitable adjustment, as there would be a total inequity in enforcing the price per ton set forth in the Contract for deliveries of Rock Salt in excess of the 75,000 quantity established by the Contract.

43.    It would be inequitable for ISCO to be required to supply an open-ended amount of Rock Salt at the price stated in the Contract for 75,000 tons, as the City suggests by its interpretation of the Contract.

44.    As a result of a series of abnormal snow falls occurring in Eastern Massachusetts during the 2004-2005 Winter, the City faced emergency threats to public health or safety which justified it in deviating from strict compliance with Massachusetts General Laws Chapter 30B with respect to purchases of rock salt from ISCO.

45.     Under the circumstances herein described, the City was legally authorized to pay amounts in excess of the original contract per unit price for purchases in excess of 75,000 tons of rock salt.

46.     There is an actual controversy regarding ISCO's rights pertaining to its shipment of Rock Salt in excess of the contractually-required amount of 75,000 tons.

47.     The Court has the power to determine and declare the parties' respective rights, responsibilities, status, or legal relations under the Contract, pursuant to 28 U.S.C. §§ 2201-02.

WHEREFORE, plaintiff International Salt Company, LLC, demands judgment against defendant City of Boston:

A.     declaring that ISCO's obligations under the Contract were limited to the delivery of 75,000 tons of Rock Salt;

B.     declaring that the price per ton of all deliveries of Rock Salt to the City in excess of 75,000 tons shall be at the price of $56.37 per ton, which represents the fair market value of such rock salt; and

C.     awarding to ISCO all costs of this lawsuit and such other and further relief as the Court may deem just and equitable, including the statutorily-prescribed interest rate of twelve per cent (12%) per annum from the date of the breach or demand.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Respectfully submitted,

INTERNATIONAL SALT COMPANY, LLC

By its attorneys,

By: _____
Bruce W. Edmands, Esquire (BBO #151360)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
One International Place, 18th Floor
Boston, MA 02110
(617) 342-6800
(617) 342-6899 (facsimile)

Date: _MAY 4, 2005_

_Of Counsel:_

Neil G. Epstein, Esquire
Brad P. Bender, Esquire
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1515 Market Street, 9th Floor
Philadelphia, PA 19102
(215) 851-8400
(215) 851-8383 (facsimile)

_K0302266.DOC_



**Thomas M. Menino, Mayor**

## City of Boston
## Purchasing Division
## Approved/Executed Contract

Date: __10/27/04__

Enclosed is your approved/executed copy of the purchase contract number __15878-05__

with the City of Boston for the furnishing of __Road maintenance salt__

to the __VCD__

Note: This purchase contract does not constitute an order, it is for reference only.

Execution against this purchase contract will be in the form of purchase orders placed

separately by the Purchasing Division as required.

Please sign this receipt and return it to the City of Boston, Purchasing Division, Room 808,

Boston City Hall, Boston, MA 02201 as soon as possible.

Company name: _____

Receipt of the above contract is hereby acknowledged by: _____

Date: _____



WILLIAM J. HANNON, Purchasing Agent / ASD Purchasing Division
Boston City Hall, Room 808 / City Hall Plaza /  Boston, MA 02201



# CITY OF BOSTON

## PURCHASING DIVISION

### 808 CITY HALL

### BOSTON, MASSACHUSETTS

---

## CONTRACT

No. 15878-05

---

### FOR FURNISHING

Road maintenance salt

Various City Departments

International Salt Co., LLC

P.O. Box 540, Clarks Summit, PA 18411-6463

RECEIVED
AUDITING DEPT
2004 OCT -5 PM 4: 38

15878

# CITY OF BOSTON

## BID / CONTRACT

ADMINISTRATIVE SERVICES DEPARTMENT
PURCHASING DIVISION
ROOM 808, CITY HALL
BOSTON, MA 02201

BID NUMBER: _____1253_____          COMMODITY CODE: ____775-45____

TITLE: __ROAD MAINTENANCE SALT__ ;_____

BID OPENING DATE: __SEPTEMBER 8, 2004__          TIME: TEN O'CLOCK A.M.)

PERIOD OF DELIVERY FROM: __IMMEDIATE__  THROUGH: ____JUNE 30, 2005____

A NON –REFUNDABLE BID DEPOSIT REQUIRED: $20.00 in the form of a bank check, a certified check, a treasurer's or a cashier's check issued by a responsible bank or trust company, or a company check. CASH will not be accepted.

---

IMPORTANT - PLEASE READ: (ALL SIGNATURES MUST BE ORIGINAL)

1. If the forms in the bid/contract are not properly completed, your bid may be disqualified.

2. Do not remove any pages from this bid/contract.  Your bid may be disqualified if it is not intact.

3. If the bidder is a corporation, completely fill-in "CM-06" Certificate of Authority, including an original signature, with a corporate seal affixed.

4. This bid/contract does not constitute an order; execution against this bid/contract will be in the form of a purchase order issued at the appropriate time.

NAME OF COMPANY: __INTERNATIONAL SALT COMPANY, LLC__

ADDRESS: ____P. O. Box 540, Clarks Summit, PA  18411-0540____

CONTACT PERSON:              888-388-4726 & press 1
DANIEL P. THOMPSON          TEL._____  FAX. 570-586-6463____

E – MAIL ADDRESS: __bids@iscosalt.com__

NOTE:  PLEASE CHECK IF BIDDING AS A:

( ) Minority Business Enterprise (MBE)
( ) Women Business Enterprise (WBE)

( ) SOMWBA  (State Office of Minority Women Business Agency)

IS YOUR COMPANY CERTIFIED BY:
( ) City of Boston
( ) Other

For information concerning the completion of these bid/contract forms, please call Chen Kam Lo @ (617)635-4568

For information concerning items or specifications in this bid please call buyer: __V. Caiani__ (617) 635-3706____

# STANDARD CONTRACT
## CITY OF BOSTON/COUNTY OF SUFFOLK

(FORM CM 10 and 11)

CONTRACT NO.: 15878-05

| DEPARTMENT - INVOICE MAILING ADDRESS | SERVICE LOCATION ADDRESS |
|---|---|
| **VARIOUS CITY DEPTS.** | |

CONTRACTOR'S NAME AND ADDRESS

International Salt Co., LLC
P.O. Box 540
Clarks Summit, PA 18411-6463

PLEASE
INCLUDE
ZIP
CODE

| Fund | Agency | Organization | Program | Object Code | Amount |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

FIN 52-2034785

OR SS# _____

| DESCRIPTION OF SERVICES FOR WHICH CITY/COUNTY AGREES TO PAY IF RENDERED IN ACCORDANCE WITH THE CONTRACT DOCUMENTS ATTACHED AND/OR INCORPORATED BY REFERENCE (continue on separate 8½" x 11" sheet(s) if necessary) | TERM |
|---|---|
| Award item: 1. | (M/D/YY) |
| | 10/1/04 |
| | thru |
| | 6/30/05 |
| | TOTAL AMOUNT NOT TO EXCEED $ 2,731,500.0 |

INSERT BASIS OF COMPENSATION $ _____ PER HOUR / $ _____ PER DIEM

| AUDITOR | CONTRACTOR | AWARDING AUTHORITY/OFFICIAL |
|---|---|---|
| APPROVED AS TO AVAILABILITY OF APPROPRIATION OR PURSUANT TO ARTICLE 12.2 OF THE GENERAL CONDITIONS | AGREES TO PROVIDE THE SERVICES AS INDICATED IN ACCORDANCE WITH THESE CONTRACT DOCUMENTS. (IF CORPORATION, ATTACH AUTHORITY TO SIGN.) | ATTACH APPROVED LETTER OF AWARD AND OTHER REQUIRED DOCUMENTS. |
| IN THE AMOUNT OF | | |
| -0- | _Daniel P. Thompson_ | _William J. Hanson_ |
| $ | SIGNATURE | SIGNATURE |
| _Dennis Coughlin_ | **Daniel P. Thompson** | 11/20/04 |
| SIGNATURE | **Vice Pres HWy Bidding & Sales** | DATE |
| 10/13/04 | TITLE | |
| DATE | **September 1, 2004** | |
| | DATE | |

ATTACHMENTS: (✓ CHECK ALL APPLICABLE DOCUMENTS ATTACHED)

☐ AWARD LETTER
☐ ADVERTISEMENT
☐ DETERMINATION TO USE RFP
☐ JUSTIFICATION FOR REQUIREMENTS CONTRACTS
☐ BID OPENING CERTIFICATE

☐ REGISTER OF PROPOSALS
☐ BID RESPONSE FORM
☐ PROPOSAL/APPLICATION
☐ CONTRACTOR CERTIFICATION
☐ PURCHASE DESCRIPTION/SPECIFICATIONS
☐ EVALUATION CRITERIA (RFP'S)

☐ PERFORMANCE BOND
☐ CERTIFICATE OF AUTHORITY
☐ NO-RISK CERTIFICATE
☐ INSURANCE CERTIFICATE(S)
☐ REQUIREMENTS CONTRACTS GENERAL CONDITIONS
☐ SPECIAL AGREEMENT(S)

Approved as to form by Corporation Counsel February, 1998
No payment will be made until the original copy of the executed contract is filed with the Auditing Department

CITY OF BOSTON/COUNTY OF SUFFOLK
STANDARD CONTRACT GENERAL CONDITIONS

FORM CM 11

ARTICLE 1 – DEFINITION OF TERMS:
   1.1  The following terms or pronouns used in their stead wherever they appear in these Contract documents shall be construed as follows:
   1.1.1  "City" shall mean the City of Boston or the County of Suffolk.
   1.1.2  "Contract" and "Contract Documents" shall include, as applicable, all Advertisements, Invitations for Bids, Requests for Proposals, Proposals, Applications, Purchase Description/Specifications, Evaluation Criteria, Performance Bonds, General Conditions/Special Agreements/Requirements Contract General Provisions, letter to the Mayor concerning the award of the Contract, and all amendments thereto, which documents are incorporated herein by reference.
   1.1.3  "Contractor" shall mean the individual, partnership, corporation or other entity to whom this Contract is awarded.
   1.1.4  "Official" shall mean the awarding authority/officer acting on behalf of the City in the execution of the Contract.
ARTICLE 2 – PERFORMANCE:
   2.1  The Contractor shall conform to all directions and instructions, in accordance with provisions of this Contract, of the Official concerning all questions which may arise relating to the performance of services under this Contract.
   2.2  The Contractor shall, upon written request of the Official, remove from City premises and replace all individuals in the Contractor's employ whom the Official determines to be disorderly, careless or incompetent or to be employed in violation of the terms of this Contract.
   2.3  All work papers, reports, questionnaires and other written materials prepared or collected by the Contractor in the course of completing the work to be performed under this Contract shall at all times be the exclusive property of the City. The Contractor shall not use such materials for any purposes other than the purpose of this Contract without prior written consent of the Official.
ARTICLE 3 – ACCEPTANCE OF SERVICE:
   3.1  The City shall have a reasonable opportunity to inspect all service performed by and work product of the Contractor and accept or reject such service or work product.
ARTICLE 4 – TIME:
   4.1  It is understood and agreed that all specified times or periods of performance are of the essence of this Contract.
ARTICLE 5 – COMPENSATION:
   5.1  The Contractor may, in the absence of a payment schedule, periodically submit to the Official invoices, itemizing service, labor and expenses for which compensation is due and requesting payment for services rendered by the Contractor during that period covered by the invoice.
   5.2  Thereupon the Official shall estimate the value of services accepted by the City, and City shall pay to the Contractor such amount less sums retained under provisions of Article 8 of these General Conditions.
   5.3  The City shall pay in full and complete compensation for services performed under this Contract in an amount not to exceed the amount shown on the face of this Contract paid in accordance with the rate indicated or in accordance with a prescribed schedule.
   5.4  In the event that this Contract provides for reimbursement by the City to the Contractor for travel or other expenses, the Contractor shall submit such proposed expenses to the Official for approval prior to the incurrence of such expenses, unless this Contract specifically provides otherwise.
   5.5  The Contractor shall furnish such information, estimate or vouchers relating to the services or to documentation of labor or expenses as may be requested by the Official.
ARTICLE 6 – RELATIONSHIP WITH THE CITY
   6.1  The Contractor is retained solely for the purposes of and to the extent set forth in this Contract. Contractor's relationship to the City during the term of this Contract is that of an independent Contractor. The Contractor shall have no capacity to involve the City in any contract nor to incur any liability on the part of the City. The Contractor, its agents or employees shall not be considered as having the status or pension rights of an employee, provided that the Contractor shall be considered an employee for the purposes of General Laws c. 268A (the Conflict of Interest Law). The City shall not be liable for any personal injury to or death of the Contractor, its agents or employees.
   6.2  Unless all the terms and conditions for the delivery or provision of goods or services by the Contractor to the City specified by this Contract are expressly set forth in writing incorporated herein by reference, such delivery of goods or services shall require written approval of or direction by the Official prior to the incurrence of any liability by the City.
   6.3  All alterations or additions, material or otherwise, to the terms and conditions of this Contract must be in writing and signed by the Official and Contractor and filed with the City Auditor.
   6.4  Any waiver, expressed or implied, by the City or the Official of any rights, terms or conditions of this Contract shall not operate to waive such rights, terms or conditions any other rights, terms or conditions, beyond the specific instance of waiver.
ARTICLE 7 – ASSUMPTION OF LOSS AND LIABILITY:
   7.1  The Contractor shall pay and be exclusively responsible for all debts for labor and material contracted for by Contractor for the rental of any appliance or equipment hired by Contractor and/or for any expense incurred on account of services to be performed under this Contract.
   7.2  The Contractor shall bear all loss resulting from any cause before performance of services is completed and after performance of services if the service or work product fails to conform to specifications.
   7.3  The Contractor shall assume the defense of and hold the City, its officers, agents or employees, harmless from all suits and claims against them or any of them arising from any act or omission of the Contractor, its agents or employees in any way connected with performance under this Contract.
ARTICLE 8 – REMEDIES OF THE CITY:
   8.1  If the Contractor shall provide services in a manner which is not to the satisfaction of the Official, the Official may request that the Contract refurnish services at no additional cost to the City until approved by the Official. If the Contractor shall fail to provide services or shall provide services which are not satisfactory to the Official, the Official may, in the alternative, may make any reasonable purchase or Contract to purchase services in substitution for those other from the Contractor. The City may deduct the cost of any substitute Contract or nonperformance of services together with incidental and consequential damages from the Contract price and shall withhold such damages from sums due or become due to the Contractor.
   8.2  If the damages sustained by the City as determined by the Official exceed sums due or to become due, the Contractor shall pay the difference to the City upon demand.
   8.3  The Contractor shall not be liable for any damages sustained by the City due to the Contractor's failure to furnish services under the terms of this Contract if such failure is in fact caused by the occurrence of a contingency the nonoccurrence of which was a basic assumption under which this Contract was made, including but not necessarily limited to, a state of war, act of enemies, embargoes, expropriation or labor strike or any unanticipated federal, state, or municipal governmental regulation or order, provided that Contractor has notified the Official in writing of such cause within fourteen (14) days after its occurrence.
   8.4  This Contract may be terminated at any time for the convenience of the City or at the option of the Official by delivering or mailing to the Contractor at the Contractor's business address a written notice of termination setting forth the date, not less than seven (7) days after the date of such delivery or mailing, when such termination shall be effective. In the event of such termination for convenience, the Contractor shall be compensated for services rendered to the effective date of said termination in accordance with the rate of compensation specified in this Contract.
ARTICLE 9 – REMEDIES OF CONTRACTOR:
   9.1  If damages, other than loss on nonconforming services or on services not performed, are actually sustained by the Contractor due to any act or material omission for which the City is legally responsible, the City may allow a sum equal to the amount of such damages sustained by the Contractor as determined by the Official in writing, provided Contractor shall have delivered to the Official a detailed written statement of such damages and cause thereof within thirty (30) days after the act or material omission by the City.
ARTICLE 10 – PROHIBITION AGAINST ASSIGNMENT:
   10.1  The Contractor shall not assign, delegate, subcontract or in any way transfer any interest in this Contract without prior written consent of the Official.
ARTICLE 11 – COMPLIANCE WITH LAWS AND PUBLIC POLICY:
   11.1  This Contract is made subject to all laws of the Commonwealth of Massachusetts.
   11.2  The Contractor shall provide, at its sole expense, all necessary licenses, permits or other authorizations required by the City, the Commonwealth of Massachusetts or any other governmental agency with proper jurisdiction.
   11.3  The Contractor shall where applicable take out and maintain during the term of this Contract such Worker's Compensation insurance as may be reasonably necessary to protect the Contractor from claims under General Laws c. 152 the Worker's Compensation Law).
   11.4  The Contractor agrees and shall require any subcontractor to agree not to discriminate in connection with the performance of work under the Contract against employee or applicant for employment because of sex, race, religious creed, national origin or age. The Contractor agrees and shall require any subcontractor to agree to post in conspicuous places notices to be provided by the Massachusetts Commission Against Discrimination, setting forth provisions of the Fair Employment Practice Law of the Commonwealth.
   11.5  The Contractor's attention is called to General Laws c. 268A (the Conflict of Interest Law). The Contractor shall not act in collusion with any City officer, agent, employee or any other party, nor shall the Contractor make gifts regarding this Contract or any other matter in which the City has a direct and substantial interest.
   11.6  The Contractor shall keep himself fully informed of all City Ordinances and Regulations, and State and Federal laws, which in any manner affect the work specified. The Contractor shall at all times observe and comply with said ordinances, regulations or laws, and shall protect and indemnify the City, its officers, agents and employees against any claim or liability arising from or based on the violations of such ordinances, regulations or laws, caused by the negligent actions of the Contractor, its agents or employees.
   11.7  In furtherance of the Mayor's Executive Order "Minority and Women Business Enterprise Development" dated December 31, 1987 and the Ordinance entitled "Promotion of Minority and Women Owned Business Enterprises in the City of Boston" (Ordinances of 1987, Chapter 14), it is understood and agreed by the Contractor, and the Contractor to agree to the execution of this Contract so certifies, as follows: (1) That the contractor shall actively solicit bids for the subcontracting of goods and services from certified minority and women owned businesses; (2) That in reviewing substantially equal proposals the Contractor shall give additional consideration to the award of subcontracts to certified minority and women owned bidders.
ARTICLE 12 – AVAILABLE APPROPRIATION:
   12.1  This Contract is subject to the availability of an appropriation therefor.
   12.2  If the Contract is funded under a grant with the Federal Government, it is being executed without further appropriation pursuant to General Laws c. 44, s.53A.
   12.3  When the amount of the City Auditor's certification of available funds is less than the face amount of the Contract, the City shall not be liable for any claims or requests made by the Contractor which would cause total claims or payments under this Contract to exceed the amount so certified.
   12.4  Unless otherwise expressly provided in a writing incorporated herein by reference, the amount certified by the City Auditor as available funds under this Contract may be increased or decreased by the Official with the written approval of such change by the City Auditor. In the event of any decrease in the amount certified, the Contractor shall be compensated for services rendered to the effective date of such reduction, in accordance with the rates of compensation specified in this Contract.
ARTICLE 13 – RELEASE OF CITY ON FINAL PAYMENT:
   13.1  Acceptance by the Contractor of payment from the City for final services under this Contract shall be deemed to release forever the City from all claims and liabilities except those which the Contractor notifies the Official in writing within six (6) months after such payment.

(FORM CM-06)

# CERTIFICATE OF AUTHORITY
## (For Corporations Only)

September 1, 2004
(Current Date)

At a meeting of the Directors of the __International Salt Co., LLC__
(Name of Corporation)

duly called and held at _____Clarks Summit, PA_____

on the ____12th____ day of ____May____, ____1997____, at

which a quorum was present and acting, it was VOTED, that

____DANIEL P. THOMPSON____
(Name)

the__Vice Pres Hwy Bidding & Sales____ of this corporation is hereby
(Office)

authorized and empowered to make, enter into, sign, seal and deliver in behalf of this

corporation a contract for _____

____Furnishing Ice Control Rock Salt____

_____
(Describe Service)

with the City of Boston, and a performance bond in connection with said contract.

I do hereby certify that the above is a true and correct copy of the record, that

said vote has not been amended or repealed and is in full force and effect as of this date,

and that _____DANIEL P. THOMPSON_____
(Name)

is the duly elected ____Vice President Highway Bidding & Sales____
(Office)

of this corporation.

Attest:

(Affix Corporate Seal Here)

_____
(Clerk) (Secretary) of the Corporation

**RAIMUNDO SANCHEZ
Secretary**

APPROVED AS TO FORM BY CORPORATION COUNSEL FEBRUARY, 1998
THIS FORM IS VOID AND WITHOUT LEGAL EFFECT IF ALTERED IN ANY WAY

# CITY OF BOSTON/COUNTY OF SUFFOLK

## INVITATION FOR BIDS*

### 1. INVITATION

1.1. The City of Boston/County of Suffolk, acting by the Official designated in the advertisement, invites sealed bids for providing the goods or services and performing the work as described in the Purchase Description and Specifications attached hereto, in accordance with the terms and conditions of the attached contract documents.

### 2. SUBMISSION OF BIDS

2.1. *Filing Of Bid And Form Of Bid Deposit*
The original bid shall be <u>signed</u>. The original bid and a duplicate copy thereof (which may be a photocopy) shall be enclosed in an envelope. The envelope shall be sealed and plainly marked on the outside thereof with a description of the goods or services to be provided, bid opening date, and the bid number, if applicable. The bid shall be filed before the time and at the place designated in the Advertisement attached and incorporated by reference herein and shall be accompanied by a bid deposit in the form of a bank check, a certified check, or a treasurer's or cashier's check issued by a responsible bank or trust company, payable to the City of Boston, or a bid bond in a form satisfactory to the Official with a surety company qualified to do business in Massachusetts if, and as specified, in the Advertisement.

2.2. *Time For Filing Bids; Time Of Bid Opening*
Bids shall be filed no later than the time and date designated in the Advertisement; the opening of bids shall be on the date and at the time specified in said Advertisement.

2.3. *Withdrawal Of Bids*
No bid may be withdrawn after the time set for bid opening except by written notice received by the Official prior to the time and date set for bid opening as set forth in the Advertisement. No bid filed by any responsible and responsive bidder may be withdrawn after the date and time of opening, nor prior to the execution and delivery of a contract to the lowest responsible and responsive bidder. The Official shall award a contract prior to the expiration of ninety (90) days (Saturdays, Sundays and legal holidays inclusive) after the opening of bids, or within such other time specified in the Advertisement.

### 3. BID DEPOSITS: AMOUNT; RETURN OF DEPOSIT; FAILURE OF PERFORMANCE/LIQUIDATED DAMAGES

3.1. *Amount Of Bid Deposit*
The amount of any bid deposit shall be as specified in the Advertisement. All bid deposits of twenty-five dollars ($25.00) or less shall be retained by the City as a bid filing charge.

3.2. *Return Of Deposit*
All other bid deposits, as specified in section 2.1, except those of the three lowest responsible and responsive bidders, shall be returned upon notice of award of a contract, or if no award is made, no later than ninety (90) days after the date of the opening of bids.

[*This form shall be used for all competitive sealed bid contracts, whether or not governed by G.L. c. 30B]

1

The bid deposits of the three lowest responsible and responsive bidders shall be returned only upon the execution and delivery of the contract to the City or, if no award is made, no later than ninety (90) days after the date of the opening of bids or, if federal, state or other government approval is required, within thirty (30) days (Saturdays, Sundays, and legal holidays included) after the date of such approval.

### 3.3. *Failure Of Performance; Liquidated Damages*

If the successful bidder fails to perform his agreement to execute a contract and furnish the required security for performance within ten (10) days (Saturdays, Sundays and legal holidays excluded) after an award is made to him, or within such additional time as the Official may authorize in writing, the bid deposit shall become and be the property of the City of Boston as liquidated damages; provided, that the amount of the bid deposit which becomes the property of the City shall not, in any event, exceed the difference between the bidder's price and the price of the next lowest eligible and responsible bidder; and provided further, that, in case of death, disability or other unforeseen circumstance affecting the bidder, the bid deposit shall be returned to the bidder after submission of a sworn affidavit delivered to, and accepted by, the Official.

## 4.   SPECIFICATIONS

### 4.1. Before submitting any bids, bidders shall fully inform themselves in regard to all conditions pertaining to the Invitation For Bids and all required terms and conditions for carrying out the contract. By filing a bid the bidders do thereby represent that they have so informed themselves. Any estimates, plans or other information relating to the goods, services, labor or materials or work required by the contract documents are to be considered for the purpose of comparing the several bids. Neither the City/County, nor its officers, agents or employees, shall be responsible for the accuracy of, or bound by, such estimates, plans or information.

## 5.   BIDS FOR EQUAL ITEMS

### 5.1. *Equal Bids Shall Be Considered*

Except where otherwise specifically provided to the contrary in the contract documents, any proprietary name mentioned in the Purchase Description and Specifications is for the purpose of information only and is not intended to limit competition. Bids for any article, assembly, system or any component part thereof (hereinafter "item") equal to that named in the specifications will be considered. An item shall be considered equal to the item so named if (1) it is at least equal in quality, durability, appearance, strength, and design, (2) it will perform at least equally the function imposed by the general design for the work being contracted for or the material being purchased, and (3) it conforms substantially, even with deviations, to the detailed requirements for the item in the said specifications.

### 5.2. *Notice of "Equal"*

A bidder submitting a bid on proprietary item(s) other than the specific item(s) named in the specifications shall submit, with the bid forms filed, a written notice containing the name and full particulars pertaining to such item(s) including, but not necessarily limited to, the manufacturer's name, catalogue number, model number and price.

### 5.3. *Judgment As To Equality*

The decisions of the Official as to whether an item(s) is or is not equal shall be final.

2

5.4. *Expense Of Proving Equality*
Any and all expense necessary to prove to the Official the quality of items offered as equal to the specific item or specified names shall be borne exclusively by the bidder submitting any proposed substitutions.

6.   INFORMATION AS TO PROPOSED MATERIALS

6.1. Before any contract is awarded, the bidder may be required to furnish, without expense to the City, a complete statement of the original composition and manufacture of any or all materials proposed to be used in the performance of the work, together with all samples, which may be subjected to any reasonable tests required by the Official to determine their quality and fitness for the work. The particulars of tests, if any, may be set forth on the form entitled Evaluation Criteria.

7.   PRICE BASIS ON CONTRACTS FOR THE PURCHASE OF GOODS AND SERVICES

7.1. *Purchase Of Goods Defined*
The purchase of goods shall mean goods as defined in the Uniform Commercial Code, G.L.c.106, §2-105, or all property, other than real property, including equipment, materials, printing and insurance, and further including services incidental to the delivery, conveyance and installation of such property.

7.2. *Purchase Of Service Defined*
The purchase of services shall mean the furnishing of labor, time, or effort by a contractor, not involving the furnishing of a specific end product other than reports.

7.3. *Firm Bid Price; Exception*
Except where otherwise specifically provided to the contrary in the Advertisement, or in the Purchase Description and Specifications, or Evaluation Criteria, as the case may be, prices bid will be accepted by the City as firm prices unless the Official has specifically requested and a bidder specifically responds in writing in its bid consistent with the Official's request that the prices bid are subject to decrease or increase and the basis for calculation of the amount thereof.

7.4. *Price Escalation*
In the event that the Advertisement, or Purchase Description and Specifications, or Evaluation Criteria, as the case may be, provides that prices for contracts are subject to price change, the bidder shall strictly respond to the Invitation For Bids with respect to price requirements, including the amount or percentage of price change and applicable time period(s).

8.   TAXES

8.1. The City is exempt from federal excise taxes (Federal Exemption No.A-108-328) and from the Massachusetts sales and use tax (Certificate No. E-046-001-380). Exemption Certificates will be provided, if requested, following award to the successful bidder.

9.   BASIS FOR ACCEPTANCE/CONFLICT OF INTEREST

9.1. Any bid made will be accepted only on the basis that the bidder, by filing its bid, represents that it is made in good faith without fraud, collusion or connection of any kind with any

3

other bidder for the same work; that the bidder is competing solely in its own behalf without connection with, or obligation to, any undisclosed person, firm or corporation; that no other person, firm or corporation has any interest in the contract; that no officer, agent or employee of the City/County is financially interested in the contract; that the bidder is fully informed in regard to all provisions of the contract documents, including, without limitation, the specification and drawings, if any; the time for performance and the provisions with respect to liquidated damages, bonds and insurance, if any.

## 10.  QUESTIONS

10.1 All questions as to the interpretation of the Invitation For Bids, Purchase Description and Specifications, Evaluation Criteria and all other contract documents shall be submitted in writing to the Official. Written answers to such questions will be sent by the Official to each person on record as having received an Invitation For Bids and all documents incorporated by reference therein. No questions will be answered unless received by the Official at least seventy-two hours prior to the expiration of the time set for filing bids.

## 11.  CONTRACT AWARD

11.1 *Bid Opening*
Bids shall be publicly opened and read aloud at the time and place designated in the Advertisement.

11.2 *Right To Accept Or Reject*
The Official reserves the right to waive any minor informalities and to accept or reject any or all bids. In the event the Purchase Description and Specifications require bids for goods and multiple items each of which has separate price components, the Official reserves the right to accept or reject any item(s) therein and award contracts therefor. The Official shall award the contract to the bidder the Official determines to be the lowest responsible and responsive bidder.

11.3 *Agreement By Bidder*
The submission of a bid shall constitute agreement on the part of the bidder that, if the bidder is given or mailed a notice of acceptance within ninety (90) days (or such other time specified in the Advertisement) of the bid opening, the bidder shall within ten (10) calendar days (Saturdays, Sundays and legal holidays excluded) of receipt of such notice or within such additional time as the Official may authorize in writing, deliver to the Official a contract properly executed together with the required security for performance and any other required contract forms requested by the Official.

## 12.  PERFORMANCE BOND

12.1 A performance bond of a surety company authorized to do business in Massachusetts and satisfactory in form to the Official, or a certified check, or a treasurer's or a cashier's check, issued by a responsible bank or trust company, payable to the City of Boston , may be required of the successful bidder as security to guarantee the faithful performance of the contract. If security is required, the penal sum of such bond or amount of such check shall be as specified in the Advertisement.

12.2 Simultaneously with the execution of the contract, the successful bidder shall deliver such bond or other security to the Official. Failure to provide the required bond or other security

4

within the time herein specified in paragraph 11.3 shall render the contract award void and result in the forfeiture of the bid deposit as liquidated damages.

## 13. HARMONIOUS LABOR RELATIONS

13.1. The submission of a bid shall constitute the certification of the bidder that the bidder is able to and will furnish labor that can work in harmony with all elements of labor employed or to be employed on the work.

## 14. QUALIFICATIONS OF BIDDERS

14.1. It is the purpose and intention of the Official not to award the contract to any bidder who does not furnish evidence, when requested, satisfactory to the Official that he has the ability and experience to perform the pertinent class of work.

## 15. UNIT PRICE PROPOSALS

15.1. The bidder shall submit the bid upon the Bid Response Form furnished by the Official. If the bid is on a unit price basis, the bidder shall respond to and specify a unit price, in both words and figures, if so required in the price specifications, for each item for which a quantity is given, and shall show the products of the respective unit prices and quantities written in figures in the column provided for that purpose and the grand total amount of the bid obtained by adding the amounts of the several items. All words and figures shall be typewritten or in pen and ink. In case of a discrepancy between the prices written in words and those written in figures, the written words shall govern. In the event there is a discrepancy between the unit prices and the total sum of all items, the unit prices shall govern.

## 16. ADDENDA

16.1. Any supplemental instructions, amendments or changes in the Invitation For Bids, or attached documents, shall be in the form of written addenda to this Invitation. If issued, such addenda shall be sent by first class mail or tele-fax to all persons of record as having received an Invitation For Bids at the address listed thereon. Such addenda, if any, will be sent no later than five (5) business days prior to the time set for the opening of bids.

16.2. Failure of any bidder to respond to any such addenda shall not relieve such bidder from any obligation under the bid as submitted. At the time of the opening of bids, each bidder shall be conclusively presumed to have received and understood all bid documents, including all addenda, and the failure of any bidder to examine any form, instrument or other document which is part of the Invitation For Bids shall in no way relieve such bidder from any obligation arising under law from the submission of a bid.

## 17. TOXIC OR HAZARDOUS SUBSTANCES

17.1. A bidder filing a bid concerning materials containing toxic or hazardous substances must submit a Material Safety Data Sheet with such bid. This document must accompany any deliveries of materials containing such substances when made by the successful bidder, his agent, or contractor. A bidder agrees to comply with the so-called "Right-To-Know Law", G.L.c.111F, in respect to the labeling, handling and delivery of substances subject to the jurisdiction of said law.

18. **INVITATION FOR BIDS INCLUDES BY REFERENCE ALL DOCUMENTS REFERRED TO AND INCLUDED THEREIN**

18.1. This Invitation For Bids hereby expressly incorporates by reference any and all documents referred to therein, including without limitation the Advertisement, the Purchase Description and Specifications, the Evaluation Criteria, and all contractual terms and conditions applicable to the procurement.

18.2. This Invitation For Bids expressly incorporates by reference the City of Boston/County of Suffolk Standard Contract General Conditions (Form CM 11) and such other contractual terms as the Official deems necessary.

APPROVED AS TO FORM BY CORPORATION COUNSEL DECEMBER 1998
THIS FORM IS VOID AND WITHOUT LEGAL EFFECT IF ALTERED IN ANY WAY

CITY OF BOSTON/COUNTY OF SUFFOLK

**BID RESPONSE FORM**

BIDDER'S NAME: **INTERNATIONAL SALT COMPANY, LLC**

(Full legal name of Bidder)

PLACE OF BUSINESS: **Clarks Summit, Pennsylvania**

BIDDER'S CONTACT PERSON: **DANIEL P. THOMPSON**    TEL: **888-388-4726 & press option 1**

To the Official, acting in the name and behalf of the City of Boston/County of Suffolk:

A.    Summary Of Supplies/Services Subject To Bid

The undersigned proposes to furnish the specified supplies or services and to perform all work required for:

**Furnishing Ice Control Rock Salt**

*(Official will describe here services or supplies to be procured prior to issue of Invitation For Bids; to be identical with Purchase Description and Specifications)*

in accordance with the terms of the accompanying Advertisement, Purchase Description and Specifications and other contract documents, with special reference to the Invitation For Bids, the terms of which are incorporated herein, all of which have been provided by the City.

Notice To Bidder: Bidders must itemize any deviation from original specifications on a separate sheet. Catalogs or brochures will not be accepted as sole compliance with this requirement unless they also include complete technical information.

B.    Documents Included

In addition to this Bid Response Form, this bid includes the following documents supplied by the Bidder [List Below]:
**$20 non-refundable check; Certified Resolution; License to do Business; MSDS and ability letter**

C.    Price Bid

**$36.42/T**

The total bid price for this contract is: **Thirty-six dollars forty-two cents per ton = $2,731,500.00 Two million seven hundred thirty-one thousand five hundred dollars no cents**

(in words & figures: may attach separate schedule)

1



In response to the Price Requirements in the Purchase Description and Specifications, the price components of the bid price are:

**Total contract.   Based upon 75,000 tons.**

*(Complete as required in Price Requirements: e.g., rates, price changes, first fiscal year, total contract period, etc.  May attach separate schedule.)*

The names and address of all persons interested in this bid as principals other than the undersigned are:

| | |
|---|---|
| Robert H. Jones | Clarks Summit, PA |
| Daniel P. Thompson | Clarks Summit, PA |
| Raimundo Sanchez | Clarks Summit, PA |

D.   References:

**Notice To Bidder:**  Failure to provide the following information, if required in the Purchase Description and Specifications, will result in a non-responsive bid.

1.   List three or more contracts on which you served as contractor or have provided goods and supplies, as the case may be, within the past two (2) years (unless a lesser or greater period is specified by the Official) for work of similar character as required in the Purchase Description and Specifications in this Invitation For Bids.

*Reference 1*
Scope of Contract:        **Supplying Rock Salt**

Company or Entity:        **Commonwealth of Massachusetts**

Contact Name & Phone #:   **Mr. Ronald Whitaker – 617–720–3112**

Amount of Contract:       **115,300 tons**

*Reference 2*
Scope of Contract:        **Supplying Rock Salt**

Company or Entity:        **State of Connecticut**

Contact Name & Phone #:   **Mrs. Janice Snyder – 860–594–2350**

Amount of Contract:       **88,178 tons**

*Reference 3*
Scope of Contract:        **Supplying Rock Salt**

Company or Entity:        **State of New Jersey**

Contact Name & Phone #:   **Mr. Al Karamali – 609–292–4188**

Amount of Contract:       **250,600 tons**

2

2.   Bank reference(s):

| Name of Bank: | Telephone No.: |
|---|---|
| PNC Ban, Scranton, PA | 570-961-6419 |

E.   **Legal Form Of Business Entity**

The bidder is a/an _____ **Corporation** _____

(Individual-Partnership-Corporation-Joint Venture-Trust)

1.   If the bidder is a <u>Partnership</u>, state name and residential address of all general and limited partners:

_____

_____

_____

2.   If the bidder is a <u>Corporation</u>, state the following:

Corporation is incorporated in the State of _____ **Delaware**

Chief Executive Officer
~~President~~          **Robert H. Jones**

Chief Financial Officer
~~Treasurer~~          **Raimundo Sanchez**

Place of business is _____ **655 Northern Boulevard**
(Street)
**Clarks Summit, PA  18411-0540**
(City, State and Zip Code)

3.   If the bidder is a <u>Joint Venture</u>, state the name and business address of each person, firm or company that is party to the joint venture:

_____

_____

A copy of the joint venture agreement is on file at _____ and will be delivered to the Official on request.

4.   If the bidder is a <u>Trust</u>, state the name and residential address of all Trustees:

_____

_____

A copy of the trust documents are on file at _____ and will be delivered to the Official on request.

3

F.   If the business is conducted under any title other than the real name of the owner, state the time when, and place where, the certificate required by General Laws, Chapter 110, §5 was filed:

_____

G.   The Taxpayer Identification Number* of the bidder (the number used on the Employer's Quarterly Federal Tax Return, U.S. Treasury Department Form 941) is:

52-2034785

_____

International Salt Co., LLC is a one member LLC.  As such, the Massachusetts Income T
*If individual, use Social Security Number.
Returns are filed under the Parent Company's Federal ID #23-2928279.

H.   Have been in business under present business name ___Seven (7) years___ years.

I.   Ever failed to complete any work awarded?  ___No._____

     If answer is yes, state circumstances: _____

     _____

J.   Pursuant to M.G.L. c.60, §93, the undersigned understands and agrees that if a contract is awarded to the bidder, that the Collector-Treasurer of the City of Boston may withhold from amounts owing and payable under any contract awarded to a successful bidder any and all sums owed to any department or agency of the City of Boston which remain wholly or partially unpaid.  This shall include but not be limited to unpaid taxes and assessments, police details, and any other fees and charges until such sums owed have been paid in full, and the Collector-Treasurer further may apply any amounts owing and payable under any contract awarded to the successful bidder to satisfy any monies owed to the City.

K.   Pursuant to M.G.L. c.62C, §49A, the undersigned certifies under the penalties of perjury that to the best of his/her knowledge and belief all state tax returns have been filed and that all state taxes required under law have been paid.  (NOTE: The Taxpayer Identification Number will be furnished to the Massachusetts Department of Revenue to determine compliance with the above-referenced law.)

L.   The undersigned certifies under penalties of perjury that this bid or proposal has been made and submitted in good faith and without collusion or fraud with any other person.  As used in this certification, the word "person" shall mean any natural person, business, partnership, corporation, union, committee, club, or other organization, entity or group of individuals.

4

(FORM CM-07)

Bidder:    **INTERNATIONAL SALT COMPANY, LLC**

By:    *[signature]*

(Sign Here)

**DANIEL P. THOMPSON, Vice President Highway Bidding & Sales**

Business Address:    **P. O. Box 540**

(Street)

**Clarks Summit, PA  18411-0540**

(City, State, Zip Code)

NOTE:  THIS BID MUST BEAR THE WRITTEN SIGNATURE OF THE BIDDER.

If the bidder is an individual doing business under a name other than his own name the bid must so state, giving the address of the individual.

If the bidder is a partnership, the bid must be signed by a partner designated as such.

If the bidder is a corporation, trust or joint venture the bid must be signed by a duly authorized officer or agent of such corporation, trust or joint venture.

APPROVED AS TO FORM BY CORPORATION COUNSEL FEBRUARY, 1998
THIS FORM IS VOID AND WITHOUT LEGAL EFFECT IF ALTERED IN ANY WAY

5

Bid #. __1253__

## PURCHASE DESCRIPTION AND SPECIFICATIONS

DEPARTMENT: __VARIOUS CITY DEPTS.__    COMMODITY CODE: __775-45__

REQ(S): __VARIOUS__

PERIOD OF DELIVERY: __IMMEDIATE__    THROUGH __JUNE 30, 2005__

The City of Boston, a Municipal Corporation of the Commonwealth of Massachusetts, acting by its Purchasing Agent with the approval of its Mayor and the Contractor agree in accordance with the provisions of the contract documents incorporated herein, as follows:

The Contractor shall furnish and deliver the following goods, and the City shall pay the following prices thereof, as specified in the pricing schedule and according to the following specifications:

Standard Discount Terms:

__X__ Net    Terms:  **Net 30 days**

_____Other _____

NOTE: Discounts under thirty (30) days will not be considered.

All shipments are to be F. O. B. destination.

Descriptive literature must accompany all items that are bid. Contractors must itemize any deviations from original specifications on a separate sheet. Catalogs or brochures will not be accepted as sole compliance with this requirement unless they also include complete technical information.

Warranties: Bidders must furnish manufacturer's warranty and the name, address and telephone number of warranty service facility.

Buyers doc

**BID NO 1253**

**ROAD MAINTENANCE SALT**

| ITEM | QTY | UNIT | ITEM DESCRIPTION | UNIT PRICE | TOTAL |
|------|-----|------|------------------|------------|-------|
| 01 | 75,000 | tons | Sodium chloride bulk (SEE ATTACHED SPECIFICATIONS) | $ 36.42/T | $2,731,500.00 |

STATE LOCATION OF STOCKPILE(S)_____**Boston, Massachusetts**_____

ADDRESS OF ON SITE PICK UP: _____**Boston, Massachusetts**_____
(IF APPLICABLE )

EMERGENCY TELEPHONE NUMBER: **888-388-4726 & press option 1**
(24 HOURS A DAY, 7 DAYS A WEEK) **(Emergency toll free (888) number is connected to a 24 hour answering service for placement of orders.)**

NOTE: LOCATION MAY BE A FACTOR IN DETERMINING THE AWARD OF THIS BID

PRICE WILL BE HELD FOR THE TERM OF THE CONTRACT AND SHALL NOT BE LIMITED TO THE ESTIMATED NUMBER OF ITEMS.

THE FOLLOWING IS A LIST OF THE PUBLIC WORKS DEPARTMENT DELIVERY LOCATIONS:

1    400 FRONTAGE RD., BOSTON, MA

2    280 HIGHLAND ST., ROXBURY, MA

3    160 HANCOCK ST., DORCHESTER, MA

4    315 WESTERN AVE., BRIGHTON, MA

5    315 GARDNER ST., WEST ROXBURY, MA

6    58 GIBSON ST., DORCHESTER, MA

7    58 DANA AVE., HYDE PARK, MA

8    320 EAST EAGLE ST, BOSTON, MA

| | | | | | |
|------|-----|------|------------------|------------|-------|
| 02 | 10,000 | bags | Sodium Chloride 80# or 100# bags | $ No Bid | $ No Bid |

STATE BRAND NAME _____

STATE SIZE OF BAG _____

Pricing Section
Page 1

sodium.doc

| ITEM | QTY | UNIT | ITEM DESCRIPTION | UNIT PRICE | TOTAL |
|------|-----|------|------------------|------------|-------|

APPROXIMATELY $50,000.00. WILL BE EXPENDED BY THE CITY OF BOSTON FOR THE FOLLOWING MATERIALS.

| 03 | per | bag | Calcium Chloride  80# bags<br>Dow "Pelladow"  or equal | $ __No  Bid__ | |

STATE BRAND NAME; _____

STATE SIZE OF BAG. _____

| 04 | per | bag | Industrial Grade Urea Pellets  50#  bags | $ __No  Bid__ | |

STATE BRAND NAME _____

STATE SIZE OF BAG _____

DESCRIPTIVE LITERATURE AND MATERIAL SAFETY DATA SHEET MUST ACCOMPANY THIS BID.

Pricing Section
Page 2

sodium.doc

## SPECIFICATIONS FOR SODIUM CHLORIDE BULK:

### DELIVERY:

To be delivered as requested by the contractor's truck (s) to any of the various City yards.

### SODIUM CHLORIDE BAGS

To be delivered as requested to any of the various City departments.
**INSIDE DELIVERY REQUIRED:**

### MATERIAL

Sodium Chloride shall be delivered in a free flowing and useable condition. It shall be free from agglomerates and from lumps. Deliveries that do not conform to these requirements shall be rejected.

### CHEMICAL AND PHYSICAL REQUIREMENTS

### BULK SALT SHALL COMPLY WITH THE FOLLOWING REQUIREMENTS

(A)   Moisture that exceeds 3% shall be subject to the requirements for moisture as indicated under "DEDUCTIONS"

(B)   Sodium Chloride content that is under 97% shall be subject to the requirements for sodium chloride content as under "DEDUCTIONS"

(C)   Gradation that varies from the following table shall be subject to the requirements for gradation as indicated under "DEDUCTIONS"

| | | |
|---|---|---|
| 1. | Retained on a 3/4" sieve | 5% maximum |
| 2. | Retained on a 5/8" sieve | 5% maximum |
| 3. | Retained on a #4   sieve | 20% minimum |
| 4. | Retained on a #8   sieve | 50% minimum |
| 5. | Passing a      #30 sieve | 7% maximum |

sodium.doc

## SAMPLES

The Contractor shall provide every facility should the City of Boston elect to have sampling done at the contractor's place of storage. If the City of Boston decides to sample the material at the time of delivery, it is understood that the samples will be taken from the truck.

If the sampling is done at time of delivery, samples shall be taken from every truck load of sodium Chloride delivered. Sampling will be done by a representative of the testing laboratory engaged by the City of Boston to sample and test sodium chloride, and in the following manner:

Samples shall be taken of approximately one pound each at the quarter points and middle of the truck along the center line representative of the cross-section to a depth of at least six inches after removing one inch of the top surface. Sampling will be done by means of a sampling thief or other method that will ensure a sample that is representative of a cross section of the sodium chloride.

The three samples taken from each truck-load of sodium chloride shall be accumulated in an air-tight container until approximately five hundred tons of sodium chloride have been delivered and sampled. These samples will then be combined to form a representative composite sample of the sodium chloride delivered and placed in an air-tight container for transportation to the laboratory for testing.

## NUMBER OF TESTS

The application of deductions if any, shall be based on one test for each five hundred tons (approximately) of sodium chloride delivered.

## METHOD OF TESTING

The chemical analysis and moisture content determinations shall be made in accordance with the methods specified for "SALT" in the current "OFFICIAL METHODS OF ANALYSIS FOR THE ASSOCIATION OF OFFICIALS OF AGRICULTURE CHEMISTS." The determination for gradation shall be made in accordance with the current ASTM-D 632-84 or its latest revision.

**International Salt Company's specs meet ASTM D-632-84 or its latest revision.**

## LOCATION OF STOCKPILE:

The contractor must have a sufficient supply locally to satisfy City of Boston requirements and must indicate the location of the stockpile.

sodium.doc

## SODIUM CHLORIDE CONDITIONER

In order to prevent caking while in storage following delivery, the sodium chloride shall be treated with an anti-cake material prior to delivery. The treatment shall be considered adequate if it meets the following tests:

Into a 6" x 6" tinned metal pail with perforated bottom (for draining). 2500 grams of treated salt shall be placed. The salt shall then be moistened with 100mL. of water and allowed to air-dry at room temperature for 24 hours. The pail containing the treated sodium chloride shall then receive five cycles of thirty minutes in a room at 98 degrees F. Followed by air drying for 24 hours at room temperature. The sodium chloride shall then be moistened with another 100mL. of water and allowed to dry at room temperature for 24 hours. The pail of sodium chloride shall then receive five more cycles as before. At the end of these treatments, the bidder shall submit a certificate giving the trade name of the conditioner and the name and address of the manufacturer.

## DEDUCTIONS

When it is found that the sodium chloride delivered does not comply with the specification requirements, deductions shall be made from the contract price as follows:

(A) **MOISTURE CONTENT**

| OVER | NOT OVER | DEDUCTION |
|------|----------|-----------|
| 3% | 3.99% | A deduction of 1% per ton |
| 4% | | A deduction of 1% per ton for each 1% fraction thereof over 1% moisture |

(B) **SODIUM CHLORIDE CONTENT**

| BELOW | NOT UNDER | |
|-------|-----------|---|
| 97% | 93% | A deduction of 1% per ton for each 1% fraction thereof below 97% sodium chloride if the delivery has a sodium chloride content of less than 93% the deduction shall be at the rate of $1.00 per ton for each 1% fraction thereof under 93% sodium chloride. |

## GRADATION

1)      Retained on a 3/4" sieve a deduction of 1% per ton shall be made for each 1% or fraction thereof over 5% retained on the 3/4" sieve, except that if more than 10% of the sodium chloride deliveries are retained on the 3/4" the deduction shall be made at the rate of $1.00 per ton for each 1% or fraction thereof over 10%.

2)      Retained on a 5/8" sieve. A deduction of 1% per ton shall be made for each 1% or fraction thereof over 5% retained on the 5/8" sieve.

sodium.doc

ADVERTISEMENT
CITY OF BOSTON
ADMINISTRATIVE SERVICES DEPARTMENT/PURCHASING DIVISION

William J. Hannon
PURCHASING AGENT
617-635-4564

INVITATION FOR SEALED BIDS
FOR FURNISHING GOODS
AND MATERIALS

FISCAL YEAR 2005

The City of Boston (the City)/the County of Suffolk (the County), acting by its Purchasing Agent invites sealed bids for the items as described below and particularly set forth in the Invitation For Bids which may be obtained at the office of the Purchasing Agent, Boston City Hall, Room 808, One City Hall Plaza, Boston, MA 02201 commencing at 8:00 A.M. Boston Time on August 23, 2004.   Invitations for bids shall be available until the time of the bid opening.

Every sealed bid shall be submitted in duplicate; on, and in accordance with, the Invitation For Bids.

The attention of all bidders is directed to the provisions of the Invitation For Bids and contract documents, specifically to the requirements for bid deposits, insurance and performance bonds as may be applicable.

A non refundable bid deposit in the amount of $20.00 shall be required from each bidder.

Sealed bids shall be publicly opened by the official on the date specified at the Purchasing Division, Room 808, Boston City Hall.

The award of any contract shall be subjected to the approval of the Mayor of Boston and the City of Boston Purchasing Agent.

The Maximum time for bid acceptance by the City after the opening of bids shall be ninety (90) days.

The City/County and the Official reserve the right to reject any or all bids, or any item or items thereof.

Bid No. 1245    **Harley Davidson Motorcycle**
                To Boston Police Department
                Bid Opening Date: September 8, 2004
                (Commodity Code:070-20; Buyer John Shea)

Bid No. 1246    **T.S.E. - Aluminum Sign Holders**
                To Transportation Dept
                Bid Opening Date: September 14, 2004
                (Commodity Code: 550-00; Buyer Mary Caiani)

Bid No. 1247    **T.S.E. - Aluminum Sign Blanks**
                To Transportation Dept
                Bid Opening Date: September 14, 2004
                (Commodity Code: 550-00; Buyer Mary Caiani)

Bid No. 1248    **T.S.E. - Stop Faces**
                To Transportation Dept
                Bid Opening Date: September 14, 2004
                (Commodity Code: 550-00; Buyer Mary Caiani)

Bid No. 1249    **T.S.E. - Stainless Steel Strapping , Clips And Mounting Brackets**
To Transportation Dept
Bid Opening Date: September 14, 2004
(Commodity Code: 550-00; Buyer Mary Caiani)

Bid No. 1250    **T.S.E. - Sheeting Films (Non - Reflective)**
To Transportation Dept
Bid Opening Date: September 15, 2004
(Commodity Code: 550-00; Buyer Mary Caiani)

Bid No. 1251    **T.S.E. - Sheeting Engineer Grade (Reflective)**
To Transportation Dept
Bid Opening Date: September 15, 2004
(Commodity Code: 550-00; Buyer Mary Caiani)

Bid No. 1252    **T.S.E. - Galvanized Poles**
To Transportation Dept
Bid Opening Date: September 15, 2004
(Commodity Code: 550-00; Buyer Mary Caiani)

Bid No. 1253    **Road Maintenance Salt**
To Various City Departments
Bid Opening Date: September 8, 2004
(Commodity Code: 775-45; Buyer Vincent Caiani)

Bid No. 1254    **LTO Automated Tape Library**
To Boston Library Departments
Bid Opening Date: September 8, 2004
(Commodity Code: 939-21; Buyer Vincent Caiani)

(August 23, 2004)
(August 30, 2004)
(September 6, 2004)

**PROCEDURES AND CHECK LIST FOR**
**REVIEWING A PURCHASE CONTRACT**
**(PRIOR TO AUDITING SIGNATURE)**

Contract # *15878-05*                    Reviewer: *Lisa Erdman*

<u>Full award to One Vendor:</u>

<u>Computation:</u>  When the full bid is awarded to one vendor, <u>check and compare:</u>

✓ "Contract Amount" on the Award Letter
✓ "Total Not to Exceed Amount" on the CM-10
✓ Highlight the total Bid Amount on the Bid Sheet(s)
✓ Highlight Section C "Bid Price" on the CM-1 (page 1)
✓ All four total above much match exactly:  no calculation tape necessary

<u>Verification:</u>  Check and Verify:

✓ Check for original signatures on the Award Letter
✓ The CM-10 Standard Contract must be signed by the Contractor
✓ The CM-06 (if applicable) must be included and signed by the Contractor's representative, if the vendor is a corporation
✓ The CM-03 "Invitation For Bids" must be included
✓ The CM-07 "Bid Response Form" must be included and signed by the contractor
✓ The CB-02 "Bid Opening Certification" must be included and signed by a witness and official, if contract has been advertised

<u>Addendum:</u>

_____ CM-14 "No Risk Certificate" signed by the Department, if a Performance Bond has not been required
_____ General Terms and Conditions must be included
_____ Pricing Section must be completed in its' entirety by the contractor
_____ Certificate of Insurance (if applicable)

<u>Partial Award to One Vendor:</u>

<u>Computation:</u>  When certain items, but not all, are awarded to a vendor, check and compare:
_____ "Contract Amount" on the Award Letter
_____ "Total Not to Exceed Amount" on the CM-10
_____ Highlight the Total Per Item Bid Amounts on the Bid Sheet(s)

_____ Using your calculator, add and highlight all the items that are awarded (to get this, also check the Award Letter and the CM-10 to the Bid Sheets.  All three totals must match exactly.  Staple the proof tape with the total highlighted to the Award Letter

<u>Verification:</u>  Same as Verification Process above

(FORM CM-14)

## CERTIFICATE FOR "NO RISK" CONTRACTS

**TO:**        **CORPORATION COUNSEL**

**FROM:**    <u>PURCHASING DIVISION</u>

              **(Department or Agency)**

This is to certify that I have reviewed the attached contract with

    International Salt Co., LLC

_____

Vendor/Contractor

for

    Road Maintenance Salt

_____

Nature of Service

and it is my belief that there is little or no risk of default or unsatisfactory performance by the

vendor/contractor.

                                           9/23/04

                          Awarding Authority / Official

APPROVED AS TO FORM BY CORPORATION COUNSEL FEBRUARY, 1998
THIS FORM IS VOID AND WITHOUT LEGAL EFFECT IF ALTERED IN ANY WAY

(CB FORM 2)

## BID OPENING CERTIFICATION FORM

Date of Public Bid Opening: _____ 9/8/04 _____

| Name of Bidder | Amount of Bid |
|---|---|
| ✓ ateo Supply | various unit price |
| ✓ Waldo Bros. | various unit price |
| ✓ Granite State Minerals | 3,684,750.00 |
| ✓ Eastern Minerals, Inc. | 2,961,750.00 |
| ✓ International Salt Co. | 2,731,500.00 |

This List is a complete and accurate list of bids opened in the presence of the below-named witness:

**WITNESS**

*Arlene Lamberto*

Signed Under Penalties of Perjury:

*Vincent A. Curani*
Procurement Officer or Designee

THIS CERTIFICATION MUST BE FILED WITH THE ORIGINAL CONTRACT

APPROVED AS TO FORM BY CORPORATION COUNSEL FEBRUARY, 1998
THIS FORM IS VOID AND WITHOUT LEGAL EFFECT IF ALTERED IN ANY WAY

**EXHIBIT B**



# CITY OF BOSTON

## PURCHASING DIVISION

## 808 CITY HALL

## BOSTON, MASSACHUSETTS

---

# CONTRACT

No. ___15878-05___

### FOR FURNISHING

Road maintenance salt

Various City Departments.

International Salt Co., LLC

P.O. Box 540, Clarks Summit, PA 18411-6463

RECEIVED
AUDITING DEPT
2004 OCT -5 PM 4: 38

# Boston

**Thomas M. Menino, Mayor**

The Honorable Thomas M. Menino

Mayor of the City of Boston
City Hall
Boston, MA 02201

Dear Mr. Mayor:

APPROVED

Thomas M. Menino
Mayor of Boston

October 5, 2004

By: *Thomas M. Menino*
*Es 10/20/04*

I respectfully request your Honor's permission to award a contract pursuant to the authority of G.L.C. 30B, S5 for road maintenance salt (775-45/ Bid # 1253) for the various city departments to be procured under competitive bid procedures.

In response to an advertisement published in the City Record and the Goods and Service Bulletin on August 23, 2004 for the above named commodity, the following bids were publicly opened and read September 8, 2004. In addition to the public advertisement, nine (9) companies were solicited for bids of whom five (5) companies responded.

| CONT. # | VENDOR | BID AMOUNT | CONTRACT AMOUNT | TERMS |
|---|---|---|---|---|
| 15878-05 | International Salt Co., LLC<br>P.O. Box 540<br>Clarks Summit, PA 18411-0540 | $2,731,500.00<br>(item 1) | $2,731,500.00<br>(item 1) | net 30 days |
| | Atco Supply Co.<br>617 Columbia Rd.<br>Dorchester, MA 02125 | various unit price<br>(items 2, 3 & 4) | $0.00 | net 30 days |
| | Eastern Minerals, Inc.<br>130 Plain St.<br>Lowell, MA 01853 | $2,961,750.00<br>(item 1) | $0.00 | net 30 days |
| | Granite State Minerals, Inc.<br>227 Market St.<br>Portsmouth, NH 03801 | $3,684,750.00<br>(item 1) | $0.00 | net |
| | Waldo Brothers, Co.<br>202 Southampton St.<br>Boston, MA 02118 | various unit price<br>(items 2, 3 & 4) | $0.00 | 1% 45, net 46 days |

A bid opening certification form was completed and signed on September 8, 2004.

In as much as International Salt Co., LLC submitted the lowest bid and in as much as the bid was reasonable one, your permission is requested to award a contract to Interstate Salt Co., LLC, P.O. Box 540, Clarks Summit, PA 18411-0540, for delivery period October 1, 2004 through June 30, 2005.

According to the evaluation criteria listed in the invitation to bid, I have determined that this contractor is the lowest responsible and responsive bidder.

Respectfully yours,

*William J. Hannon*

William J. Hannon
Purchasing Agent



WILLIAM J. HANNON, Purchasing Agent / ASD Purchasing Division
Boston City Hall, Room 808 / City Hall Plaza / Boston, MA 02201
(617) 635-4564



*15878*

# CITY OF BOSTON

## BID / CONTRACT

**ADMINISTRATIVE SERVICES DEPARTMENT**
**PURCHASING DIVISION**
**ROOM 808, CITY HALL**
**BOSTON, MA 02201**

BID NUMBER: _____1253_____          COMMODITY CODE: _____775-45____

TITLE: __ROAD MAINTENANCE SALT__ : _____

BID OPENING DATE: _SEPTEMBER 8, 2004_____          TIME: TEN O'CLOCK A.M.)

PERIOD OF DELIVERY FROM: _IMMEDIATE___     THROUGH: ____JUNE 30, 2005___

A NON –REFUNDABLE BID DEPOSIT REQUIRED: $20.00 in the form of a bank check, a certified check, a treasurer's or a cashier's check issued by a responsible bank or trust company, or a company check. CASH will not be accepted.

## IMPORTANT - PLEASE READ:  (ALL SIGNATURES MUST BE ORIGINAL)

1. If the forms in the bid/contract are not properly completed, your bid may be disqualified.

2. Do not remove any pages from this bid/contract.   Your bid may be disqualified if it is not intact.

3. If the bidder is a corporation, completely fill-in "CM-06" Certificate of Authority, including an original signature, with a corporate seal affixed.

4. This bid/contract does not constitute an order; execution against this bid/contract will be in the form of a purchase order issued at the appropriate time.

NAME OF COMPANY: __**INTERNATIONAL SALT COMPANY, LLC**__

ADDRESS: _____**P. O. Box 540, Clarks Summit, PA  18411-0540**_____

CONTACT PERSON:                    **888-388-4726 & press 1**
**DANIEL P. THOMPSON** _____TEL._____ FAX. **570-586-6463** _____

E – MAIL ADDRESS: __**bids@iscosalt.com**__

NOTE:  PLEASE CHECK IF BIDDING AS A:

( ) Minority Business Enterprise (MBE)
( ) Women Business Enterprise (WBE)

( ) SOMWBA  (State Office of Minority Women Business Agency)

IS YOUR COMPANY CERTIFIED BY:
( ) City of Boston
( ) Other

For information concerning the completion of these bid/contract forms, please call Chen Kam Lo @ (617)635-4568

For information concerning items or specifications in this bid please call buyer: _V. Caiani_ (617) 635-3706___

# STANDARD CONTRACT
## CITY OF BOSTON/COUNTY OF SUFFOLK

CONTRACT NO. 15878-05

| DEPARTMENT - INVOICE MAILING ADDRESS | SERVICE LOCATION ADDRESS |
|---|---|
| **VARIOUS CITY DEPTS.** | |

**CONTRACTOR'S NAME AND ADDRESS**

International Salt Co., LLC
P.O. Box 540
Clarks Summit, PA 18411-6463

PLEASE INCLUDE ZIP CODE

| Fund | Agency | Organization | Program | Object Code | Amount |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

FIN 52-2034785

OR SS# _____

**DESCRIPTION OF SERVICES FOR WHICH CITY/COUNTY AGREES TO PAY IF RENDERED IN ACCORDANCE WITH THE CONTRACT DOCUMENTS ATTACHED AND/OR INCORPORATED BY REFERENCE** (continue on separate 8½" x 11" sheet(s) if necessary)

Award item: 1.

**TERM** (M/D/YY)

10/1/04

thru

6/30/05

**TOTAL AMOUNT NOT TO EXCEED** $ 2,731,500.00

**INSERT BASIS OF COMPENSATION: $** _____ **PER HOUR / $** _____ **PER DIEM**

| AUDITOR | CONTRACTOR | AWARDING AUTHORITY/OFFICIAL |
|---|---|---|
| APPROVED AS TO AVAILABILITY OF APPROPRIATION OR PURSUANT TO ARTICLE 12.2 OF THE GENERAL CONDITIONS | AGREES TO PROVIDE THE SERVICES AS INDICATED IN ACCORDANCE WITH THESE CONTRACT DOCUMENTS. (IF CORPORATION, ATTACH AUTHORITY TO SIGN.) | ATTACH APPROVED LETTER OF AWARD AND OTHER REQUIRED DOCUMENTS. |
| IN THE AMOUNT OF -0- | | |
| $ _____ | *[signature]* | *[signature]* |
| *[signature]* SIGNATURE | SIGNATURE | SIGNATURE |
| 10/13/04 DATE | Daniel P. Thompson Vice Pres HWy Bidding & Sales TITLE | 11/30/04 DATE |
| | September 1, 2004 DATE | |

**ATTACHMENTS: (✓ CHECK ALL APPLICABLE DOCUMENTS ATTACHED)**

- ☐ AWARD LETTER
- ☐ ADVERTISEMENT
- ☐ DETERMINATION TO USE RFP
- ☐ JUSTIFICATION FOR REQUIREMENTS CONTRACTS
- ☐ BID OPENING CERTIFICATE
- ☐ REGISTER OF PROPOSALS
- ☐ BID RESPONSE FORM
- ☐ PROPOSAL/APPLICATION
- ☐ CONTRACTOR CERTIFICATION
- ☐ PURCHASE DESCRIPTION/ SPECIFICATIONS
- ☐ EVALUATION CRITERIA (RFP'S)
- ☐ PERFORMANCE BOND
- ☐ CERTIFICATE OF AUTHORITY
- ☐ NO-RISK CERTIFICATE
- ☐ INSURANCE CERTIFICATE(S)
- ☐ REQUIREMENTS CONTRACTS GENERAL CONDITIONS
- ☐ SPECIAL AGREEMENT(S)

Approved as to form by Corporation Counsel February, 1998
No payment will be made until the original copy of the executed contract is filed with the Auditing Department

CITY OF BOSTON/COUNTY OF SUFFOLK
STANDARD CONTRACT GENERAL CONDITIONS
FORM CM 11

**ARTICLE 1 – DEFINITION OF TERMS:**

1.1 The following terms or pronouns used in their stead wherever they appear in these Contract documents shall be construed as follows:

1.1.1 "City" shall mean the City of Boston or the County of Suffolk.

1.1.2 "Contract" and "Contract Documents" shall include, as applicable, all Advertisements, Invitations for Bids, Requests for Proposals, Proposals, Applications, Purch Description/Specifications, Evaluation Criteria, Performance Bonds, General Conditions/Special Agreements/Requirements Contract General Provisions, letter to the Mayo Boston concerning the award of the Contract, and all amendments thereto, which documents are incorporated herein by reference.

1.1.3 "Contractor" shall mean the individual, partnership, corporation or other entity to whom this Contract is awarded.

1.1.4 "Official" shall mean the awarding authority/officer acting on behalf of the City in the execution of the Contract.

**ARTICLE 2 – PERFORMANCE:**

2.1 The Contractor shall conform to all determinations and directions, in accordance with provisions of this Contract, of the Official concerning all questions which may a relating to the performance of services under this Contract.

2.2 The Contractor shall, upon written request of the Official, remove from City premises and replace all individuals in the Contractor's employ whom the Official determi o be disorderly, careless or incompetent or to be employed in violation of the terms of this Contract.

2.3 All work papers, reports, questionnaires and other written materials prepared or collected by the Contractor in the course of completing the work to be performed ur his Contract shall at all times be the exclusive property of the City. The Contractor shall not use such materials for any purposes other than the purpose of this Contract without prior written consent of the Official.

**ARTICLE 3 – ACCEPTANCE OF SERVICE:**

3.1 The City shall have a reasonable opportunity to inspect all service performed by and work product of the Contractor and accept or reject such service or work product.

**ARTICLE 4 – TIME:**

4.1 It is understood and agreed that all specified times or periods of performance are of the essence of this Contract.

**ARTICLE 5 – COMPENSATION:**

5.1 The Contractor may, in the absence of a payment schedule, periodically submit to the Official invoices, itemizing service, labor and expenses for which compensatio lue and requesting payment for services rendered by the Contractor during the period covered by the invoice.

5.2 Thereupon the Official shall estimate the value of services accepted by the City, and City shall pay to the Contractor such amount less sums retained under rovisions of Article 8 of these General Conditions.

5.3 The City shall pay in full and complete compensation for services performed under this Contract in an amount not to exceed the amount shown on the face of Contract paid in accordance with the rate indicated or in accordance with a prescribed scheduled.

5.4 In the event that this Contract provides for reimbursement by the City to the Contractor for travel or other expenses, the Contractor shall submit such proposed expen o the Official for approval prior to the incurrence of such expenses, unless the Contract specifically provides otherwise.

5.5 The Contractor shall furnish such information, estimate or vouchers relating to the services or to documentation of labor or expenses as may be requested by the City.

**ARTICLE 6 – RELATIONSHIP WITH THE CITY**

6.1 The Contractor is retained solely for the purposes of and to the extent set forth in this Contract. Contractor's relationship to the City during the term of this Contract s e that of an independent Contractor. The Contractor shall have no capacity to involve the City in any contract nor to incur any liability on the part of the City. The Contractor, gents or employees shall not be considered as having the status or pension rights of an employee, provided that the Contractor shall be considered an employee for the purpos eneral Laws, c. 268A (the Conflict of Interest Law). The City shall not be liable for any personal injury to or death of the Contractor, its agents or employees.

6.2 Unless all the terms and conditions for the delivery or provision of goods or services by the Contractor to the City specified by this Contract are expressly set forth i riting incorporated herein by reference, such delivery of goods or services shall require written approval of or direction by the Official prior to the incurrence of any liability by ity.

6.3 All alterations or additions, material or otherwise, to the terms and conditions of this Contract must be in writing and signed by the Official and Contractor and filed v he City Auditor.

6.4 Any waiver, expressed or implied, by the City or the Official of any rights, terms or conditions of this Contract shall not operate to waive such rights, terms or conditions ny other rights, terms or conditions, beyond the specific instance of waiver.

**ARTICLE 7 – ASSUMPTION OF LOSS AND LIABILITY:**

7.1 The Contractor shall pay and be exclusively responsible for all debts for labor and material contracted for by Contractor for the rental of any appliance or equipment hi y Contractor and/or for any expense incurred on account of services to be performed under this Contract.

7.2 The Contractor shall bear all loss resulting from any cause before performance of services is completed and after performance of services if the service or work proc ils to conform to specifications.

7.3 The Contractor shall assume the defense of and hold the City, its officers, agents or employees, harmless from all suits and claims against them or any of them aris rom any act or omission of the Contractor, its agents or employees in any way connected with performance under this Contract.

**ARTICLE 8 – REMEDIES OF THE CITY:**

8.1 If the Contractor shall provide services in a manner which is not to the satisfaction of the Official, the Official may request that the Contractor refurnish services at dditional cost to the City until approved by the Official. If the Contractor shall fail to provide services or shall provide services which are not satisfactory to the Official, the Official e alternative, may make any reasonable purchase or Contract to purchase services in substitution for those due from the Contractor. The City may deduct the cost of ubstitute Contract or nonperformance of services together with incidental and consequential damages from the Contract price and shall withhold such damages from sums due o ecome due to the Contractor.

8.2 If the damages sustained by the City as determined by the Official exceed sums due or to become due, the Contractor shall pay the difference to the City upon demand

8.3 The Contractor shall not be liable for any damages sustained by the City due to the Contractor's failure to furnish services under the terms of this Contract if such fail s in fact caused by the occurrence of a contingency the nonoccurrence of which was a basic assumption under which this Contract was made, including but not necessarily limitec state of war, act of enemies, embargoes, expropriation or labor strike or any unanticipated federal, state, or municipal governmental regulation or order, provided that ontractor has notified the Official in writing of such cause within fourteen (14) days after its occurrence.

8.4 This Contract may be terminated at any time for the convenience of the City at the option of the Official by delivering or mailing to the Contractor at the Contract usiness address a written notice of termination setting forth the date, not less than seven (7) days after the date of such delivery or mailing, when such termination shall be effect the event of such termination for convenience, the Contractor shall be compensated for services rendered to the effective date of said termination in accordance with the rate ompensation specified in this Contract.

**ARTICLE 9 – REMEDIES OF CONTRACTOR:**

9.1 If damages, other than loss on nonconforming services or on services not performed, are actually sustained by the Contractor due to any act or material omission hich the City is legally responsible, the City may allow or a sum equal to the amount of such damages sustained by the Contractor as determined by the Official in writing, provided ontractor shall have delivered to the Official a detailed written statement of such damages and cause thereof within thirty (30) days after the act or material omission by the City.

**ARTICLE 10 – PROHIBITION AGAINST ASSIGNMENT:**

10.1 The Contractor shall not assign, delegate, subcontract or in any way transfer any interest in this Contract without prior written consent of the Official.

**ARTICLE 11 – COMPLIANCE WITH LAWS AND PUBLIC POLICY:**

11.1 This Contract is made subject to all laws of the Commonwealth of Massachusetts.

11.2 The Contractor shall provide, at its sole expense, all necessary licenses, permits or other authorizations required by the City, the Commonwealth of Massachusett ny other governmental agency with proper jurisdiction.

11.3 The Contractor shall where applicable take out and maintain during the term of this Contract such Worker's Compensation insurance as may be reasonably necess protect the Contractor from claims under General Laws c. 152 (the Worker's Compensation Law).

11.4 The Contractor agrees and shall require any subcontractor to agree not to discriminate in connection with the performance of work under the Contract against mployee or applicant for employment because of sex, race, religious creed, national origin or age. The Contractor agrees and shall require any subcontractor to agree to po onspicuous places notices to be provided by the Massachusetts Commission Against Discrimination, setting forth provisions of the Fair Employment Practice Law of ommonwealth.

11.5 The Contractor's attention is called to General Laws c. 268A (the Conflict of Interest Law) in which the City has a direct and substantial interest. mployee or any other party, nor shall the Contractor make gifts regarding this Contract or any other matter in which the City has a direct and substantial interest.

11.6 The Contractor shall keep himself fully informed of all City Ordinances and Regulations, and State and Federal laws, which in any manner affect the work he pecified. The Contractor shall at all times observe and comply with said ordinances, regulations or laws, and shall protect and indemnify the City, its officers, agents and employ gainst any claim or liability arising from or based on the violations of such ordinances, regulations or laws, caused by the negligent actions of the Contractor, his agents mployees.

11.7 In furtherance of the Mayor's Executive Order "Minority and Women Business Enterprise Development" dated December 31, 1987 and the Ordinance entitled "Promo inority and Women Owned Business Enterprises in the City of Boston" (Ordinances of 1987, Chapter 14), it is understood and agreed by the Contractor, and the Contractor by ecution of this Contract so certifies, as follows: (1) That the contractor shall actively solicit bids for the subcontracting of goods and services from certified minority and wo usinesses; (2) That in reviewing substantially equal proposals the Contractor shall give additional consideration to the award of subcontracts to certified minority and wo ders.

**ARTICLE 12 – AVAILABLE APPROPRIATION:**

12.1 This Contract is subject to the availability of an appropriation therefor.

12.2 If the Contract is funded under a grant with the Federal Government, it is being executed without further appropriation pursuant to General Laws c. 44, s.53A.

12.3 When the amount of the City Auditor's certification of available funds is less than the face amount of the Contract, the City shall not be liable for any claims or requ payment by the Contractor which would cause total claims or payments under this Contract to exceed the amount so certified.

12.4 Unless otherwise expressly provided in a writing incorporated herein by reference, the amount certified by the City Auditor as available funds under this Contract ma creased or decreased by the Official with the written approval of such change by the City Auditor. In the event of any decrease in the amount certified, the Contractor sha mpensated for services rendered to the effective date of such reduction, in accordance with the rates of compensation specified in this Contract.

**ARTICLE 13 – RELEASE OF CITY ON FINAL PAYMENT:**

13.1 Acceptance by the Contractor of payment from the City for final services under this Contract shall be deemed to release forever the City from all claims and liabil cept those which the Contractor notifies the Official in writing within six (6) months after such payment.

## CERTIFICATE OF AUTHORITY
### (For Corporations Only)

September 1, 2004
(Current Date)

At a meeting of the Directors of the __International Salt Co., LLC__
(Name of Corporation)

duly called and held at __Clarks Summit, PA__

on the ____12th____ day of ____May____, __1997__, at

which a quorum was present and acting, it was VOTED, that

__DANIEL P. THOMPSON__
(Name)

the __Vice Pres Hwy Bidding & Sales__ of this corporation is hereby
(Office)

authorized and empowered to make, enter into, sign, seal and deliver in behalf of this

corporation a contract for ____

__Furnishing Ice Control Rock Salt__

____

____

(Describe Service)

with the City of Boston, and a performance bond in connection with said contract.

I do hereby certify that the above is a true and correct copy of the record, that

said vote has not been amended or repealed and is in full force and effect as of this date,

and that ____DANIEL P. THOMPSON____
(Name)

is the duly elected __Vice President Highway Bidding & Sales__
(Office)

of this corporation.

Attest:

(Affix Corporate Seal Here)

(Clerk) (Secretary) of the Corporation

**RAIMUNDO SANCHEZ**
**Secretary**

APPROVED AS TO FORM BY CORPORATION COUNSEL FEBRUARY, 1998
THIS FORM IS VOID AND WITHOUT LEGAL EFFECT IF ALTERED IN ANY WAY

CITY OF BOSTON/COUNTY OF SUFFOLK

INVITATION FOR BIDS*

1. **INVITATION**

    1.1. The City of Boston/County of Suffolk, acting by the Official designated in the advertisement, invites sealed bids for providing the goods or services and performing the work as described in the Purchase Description and Specifications attached hereto, in accordance with the terms and conditions of the attached contract documents.

2. **SUBMISSION OF BIDS**

    2.1. *Filing Of Bid And Form Of Bid Deposit*
The original bid shall be <u>signed</u>. The original bid and a duplicate copy thereof (which may be a photocopy) shall be enclosed in an envelope. The envelope shall be sealed and plainly marked on the outside thereof with a description of the goods or services to be provided, bid opening date, and the bid number, if applicable. The bid shall be filed before the time and at the place designated in the Advertisement attached and incorporated by reference herein and shall be accompanied by a bid deposit in the form of a bank check, a certified check, or a treasurer's or cashier's check issued by a responsible bank or trust company, payable to the City of Boston, or a bid bond in a form satisfactory to the Official with a surety company qualified to do business in Massachusetts if, and as specified, in the Advertisement.

    2.2. *Time For Filing Bids; Time Of Bid Opening*
Bids shall be filed no later than the time and date designated in the Advertisement; the opening of bids shall be on the date and at the time specified in said Advertisement.

    2.3. *Withdrawal Of Bids*
No bid may be withdrawn after the time set for bid opening except by written notice received by the Official prior to the time and date set for bid opening as set forth in the Advertisement. No bid filed by any responsible and responsive bidder may be withdrawn after the date and time of opening, nor prior to the execution and delivery of a contract to the lowest responsible and responsive bidder. The Official shall award a contract prior to the expiration of ninety (90) days (Saturdays, Sundays and legal holidays inclusive) after the opening of bids, or within such other time specified in the Advertisement.

3. **BID DEPOSITS: AMOUNT; RETURN OF DEPOSIT; FAILURE OF PERFORMANCE/LIQUIDATED DAMAGES**

    3.1. *Amount Of Bid Deposit*
The amount of any bid deposit shall be as specified in the Advertisement. All bid deposits of twenty-five dollars ($25.00) or less shall be retained by the City as a bid filing charge.

    3.2. *Return Of Deposit*
All other bid deposits, as specified in section 2.1, except those of the three lowest responsible and responsive bidders, shall be returned upon notice of award of a contract, or if no award is made, no later than ninety (90) days after the date of the opening of bids.

[*This form shall be used for all competitive sealed bid contracts, whether or not governed by G.L. c. 30B]

1

The bid deposits of the three lowest responsible and responsive bidders shall be returned only upon the execution and delivery of the contract to the City or, if no award is made, no later than ninety (90) days after the date of the opening of bids or, if federal, state or other government approval is required, within thirty (30) days (Saturdays, Sundays, and legal holidays included) after the date of such approval.

3.3. *Failure Of Performance; Liquidated Damages*
If the successful bidder fails to perform his agreement to execute a contract and furnish the required security for performance within ten (10) days (Saturdays, Sundays and legal holidays excluded) after an award is made to him, or within such additional time as the Official may authorize in writing, the bid deposit shall become and be the property of the City of Boston as liquidated damages; provided, that the amount of the bid deposit which becomes the property of the City shall not, in any event, exceed the difference between the bidder's price and the price of the next lowest eligible and responsible bidder; and provided further, that, in case of death, disability or other unforeseen circumstance affecting the bidder, the bid deposit shall be returned to the bidder after submission of a sworn affidavit delivered to, and accepted by, the Official.

4.    SPECIFICATIONS

4.1. Before submitting any bids, bidders shall fully inform themselves in regard to all conditions pertaining to the Invitation For Bids and all required terms and conditions for carrying out the contract. By filing a bid the bidders do thereby represent that they have so informed themselves. Any estimates, plans or other information relating to the goods, services, labor or materials or work required by the contract documents are to be considered for the purpose of comparing the several bids. Neither the City/County, nor its officers, agents or employees, shall be responsible for the accuracy of, or bound by, such estimates, plans or information.

5.    BIDS FOR EQUAL ITEMS

5.1. *Equal Bids Shall Be Considered*
Except where otherwise specifically provided to the contrary in the contract documents, any proprietary name mentioned in the Purchase Description and Specifications is for the purpose of information only and is not intended to limit competition. Bids for any article, assembly, system or any component part thereof (hereinafter "item") equal to that named in the specifications will be considered. An item shall be considered equal to the item so named if (1) it is at least equal in quality, durability, appearance, strength, and design, (2) it will perform at least equally the function imposed by the general design for the work being contracted for or the material being purchased, and (3) it conforms substantially, even with deviations, to the detailed requirements for the item in the said specifications.

5.2. *Notice of "Equal"*
A bidder submitting a bid on proprietary item(s) other than the specific item(s) named in the specifications shall submit, with the bid forms filed, a written notice containing the name and full particulars pertaining to such item(s) including, but not necessarily limited to, the manufacturer's name, catalogue number, model number and price.

5.3. *Judgment As To Equality*
The decisions of the Official as to whether an item(s) is or is not equal shall be final.

5.4. *Expense Of Proving Equality*
Any and all expense necessary to prove to the Official the quality of items offered as equal to the specific item or specified names shall be borne exclusively by the bidder submitting any proposed substitutions.

## 6. INFORMATION AS TO PROPOSED MATERIALS

6.1. Before any contract is awarded, the bidder may be required to furnish, without expense to the City, a complete statement of the original composition and manufacture of any or all materials proposed to be used in the performance of the work, together with all samples, which may be subjected to any reasonable tests required by the Official to determine their quality and fitness for the work. The particulars of tests, if any, may be set forth on the form entitled Evaluation Criteria.

## 7. PRICE BASIS ON CONTRACTS FOR THE PURCHASE OF GOODS AND SERVICES

7.1. *Purchase Of Goods Defined*
The purchase of goods shall mean goods as defined in the Uniform Commercial Code, G.L.c.106, §2-105, or all property, other than real property, including equipment, materials, printing and insurance, and further including services incidental to the delivery, conveyance and installation of such property.

7.2. *Purchase Of Service Defined*
The purchase of services shall mean the furnishing of labor, time, or effort by a contractor, not involving the furnishing of a specific end product other than reports.

7.3. *Firm Bid Price; Exception*
Except where otherwise specifically provided to the contrary in the Advertisement, or in the Purchase Description and Specifications, or Evaluation Criteria, as the case may be, prices bid will be accepted by the City as firm prices unless the Official has specifically requested and a bidder specifically responds in writing in its bid consistent with the Official's request that the prices bid are subject to decrease or increase and the basis for calculation of the amount thereof.

7.4. *Price Escalation*
In the event that the Advertisement, or Purchase Description and Specifications, or Evaluation Criteria, as the case may be, provides that prices for contracts are subject to price change, the bidder shall strictly respond to the Invitation For Bids with respect to price requirements, including the amount or percentage of price change and applicable time period(s).

## 8. TAXES

8.1. The City is exempt from federal excise taxes (Federal Exemption No. A-108-328) and from the Massachusetts sales and use tax (Certificate No. E-046-001-380). Exemption Certificates will be provided, if requested, following award to the successful bidder.

## 9. BASIS FOR ACCEPTANCE/CONFLICT OF INTEREST

9.1. Any bid made will be accepted only on the basis that the bidder, by filing its bid, represents that it is made in good faith without fraud, collusion or connection of any kind with any

other bidder for the same work; that the bidder is competing solely in its own behalf without connection with, or obligation to, any undisclosed person, firm or corporation; that no other person, firm or corporation has any interest in the contract; that no officer, agent or employee of the City/County is financially interested in the contract; that the bidder is fully informed in regard to all provisions of the contract documents, including, without limitation, the specification and drawings, if any; the time for performance and the provisions with respect to liquidated damages, bonds and insurance, if any.

## 10.  QUESTIONS

10.1. All questions as to the interpretation of the Invitation For Bids, Purchase Description and Specifications, Evaluation Criteria and all other contract documents shall be submitted in writing to the Official.  Written answers to such questions will be sent by the Official to each person on record as having received an Invitation For Bids and all documents incorporated by reference therein.  No questions will be answered unless received by the Official at least seventy-two hours prior to the expiration of the time set for filing bids.

## 11.  CONTRACT AWARD

11.1. *Bid Opening*
Bids shall be publicly opened and read aloud at the time and place designated in the Advertisement.

11.2. *Right To Accept Or Reject*
The Official reserves the right to waive any minor informalities and to accept or reject any or all bids.  In the event the Purchase Description and Specifications require bids for goods and multiple items each of which has separate price components, the Official reserves the right to accept or reject any item(s) therein and award contracts therefor.  The Official shall award the contract to the bidder the Official determines to be the lowest responsible and responsive bidder.

11.3. *Agreement By Bidder*
The submission of a bid shall constitute agreement on the part of the bidder that, if the bidder is given or mailed a notice of acceptance within ninety (90) days (or such other time specified in the Advertisement) of the bid opening, the bidder shall within ten (10) calendar days (Saturdays, Sundays and legal holidays excluded) of receipt of such notice or within such additional time as the Official may authorize in writing, deliver to the Official a contract properly executed together with the required security for performance and any other required contract forms requested by the Official.

## 12.  PERFORMANCE BOND

12.1. A performance bond of a surety company authorized to do business in Massachusetts and satisfactory in form to the Official, or a certified check, or a treasurer's or a cashier's check, issued by a responsible bank or trust company, payable to the City of Boston , may be required of the successful bidder as security to guarantee the faithful performance of the contract.  If security is required, the penal sum of such bond or amount of such check shall be as specified in the Advertisement.

12.2. Simultaneously with the execution of the contract, the successful bidder shall deliver such bond or other security to the Official.  Failure to provide the required bond or other security

4

within the time herein specified in paragraph 11.3 shall render the contract award void and result in the forfeiture of the bid deposit as liquidated damages.

## 13. HARMONIOUS LABOR RELATIONS

13.1. The submission of a bid shall constitute the certification of the bidder that the bidder is able to and will furnish labor that can work in harmony with all elements of labor employed or to be employed on the work.

## 14. QUALIFICATIONS OF BIDDERS

14.1. It is the purpose and intention of the Official not to award the contract to any bidder who does not furnish evidence, when requested, satisfactory to the Official that he has the ability and experience to perform the pertinent class of work.

## 15. UNIT PRICE PROPOSALS

15.1. The bidder shall submit the bid upon the Bid Response Form furnished by the Official. If the bid is on a unit price basis, the bidder shall respond to and specify a unit price, in both words and figures, if so required in the price specifications, for each item for which a quantity is given, and shall show the products of the respective unit prices and quantities written in figures in the column provided for that purpose and the grand total amount of the bid obtained by adding the amounts of the several items. All words and figures shall be typewritten or in pen and ink. In case of a discrepancy between the prices written in words and those written in figures, the written words shall govern. In the event there is a discrepancy between the unit prices and the total sum of all items, the unit prices shall govern.

## 16. ADDENDA

16.1. Any supplemental instructions, amendments or changes in the Invitation For Bids, or attached documents, shall be in the form of written addenda to this Invitation. If issued, such addenda shall be sent by first class mail or tele-fax to all persons of record as having received an Invitation For Bids at the address listed thereon. Such addenda, if any, will be sent no later than five (5) business days prior to the time set for the opening of bids.

16.2. Failure of any bidder to respond to any such addenda shall not relieve such bidder from any obligation under the bid as submitted. At the time of the opening of bids, each bidder shall be conclusively presumed to have received and understood all bid documents, including all addenda, and the failure of any bidder to examine any form, instrument or other document which is part of the Invitation For Bids shall in no way relieve such bidder from any obligation arising under law from the submission of a bid.

## 17. TOXIC OR HAZARDOUS SUBSTANCES

17.1. A bidder filing a bid concerning materials containing toxic or hazardous substances must submit a Material Safety Data Sheet with such bid. This document must accompany any deliveries of materials containing such substances when made by the successful bidder, his agent, or contractor. A bidder agrees to comply with the so-called "Right-To-Know Law", G.L.c.111F, in respect to the labeling, handling and delivery of substances subject to the jurisdiction of said law.

5

(Form CM 03)

18. **INVITATION FOR BIDS INCLUDES BY REFERENCE ALL DOCUMENTS REFERRED TO AND INCLUDED THEREIN**

18.1. This Invitation For Bids hereby expressly incorporates by reference any and all documents referred to therein, including without limitation the Advertisement, the Purchase Description and Specifications, the Evaluation Criteria, and all contractual terms and conditions applicable to the procurement.

18.2. This Invitation For Bids expressly incorporates by reference the City of Boston/County of Suffolk Standard Contract General Conditions (Form CM 11) and such other contractual terms as the Official deems necessary.

APPROVED AS TO FORM BY CORPORATION COUNSEL DECEMBER, 1998
THIS FORM IS VOID AND WITHOUT LEGAL EFFECT IF ALTERED IN ANY WAY

(FORM CM-07)

## CITY OF BOSTON/COUNTY OF SUFFOLK

### BID RESPONSE FORM

BIDDER'S NAME: **INTERNATIONAL SALT COMPANY, LLC**

(Full legal name of Bidder)

PLACE OF BUSINESS: **Clarks Summit, Pennsylvania**

BIDDER'S CONTACT PERSON: **DANIEL P. THOMPSON** TEL: 888-388-4726 & press option 1

To the Official, acting in the name and behalf of the City of Boston/County of Suffolk:

A.  Summary Of Supplies/Services Subject To Bid

The undersigned proposes to furnish the specified supplies or services and to perform all work required for:

**Furnishing Ice Control Rock Salt**

*(Official will describe here services or supplies to be procured prior to issue of Invitation For Bids; to be identical with Purchase Description and Specifications)*

in accordance with the terms of the accompanying Advertisement, Purchase Description and Specifications and other contract documents, with special reference to the Invitation For Bids, the terms of which are incorporated herein, all of which have been provided by the City.

Notice To Bidder:  Bidders must itemize any deviation from original specifications on a separate sheet.  Catalogs or brochures will not be accepted as sole compliance with this requirement unless they also include complete technical information.

B.  Documents Included

In addition to this Bid Response Form, this bid includes the following documents supplied by the Bidder [List Below]: **$20 non-refundable check; Certified Resolution; License to do Business; MSDS and ability letter**

C.  Price Bid

The total bid price for this contract is: **$36.42/T** **Thirty-six dollars forty-two cents per ton = $2,731,500.00** **Two million seven hundred thirty-one thousand five hundred dollars no cents**

(in words & figures; may attach separate schedule)

1

(FORM CM-07)

In response to the Price Requirements in the Purchase Description and Specifications, the price components of the bid price are:

**Total contract. Based upon 75,000 tons.**

*(Complete as required in Price Requirements: e.g., rates, price changes, first fiscal year, total contract period, etc. May attach separate schedule.)*

The names and address of all persons interested in this bid as principals other than the undersigned are:

| Robert H. Jones | Clarks Summit, PA |
| Daniel P. Thompson | Clarks Summit, PA |
| Raimundo Sanchez | Clarks Summit, PA |

D.   References:

**Notice To Bidder:** Failure to provide the following information, if required in the Purchase Description and Specifications, will result in a non-responsive bid.

1.   List three or more contracts on which you served as contractor or have provided goods and supplies, as the case may be, within the past two (2) years (unless a lesser or greater period is specified by the Official) for work of similar character as required in the Purchase Description and Specifications in this Invitation For Bids.

*Reference 1*
Scope of Contract:                    **Supplying Rock Salt**

Company or Entity:                    **Commonwealth of Massachusetts**

Contact Name & Phone #:               **Mr. Ronald Whitaker – 617–720–3112**

Amount of Contract:                   **115,300 tons**

*Reference 2*
Scope of Contract:                    **Supplying Rock Salt**

Company or Entity:                    **State of Connecticut**

Contact Name & Phone #:               **Mrs. Janice Snyder – 860–594–2350**

Amount of Contract:                   **88,178 tons**

*Reference 3*
Scope of Contract:                    **Supplying Rock Salt**

Company or Entity:                    **State of New Jersey**

Contact Name & Phone #:               **Mr. Al Karamali – 609–292–4188**

Amount of Contract:                   **250,600 tons**

2

2.    Bank reference(s):

<table>
<tr><td>Name of Bank:</td><td>Telephone No.:</td></tr>
<tr><td>PNC Ban, Scranton, PA</td><td>570-961-6419</td></tr>
</table>

E.    Legal Form Of Business Entity

The bidder is a/an _____ **Corporation** _____
(Individual-Partnership-Corporation-Joint Venture-Trust)

1.    If the bidder is a <u>Partnership</u>, state name and residential address of all general and limited partners:

2.    If the bidder is a <u>Corporation</u>, state the following:

Corporation is incorporated in the State of _____ **Delaware**

**Chief Executive Officer** ~~Plsdddrhl~~    **Robert H. Jones**

**Chief Financial Officer** ~~Treasprer hl L~~    **Raimundo Sanchez**

Place of business is _____ **655 Northern Boulevard**
(Street)
**Clarks Summit, PA  18411-0540**
(City, State and Zip Code)

3.    If the bidder is a <u>Joint Venture</u>, state the name and business address of each person, firm or company that is party to the joint venture:

A copy of the joint venture agreement is on file at _____
and will be delivered to the Official on request.

4.    If the bidder is a <u>Trust</u>, state the name and residential address of all Trustees:

A copy of the trust documents are on file at _____
and will be delivered to the Official on request.

3

F.  If the business is conducted under any title other than the real name of the owner, state the time when, and place where, the certificate required by General Laws, Chapter 110, §5 was filed:

_____

G.  The Taxpayer Identification Number* of the bidder (the number used on the Employer's Quarterly Federal Tax Return, U.S. Treasury Department Form 941) is:

        52-2034785   _____

**International Salt Co., LLC is a one member LLC.  As such, the Massachusetts Income Tax**
        *If individual, use Social Security Number:_____
**Returns are filed under the Parent Company's Federal ID #23-2928279.**

                                          **Seven (7) years**
H.  Have been in business under present business name _____ years.

I.  Ever failed to complete any work awarded?  ___**No.**_____

If answer is yes, state circumstances: _____

_____

J.  Pursuant to M.G.L. c.60, §93, the undersigned understands and agrees that if a contract is awarded to the bidder, that the Collector-Treasurer of the City of Boston may withhold from amounts owing and payable under any contract awarded to a successful bidder any and all sums owed to any department or agency of the City of Boston which remain wholly or partially unpaid.  This shall include but not be limited to unpaid taxes and assessments, police details, and any other fees and charges until such sums owed have been paid in full, and the Collector-Treasurer further may apply any amounts owing and payable under any contract awarded to the successful bidder to satisfy any monies owed to the City.

K.  Pursuant to M.G.L. c.62C, §49A, the undersigned certifies under the penalties of perjury that to the best of his/her knowledge and belief all state tax returns have been filed and that all state taxes required under law have been paid.  (NOTE:  The Taxpayer Identification Number will be furnished to the Massachusetts Department of Revenue to determine compliance with the above-referenced law.)

L.  The undersigned certifies under penalties of perjury that this bid or proposal has been made and submitted in good faith and without collusion or fraud with any other person.  As used in this certification, the word "person" shall mean any natural person, business, partnership, corporation, union, committee, club, or other organization, entity or group of individuals.

<center>4</center>

Bidder: INTERNATIONAL SALT COMPANY, LLC

By: _____
(Sign Here)

DANIEL P. THOMPSON, Vice President Highway Bidding & Sales
Business Address: P. O. Box 540
(Street)

Clarks Summit, PA 18411-0540
(City, State, Zip Code)

NOTE:  THIS BID MUST BEAR THE WRITTEN SIGNATURE OF THE BIDDER.

If the bidder is an individual doing business under a name other than his own name the bid must so state, giving the address of the individual.

If the bidder is a partnership, the bid must be signed by a partner designated as such.

If the bidder is a corporation, trust or joint venture the bid must be signed by a duly authorized officer or agent of such corporation, trust or joint venture.

APPROVED AS TO FORM BY CORPORATION COUNSEL FEBRUARY, 1998
THIS FORM IS VOID AND WITHOUT LEGAL EFFECT IF ALTERED IN ANY WAY

5

Bid #.   1253

## PURCHASE DESCRIPTION AND SPECIFICATIONS

DEPARTMENT: __VARIOUS CITY DEPTS.__   COMMODITY CODE: __775-45__

REQ(S): __VARIOUS__

PERIOD OF DELIVERY: __IMMEDIATE__   THROUGH __JUNE 30, 2005__

The City of Boston, a Municipal Corporation of the Commonwealth of Massachusetts, acting by its Purchasing Agent with the approval of its Mayor and the Contractor agree in accordance with the provisions of the contract documents incorporated herein, as follows:

The Contractor shall furnish and deliver the following goods, and the City shall pay the following prices thereof, as specified in the pricing schedule and according to the following specifications:

Standard Discount Terms:

____X____ Net   **Terms:  Net 30 days**

_____Other _____

NOTE:  Discounts under thirty (30) days will not be considered.

All shipments are to be F. O. B. destination.

Descriptive literature must accompany all items that are bid.  Contractors must itemize any deviations from original specifications on a separate sheet.  Catalogs or brochures will not be accepted as sole compliance with this requirement unless they also include complete technical information.

Warranties:  Bidders must furnish manufacturer's warranty and the name, address and telephone number of warranty service facility.

Buyers doc

## BID NO 1253

## ROAD MAINTENANCE SALT

| ITEM | QTY | UNIT | ITEM DESCRIPTION | UNIT PRICE | TOTAL |
|------|-----|------|------------------|------------|-------|
| 01 | 75,000 | tons | Sodium chloride bulk (SEE ATTACHED SPECIFICATIONS) | $ 36.42/T | $2,731,500.00 |

STATE LOCATION OF STOCKPILE(S)_____**Boston, Massachusetts**_____

ADDRESS OF ON SITE PICK UP: _____**Boston, Massachusetts**_____
(IF APPLICABLE )

EMERGENCY TELEPHONE NUMBER:  **888-388-4726 & press option 1**
(24 HOURS A DAY, 7 DAYS A WEEK) **(Emergency toll free (888) number is connected to a 24 hour answering service for placement of orders.)**

NOTE: LOCATION MAY BE A FACTOR IN DETERMINING THE AWARD OF THIS BID

PRICE WILL BE HELD FOR THE TERM OF THE CONTRACT AND SHALL NOT BE LIMITED TO THE ESTIMATED NUMBER OF ITEMS.

THE FOLLOWING IS A LIST OF THE PUBLIC WORKS DEPARTMENT DELIVERY LOCATIONS:

| 1 | 400 FRONTAGE RD., BOSTON, MA |
| 2 | 280 HIGHLAND ST., ROXBURY, MA |
| 3 | 160 HANCOCK ST., DORCHESTER, MA |
| 4 | 315 WESTERN AVE., BRIGHTON, MA |
| 5 | 315 GARDNER ST., WEST ROXBURY, MA |
| 6 | 58 GIBSON ST., DORCHESTER, MA |
| 7 | 58 DANA AVE., HYDE PARK, MA |
| 8 | 320 EAST EAGLE ST, BOSTON, MA |

| 02 | 10,000 | bags | Sodium Chloride 80# or 100# bags | $ No Bid | $ No Bid |

STATE BRAND NAME _____

STATE SIZE OF BAG _____

Pricing Section
Page 1

sodium.doc

| ITEM | QTY | UNIT | ITEM DESCRIPTION | UNIT PRICE | TOTAL |
|------|-----|------|------------------|------------|-------|

APPROXIMATELY $50,000.00. WILL BE EXPENDED BY THE CITY OF BOSTON FOR THE FOLLOWING MATERIALS.

| 03 | per | bag | Calcium Chloride  80# bags<br>Dow "Pelladow"  or equal | $ __No Bid__ | |

STATE BRAND NAME; _____

STATE SIZE OF BAG. _____

| 04 | per | bag | Industrial Grade Urea Pellets  50#  bags | $ __No  Bid__ | |

STATE BRAND NAME _____

STATE SIZE OF BAG _____

DESCRIPTIVE LITERATURE AND MATERIAL SAFETY DATA SHEET MUST ACCOMPANY THIS BID.

sodium.doc

## SPECIFICATIONS FOR SODIUM CHLO RIDE BULK:

### DELIVERY:

To be delivered as requested by the contractor's truck (s) to any of the various City yards.

### SODIUM CHLORIDE BAGS

To be delivered as requested to any of the various City departments.
**INSIDE DELIVERY REQUIRED:**

### MATERIAL

Sodium Chloride shall be delivered in a free flowing and useable condition. It shall be free from agglomerates and from lumps. Deliveries that do not conform to these requirements shall be rejected.

### CHEMICAL AND PHYSICAL REQUIREMENTS

### BULK SALT SHALL COMPLY WITH THE FOLLOWING REQUIREMENTS

(A)    Moisture that exceeds 3% shall be subject to the requirements for moisture as indicated under "DEDUCTIONS"

(B)    Sodium Chloride content that is under 97% shall be subject to the requirements for sodium chloride content as under "DEDUCTIONS"

(C)    Gradation that varies from the following table shall be subject to the requirements for gradation as indicated under "DEDUCTIONS"

| | | |
|---|---|---|
| 1. | Retained on a 3/4" sieve | 5% maximum |
| 2. | Retained on a 5/8" sieve | 5% maximum |
| 3. | Retained on a #4   sieve | 20% minimum |
| 4. | Retained on a #8   sieve | 50% minimum |
| 5. | Passing a     #30 sieve | 7% maximum |

sodium.doc

## SAMPLES

The Contractor shall provide every facility should the City of Boston elect to have sampling done at the contractor's place of storage. If the City of Boston decides to sample the material at the time of delivery, it is understood that the samples will be taken from the truck.

If the sampling is done at time of delivery, samples shall be taken from every truck load of sodium Chloride delivered. Sampling will be done by a representative of the testing laboratory engaged by the City of Boston to sample and test sodium chloride, and in the following manner:

Samples shall be taken of approximately one pound each at the quarter points and middle of the truck along the center line representative of the cross-section to a depth of at least six inches after removing one inch of the top surface: Sampling will be done by means of a sampling thief or other method that will ensure a sample that is representative of a cross section of the sodium chloride.

The three samples taken from each truck-load of sodium chloride shall be accumulated in an air-tight container until approximately five hundred tons of sodium chloride have been delivered and sampled. These samples will then be combined to form a representative composite sample of the sodium chloride delivered and placed in an air-tight container for transportation to the laboratory for testing.

## NUMBER OF TESTS

The application of deductions if any, shall be based on one test for each five hundred tons (approximately) of sodium chloride delivered.

## METHOD OF TESTING

The chemical analysis and moisture content determinations shall be made in accordance with the methods specified for "SALT" in the current "OFFICIAL METHODS OF ANALYSIS FOR THE ASSOCIATION OF OFFICIALS OF AGRICULTURE CHEMISTS." The determination for gradation shall be made in accordance with the current ASTM-D 632-84 or its latest revision.

**International Salt Company's specs meet ASTM D-632-84 or its latest revision.**

## LOCATION OF STOCKPILE:

The contractor must have a sufficient supply locally to satisfy City of Boston requirements and must indicate the location of the stockpile.

sodium.doc

## SODIUM CHLORIDE CONDITIONER

In order to prevent caking while in storage following delivery, the sodium chloride shall be treated with an anti-cake material prior to delivery. The treatment shall be considered adequate if it meets the following tests:

Into a 6" x 6" tinned metal pail with perforated bottom (for draining). 2500 grams of treated salt shall be placed. The salt shall then be moistened with 100ml. of water and allowed to air-dry at room temperature for 24 hours. The pail containing the treated sodium chloride shall then receive five cycles of thirty minutes in a room at 98 degrees F. Followed by air drying for 24 hours at room temperature. The sodium chloride shall then be moistened with another 100ml. of water and allowed to dry at room temperature for 24 hours. The pail of sodium chloride shall then receive five more cycles as before. At the end of these treatments, the bidder shall submit a certificate giving the trade name of the conditioner and the name and address of the manufacturer.

## DEDUCTIONS

When it is found that the sodium chloride delivered does not comply with the specification requirements, deductions shall be made from the contract price as follows:

| | MOISTURE CONTENT | | DEDUCTION |
|---|---|---|---|
| (A) | OVER | NOT OVER | A deduction of 1% per ton |
| | 3% | 3.99% | A deduction of 1% per ton for each 1% fraction |
| | 4% | | thereof over 1% moisture |

| | SODIUM CHLORIDE CONTENT | | |
|---|---|---|---|
| (B) | BELOW | NOT UNDER | A deduction of 1% per ton for each 1% fraction |
| | 97% | 93% | thereof below 97% sodium chloride if the delivery |
| | | | has a sodium chloride content of less than 93% the |
| | | | deduction shall be at the rate of $1.00 per ton for |
| | | | each 1% fraction thereof under 93% sodium chloride. |

## GRADATION

1)    Retained on a 3/4" sieve a deduction of 1% per ton shall be made for each 1% or fraction thereof over 5% retained on the 3/4" sieve, except that if more than 10% of the sodium chloride deliveries are retained on the 3/4" the deduction shall be made at the rate of $1.00 per ton for each 1% or fraction thereof over 10%.

2)    Retained on a 5/8" sieve. A deduction of 1% per ton shall be made for each 1% or fraction thereof over 5% retained on the 5/8" sieve.

ADVERTISEMENT
CITY OF BOSTON
ADMINISTRATIVE SERVICES DEPARTMENT/PURCHASING DIVISION

William J. Hannon
PURCHASING AGENT
617-635-4564

———————

INVITATION FOR SEALED BIDS
FOR FURNISHING GOODS
AND MATERIALS

———————

FISCAL YEAR 2005
================

The City of Boston (the City)/the County of Suffolk (the County), acting by its Purchasing Agent invites sealed bids for the items as described below and particularly set forth in the Invitation For Bids which may be obtained at the office of the Purchasing Agent, Boston City Hall, Room 808, One City Hall Plaza, Boston, MA 02201 commencing at 8:00 A.M. Boston Time on August 23, 2004,  Invitations for bids shall be available until the time of the bid opening.

Every sealed bid shall be submitted in duplicate; on, and in accordance with, the Invitation For Bids.

The attention of all bidders is directed to the provisions of the Invitation For Bids and contract documents, specifically to the requirements for bid deposits, insurance and performance bonds as may be applicable.

A non refundable bid deposit in the amount of $20.00 shall be required from each bidder.

Sealed bids shall be publicly opened by the official on the date specified at the Purchasing Division, Room 808, Boston City Hall.

The award of any contract shall be subjected to the approval of the Mayor of Boston and the City of Boston Purchasing Agent.

The Maximum time for bid acceptance by the City after the  opening of bids shall be ninety (90) days.

The City/County and the Official reserve the right to reject any or all bids, or any item or items thereof.


Bid No. 1245      **Harley Davidson Motorcycle**
                  To Boston Police Department
                  Bid Opening Date: September 8, 2004
                  (Commodity Code:070-20; Buyer John Shea)

Bid No. 1246      **T.S.E. - Aluminum Sign Holders**
                  To Transportation Dept
                  Bid Opening Date: September 14, 2004
                  (Commodity Code: 550-00; Buyer Mary Caiani)

Bid No. 1247      **T.S.E. - Aluminum Sign Blanks**
                  To Transportation Dept
                  Bid Opening Date: September 14, 2004
                  (Commodity Code: 550-00; Buyer Mary Caiani)

Bid No. 1248      **T.S.E. - Stop Faces**
                  To Transportation Dept
                  Bid Opening Date: September 14, 2004
                  (Commodity Code: 550-00; Buyer Mary Caiani)

Bid No. 1249    **T.S.E. - Stainless Steel Strapping , Clips And Mounting Brackets**
To Transportation Dept
Bid Opening Date: September 14, 2004
(Commodity Code: 550-00; Buyer Mary Caiani)

Bid No. 1250    **T.S.E. - Sheeting Films (Non - Reflective)**
To Transportation Dept
Bid Opening Date: September 15, 2004
(Commodity Code: 550-00; Buyer Mary Caiani)

Bid No. 1251    **T.S.E. - Sheeting Engineer Grade (Reflective)**
To Transportation Dept
Bid Opening Date: September 15, 2004
(Commodity Code: 550-00; Buyer Mary Caiani)

Bid No. 1252    **T.S.E. - Galvanized Poles**
To Transportation Dept
Bid Opening Date: September 15, 2004
(Commodity Code: 550-00; Buyer Mary Caiani)

Bid No. 1253    **Road Maintenance Salt**
To Various City Departments
Bid Opening Date: September 8, 2004
(Commodity Code: 775-45; Buyer Vincent Caiani)

Bid No. 1254    **LTO Automated Tape Library**
To Boston Library Departments
Bid Opening Date: September 8, 2004
(Commodity Code: 939-21; Buyer Vincent Caiani)

(August 23, 2004)
(August 30, 2004)
(September 6, 2004)

# PROCEDURES AND CHECK LIST FOR
## REVIEWING A PURCHASE CONTRACT
### (PRIOR TO AUDITING SIGNATURE)

Contract # _15 878-05_                Reviewer: _Diane Oldman_

Full award to One Vendor:

Computation:  When the full bid is awarded to one vendor, check and compare:

✓ "Contract Amount" on the Award Letter
✓ "Total Not to Exceed Amount" on the CM-10
✓ Highlight the total Bid Amount on the Bid Sheet(s)
✓ Highlight Section C "Bid Price" on the CM-1 (page 1)
✓ All four total above much match exactly:  no calculation tape necessary

Verification:  Check and Verify:

✓ Check for original signatures on the Award Letter
✓ The CM-10 Standard Contract must be signed by the Contractor
✓ The CM-06 (if applicable) must be included and signed by the Contractor's representative, if the vendor is a corporation
✓ The CM-03 "Invitation For Bids" must be included
✓ The CM-07 "Bid Response Form" must be included and signed by the contractor
✓ The CB-02 "Bid Opening Certification" must be included and signed by a witness and official, if contract has been advertised

Addendum:

_____ CM-14 "No Risk Certificate" signed by the Department, if a Performance Bond has not been required
_____ General Terms and Conditions must be included
_____ Pricing Section must be completed in its' entirety by the contractor
_____ Certificate of Insurance (if applicable)

Partial Award to One Vendor:

Computation:  When certain items, but not all, are awarded to a vendor, check and compare:
_____ "Contract Amount" on the Award Letter
_____ "Total Not to Exceed Amount" on the CM-10
_____ Highlight the Total Per Item Bid Amounts on the Bid Sheet(s)

_____ Using your calculator, add and highlight all the items that are awarded (to get this, also check the Award Letter and the CM-10 to the Bid Sheets:  All three totals must match exactly.  Staple the proof tape with the total highlighted to the Award Letter

Verification:  Same as Verification Process above

## CERTIFICATE FOR "NO RISK" CONTRACTS

TO:      **CORPORATION COUNSEL**

FROM:    PURCHASING DIVISION
_____

          **(Department or Agency)**

This is to certify that I have reviewed the attached contract with

    International Salt Co., LLC
_____

Vendor/Contractor

for

    Road Maintenance Salt
_____

Nature of Service

and it is my belief that there is little or no risk of default or unsatisfactory performance by the

vendor/contractor.

_____ 9/23/04

Awarding Authority / Official

APPROVED AS TO FORM BY CORPORATION COUNSEL FEBRUARY, 1998
THIS FORM IS VOID AND WITHOUT LEGAL EFFECT IF ALTERED IN ANY WAY

(CB FORM 2)

## BID OPENING CERTIFICATION FORM

Date of Public Bid Opening: _9/8/04_

| Name of Bidder | Amount of Bid |
|---|---|
| Atco Supply | various unit price |
| Waldo Bros. | various unit price |
| Granite State Minerals | 3,684,750.00 |
| Eastern Minerals, Inc. | 2,961,750.00 |
| International Salt Co. | 2,731,500.00 |
| | |

This List is a complete and accurate list of bids opened in the presence of the below-named witness:

WITNESS

_Arlene Lambert_

Signed Under Penalties of Perjury:

_Vincent A. Calcani_
Procurement Officer or Designee

THIS CERTIFICATION MUST BE FILED WITH THE ORIGINAL CONTRACT

APPROVED AS TO FORM BY CORPORATION COUNSEL FEBRUARY, 1998
THIS FORM IS VOID AND WITHOUT LEGAL EFFECT IF ALTERED IN ANY WAY

**EXHIBIT C**



# INTERNATIONAL SALT
### SPL GROUP

February 7, 2005

Mr. Vincent Caiani
City of Boston
Administrative Services Department
Purchasing Division – City Hall
Boston, MA 02201

Dear Mr. Caiani:

Re: Road Maintenance Salt Contract   Purchase Contract: 15878-05

In reference to the above mentioned contract, due to substantial increases in ocean freight it is necessary that International Salt Company raise your price to $42.36/ton effective with any shipments over 75,000 tons.

Based upon our records, as of February 4, 2005, 70,848 tons have been shipped season to date to the City of Boston.

We are looking forward to working with you for the remainder of the 2004-2005 winter season.

Best regards,

Daniel P. Thompson
Vice President Highway Bidding and Sales

ISCO-BOSTON
PLAINTIFF DX - 3

P.O. Box 540
655 Northern Boulevard
Clarks Summit, PA 18411-0540
T: (888) 388-4726
F: (570) 586-6463

**CITY OF BOSTON**
**DOC. PROD. 032**

**EXHIBIT D**

# Boston

**Thomas M. Menino, Mayor**

Neil G. Epstein
Eckert Seamans Cherin and Mellott, LLC
1515 Market Street, 9th Floor
Philadelphia, PA 19102                    April 20, 2005

Dear Mr. Epstein:

I am in receipt of your letter dated April 15, 2005 regarding the City of Boston contract with International Salt Company, contract number 15878-05, for Road Maintenance Salt to be supplied to the City for the term of October 1, 2004 through June 30, 2005 at a price of $36.42 per ton. The City does not accept your self-serving misstatement of facts.

You allege in your letter that "prior to its receipt of the full amount of Rock Salt established by the Contract, the City advised ISCO that the City would order more than 75,000 tons of Rock Salt. In response, ISCO notified the City by two letters that the contract established a fixed amount of Rock Salt to be delivered by ISCO to the City. Moreover, ISCO informed the City that, to the extent the City requested deliveries of Rock Salt in excess of 75,000 tons, ISCO would deliver such additional amounts of Rock Salt at the then-prevailing fair market value of Rock Salt." Your representation of the chronology of events is incomplete and misleading.

On February 7, 2005 Vincent Caiani, Assistant Purchasing Agent for the City of Boston, received a faxed copy of a letter from Daniel P. Thompson, Vice President Highway Bidding and Sales for ISCO. In this letter, titled by Mr. Thompson " Re: Road Maintenance Salt Contract  Purchase Contract: 15878-05", Mr. Thompson states "In reference to the above mentioned contract, due to substantial increases in ocean freight it is necessary that International Salt Company raise your price to $ 42.36/ton effective with any shipments over 75,000 tons." He further states, "We look forward to working with you for the remainder of the 2004-2005 winter season." These statements show explicit intent to deliver salt on an already existing contract, and to deliver amounts over 75,000 tons. The letter is designed as an obvious attempt to raise the price on the existing contract.



WILLIAM J. HANNON, Purchasing Agent / ASD Purchasing Division
Boston City Hall, Room 808 / City Hall Plaza /  Boston, MA 02201
(617) 635-4564

```
ISCO-BOSTON
PLAINTIFF  DX - 13
```

**CITY OF BOSTON**
**DOC. PROD. 041**

Upon receiving the letter Mr. Caiani called Mr. Thompson to discuss the matter. Mr. Caiani explained to Mr. Thompson that we are governed by the Massachusetts General Laws and that we had neither the intention nor authority under the law to change the price of a commodity on an existing contract. Mr. Thompson mentioned rising costs and the need to charge more. Mr. Caiani reports that at one point in the conversation Mr. Thompson asked, "Can you just throw me a couple of bucks".

On February 8, 2005 Vincent Caiani and I called Daniel Thompson using a speakerphone. I explained to him, as Vincent had the day before, that the City of Boston had neither the intention nor authority under the law to change the price of the contract which is governed by state law. I believe that I referred him to MGL Ch 30B at that time.

Vincent Caiani on at least two occasions during these three days, February 7, 8 and 9 talked to Robert Jones, Chief Executive Officer, International Salt Company, and explained to him both our unwillingness and lack of authority under the law to raise the price on this existing contract.

On February 10, 2005 I wrote a letter to Robert Jones, Chief Executive Officer of International Salt in which I specifically stated "The term of the contract is October 1, 2004 through June 30, 2005, and I expect that you will honor your contract and provide Sodium chloride to the City of Boston through the term of the contract at the contracted price". In this letter I also directed Mr. Jones to the language that we placed in the contract that was specifically designed to protect our right to any amount of salt that we might need during the term of the contract.

The City subsequently issued three Purchase Orders for salt: P.O. # 287141 for 25,000 tons on February 11, 2005; P.O. #291021 for 3000 tons on March 11, 2005; and P.O. #297376 for 50 tons on April 15, 2005. **Each and every one of these three Purchase Orders explicitly specified the price from the contract of $36.42 per ton of salt.**

You state in your letter of April 15, 2005 that "the City implicitly agreed to pay the fair market value for any amounts of Rock Salt in excess of 75,000 tons." There is no valid basis for this statement; in fact the City repeatedly and explicitly made its position clear. First, Mr. Jones was explicitly told by Mr. Caiani in two phone conversations that the City of Boston had neither the intention nor authority under the law to change the price. Second, I explicitly told Mr. Thompson in my phone call to him that the City of Boston had neither the intention nor authority under the law to change the price. Third, Vincent Caiani explicitly told Mr. Thompson in multiple phone conversations that the City of Boston had neither the intention nor authority under the law to change the price.

Fourth, I explicitly reiterated the City of Boston's position in my letter dated February 10th to Mr. Jones. Fifth, each and every one of the three Purchase Orders (P.O. # 287141 for 25,000 tons on February 11, 2005; P.O. #291021 for 3000 tons on March 11, 2005; and P.O. #297376 for 50 tons on April 15, 2005) explicitly specified the price from the contract of $36.42 per ton of salt.

Please note that Massachusetts General Laws Chapter 30B governs the procedures for procurement by cities and towns in the Commonwealth of Massachusetts. Please note further that the City of Boston is also governed by its Charter and City of Boston ordinances. I suggest that you review the congruity of your position with these laws and the Charter of the City of Boston, particularly as they relate to the responsibility of a contracting vendor doing business with the City.

Sincerely,

William J. Hannon
Purchasing Agent


Cc: Christopher Mensoian
    Bruce W. Edmands
    Stephen T. Kunian
    Robert Jones
    Daniel P. Thompson

CITY OF BOSTON
DOC. PROD. 043

**EXHIBIT E**

# Boston

**Thomas M. Menino, Mayor**

Robert Jones, Chief Executive Officer
International Salt
P.O. Box 540
655 Northern Boulevard
Clarks Summit, PA 18411-0540                     February 10, 2005

Dear Mr. Jones:

On September 8, 2004 the City of Boston opened and publicly read bids for Sodium
Chloride bulk. In compliance with Massachusetts General Law, the quantity was listed as
75,000 tons and described as an estimate.
The required estimated amount is useful to the bidding vendor for planning purposes.
This amount is also used by the City to determine a dollar figure to encumber and to
insert in the initial contract document. This document can be adjusted during the term of
the contract if additional dollars are needed.
The Pricing Section that your company submitted clearly stated in capitol letters that the
"PRICE WILL BE HELD FOR THE TERM OF THE CONTRACT". This language was
specifically used to secure our future right.
Your company was awarded a contract that was signed by Daniel P. Thompson, Vice
President Highway Bidding and Sales, on September 1, 2004.
The term of this contract is October 1, 2004 through June 30, 2005, and I expect that you
will honor your contract and provide Sodium chloride to the City of Boston through the
term of the contract at the contracted price.

Sincerely,

William J. Hannon
Purchasing Agent



WILLIAM J. HANNON, Purchasing Agent / ASD Purchasing Division
Boston City Hall, Room 808 / City Hall Plaza /  Boston, MA 02201
(617) 635-4564

ISCO-BOSTON
PLAINTIFF DX - 4

CITY OF BOSTON
DOC. PROD. 034

**EXHIBIT F**



# INTERNATIONAL SALT
## SPL GROUP

Robert H. Jones
Chief Executive Officer

February 10, 2005

Mr. Joseph Casazza
Commissioner
Room 714
1 City Hall Plaza
Boston, MA 02201

Dear Mr. Casazza:

In reference to our phone conversation on Thursday, February 10, 2005, ISCO will continue to supply salt over the 75,000 tons stated in the contract, as requested by the city, for a period of time determined by ISCO, at a price yet to be agreed to or determined. If we are unable to mutually agree on a price, ISCO reserves the right to have the price determined by court or mediation (if ISCO and the City of Boston agree to mediation) on the basis of fair market value.

It is our position that ISCO has completed Item 01 of the contract, and has no further contractual obligation.

Best regards,

*[signature]*

<div style="border:1px solid black">

**ISCO-BOSTON**
**PLAINTIFF DX - 5**

</div>

P.O. Box 540
655 Northern Boulevard
Clarks Summit, PA 18411-0540
T: (888) 368-4726
F: (570) 586-6463

**CITY OF BOSTON**
**DOC. PROD. 049**

**EXHIBIT G**

# INTERNATIONAL SALT
SPL GROUP

Robert H. Jones
Chief Executive Officer

February 18, 2005

<u>VIA CERTIFIED MAIL AND FACSIMILE (617-635-2777)</u>

William J. Hannon
Purchasing Agent
ASD Purchasing Division
Boston City Hall, Room 808
City Hall Plaza
Boston, MA 02201

Re:   <u>Bid/Contract No. 1253 – Contract for Ice Control Rock Salt</u>

Dear Mr. Hannon:

As stated in our legal counsel's letter to you, dated February 11, 2005, International Salt Company, LLC ("ISCO") will have satisfied its obligations under the Bid/Contract No. 1253 ("the Contract") between ISCO and the City of Boston ("the City") by supplying 75,000 tons of sodium chloride bulk rock salt ("Rock Salt") during the Contract's "period of delivery."

Subject to and without waiver of ISCO's position, ISCO hereby offers to supply, under protest, any Rock Salt that is ordered by the City through June 30, 2005, over the 75,000 tons. For these deliveries of additional Rock Salt, the City will be invoiced at the price stated in the Contract, $36.42 per ton, with ISCO expressly reserving the right to seek an increase in such price based on the fair market value of the additional Rock Salt. Thereafter, at the conclusion of the Contract's period of delivery, ISCO will seek, from a court of competent jurisdiction, a price increase (based on fair market value) for any Rock Salt supplied by ISCO over the 75,000 tons that ISCO is obligated to provide to the City under the Contract.

Alternatively, ISCO is willing to enter into a separate contract with the City for the supply of Rock Salt over the contractually established 75,000 tons. ISCO offers to supply such additional Rock Salt at the price of $42.36 per ton, which represents an increase of $5.94 per ton, which price is substantially less than the current fair market value of Rock Salt.

P.O. Box 540
655 Northern Boulevard
Clarks Summit, PA 18411-0540
T. (888) 394-4726
F. (570) 586-6463

ISCO-BOSTON
PLAINTIFF DX - 8

CITY OF BOSTON
DOC. PROD. 037

Mr. William J. Hannon
February 11, 2005
Page 2

Please let me know how you wish to proceed.  If you have any questions or would like
to discuss the contents of this letter, please contact me at your earliest convenience.

Very truly yours,

Robert H. Jones

cc:    Nell G. Epstein, Esquire (via fax)

M0498495.DOC

CITY OF BOSTON
DOC. PROD. 038

**EXHIBIT H**

# ECKERT SEAMANS

Eckert Seamans Cherin & Mellott, LLC
1515 Market Street
Ninth Floor
Philadelphia, PA 19102

TEL 215 851 8400
FAX 215 851 8383
www.eckertseamans.com

Neil G. Epstein
215.851.8408
nepstein@eckertseamans.com

April 15, 2005

**VIA CERTIFIED MAIL NO. 7003 1680 0000 0672 8888**
**FACSIMILE (617) 635-2777**

Mr. William J. Hannon
Purchasing Agent
ASD Purchasing Division
Boston City Hall, Room 808
City Hall Plaza
Boston, MA 02201

Re:    **Bid/Contract No. 1253 – Contract for Ice Control Rock Salt**

Dear Mr. Hannon:

This firm represents International Salt Company, LLC ("ISCO") with respect to Bid/Contract No. 1253 ("the Contract"), entered by and between ISCO and the City of Boston ("the City").

Prior to its receipt of the full amount of Rock Salt established by the Contract, the City advised ISCO that the City would order more than 75,000 tons of Rock Salt. In response, ISCO notified the City by two letters that the Contract established a fixed amount of Rock Salt to be delivered by ISCO to the City. Moreover, ISCO informed the City that, to the extent the City requested deliveries of Rock Salt in excess of 75,000 tons, ISCO would deliver such additional amounts of Rock Salt at the then-prevailing fair market value of Rock Salt. Alternatively, as an accommodation to the City, ISCO offered to enter into a separate contract with the City for the supply of Rock Salt over the contractually-established 75,000 tons, at the price of $42.36 per ton. The City did not respond to ISCO's letters. Rather, the City placed additional orders with ISCO for amounts of Rock Salt in excess of 75,000 tons. By placing orders in excess of contractually-established tonnage, the City implicitly agreed to pay the fair market value for any amounts of Rock Salt in excess of 75,000 tons.

As of March 31, 2005, ISCO delivered to the City the total amount of 102,021.84 tons of Rock Salt. Consequently, as of March 31, 2005, the total tons of Rock Salt delivered by ISCO to the City exceeded the total tons established under the Contract by 27,021.84 tons.

ISCO-BOSTON
PLAINTIFF DX - 12

**ECKERT
SEAMANS**

Mr. William J. Hannon
April 15, 2005
Page 2

During the period of time in which ISCO delivered these additional tons of Rock Salt to the City, the average fair market value of Rock Salt for the Boston area was $56.37. Thus, the amount due and owing to ISCO for the additional 27,021.84 tons of Rock Salt is $1,523,221.10. To date, the City has submitted payment in the amount of $591,028.86 for the additional 27,021.84 tons of Rock Salt. Consequently, the total principal amount due from the City to ISCO is $932,192.30, for which amount ISCO hereby demands payment.

If you have any questions or would like to discuss the contents of this letter further, please contact me by April 25, 2005. ISCO looks forward to an amicable resolution of this matter.

Very truly yours,

Neil G. Epstein

/jg

cc:    Christopher Mensoian, Esquire (via Certified Mail and fax)
       Bruce W. Edmands, Esquire (via fax)
       Stephen T. Kunian, Esquire (via fax)

**EXHIBIT I**

Report ID: APY2000

**PeopleSoft Accounts Payable**

**DETAILED PAYMENT HISTORY BY VENDOR**

From: 7/1/99   To: 6/30/07

Page No. 1
Run Date   Oct/01/2007
Run Time   3:25:48 PM

Remit Vendor: BOSTN 0000007369
Payment Currency: USD
Bank Account: CITIZ 110039285

| Payment Ref | Date | Unit | Handling | Status | Voucher ID | Remit to | Invoice ID | Invoice Date | Pay Cycle | Seq | Discount Taken | Payment Amount | Paid Amount | Document Sequence |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 00241305 | 11/12/04 | BOSTN | RE | P | | | | | APWKLY | 424 | 0.00 USD | 74,524.43 USD | | |
| | | | | | 00791003 | INTERNATIONAL SALT COMPANY, LLC<br>655 Northern Boulevard<br>P.O. Box 540<br>Clarks Summit<br>PA   18411-0540<br>United States | 00171442 | Oct/21/2004 | | | | | 36,517.97 USD | |
| | | | | | 00791002 | | 00171409 | Oct/21/2004 | | 427 | | | 38,006.46 USD | |
| 00243904 | 11/26/04 | BOSTN | RE | P | | | | | APWKLY | 431 | 0.00 USD | 54,576.46 USD | | |
| | | | | | 00792326 | INTERNATIONAL SALT COMPANY, LLC<br>P.O. Box 641944<br>Pittsburg<br>PA   15264-1944<br>United States | 00170999 | Oct/14/2004 | | | | | 54,576.46 USD | |
| 00242350 | 11/9/04 | BOSTN | RE | P | | | | | APWKLY | 433 | 0.00 USD | 148,454.11 USD | | |
| | | | | | 00794593 | INTERNATIONAL SALT COMPANY, LLC<br>655 Northern Boulevard<br>P.O. Box 540<br>Clarks Summit<br>PA   18411-0540<br>United States | 00172005 | Oct/31/2004 | | | 0.00 USD | | 27,197.73 USD | |
| | | | | | 00794589 | | 00172004 | Oct/31/2004 | | | 0.00 USD | | 1,294.00 USD | |
| | | | | | 00794586 | | 00171638 | Oct/25/2004 | | | 0.00 USD | | 18,837.52 USD | |
| | | | | | 00794574 | | 00171609 | Oct/25/2004 | | | 0.00 USD | | 73,477.71 USD | |
| | | | | | 00794504 | | 00171984 | Oct/31/2004 | | | 0.00 USD | | 27,647.15 USD | |
| 00245268 | 12/3/04 | BOSTN | RE | P | | | | | APWKLY | | | 124,267.23 USD | | |
| | | | | | 00798711 | INTERNATIONAL SALT COMPANY, LLC<br>P.O. Box 641944<br>Pittsburg<br>PA   15264-1944<br>United States | 00172071 | Oct/31/2004 | | | 0.00 USD | | 16,231.30 USD | |
| | | | | | 00798709 | | 00172061 | Oct/31/2004 | | | 0.00 USD | | 19,911.18 USD | |

Report ID:  APY2000

**PeopleSoft Accounts Payable**

**DETAILED PAYMENT HISTORY BY VENDOR**

From: 7/1/99     To: 6/30/07

Page No.        2
Run Date        Oct/01/2007
Run Time        3:25:48 PM

Remit Vendor:        BOSTN  000007369

Payment Currency:    USD

Bill-to Account      103039285

| Payment Ref | Date | Handling | Status | Voucher ID | Remit to | Invoice ID | Invoice Date | Pay Cycle | Seq | Discount Taken | Payment Amount | Paid Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 00247076 | 12/10/04 | RE | P | | INTERNATIONAL SALT COMPANY, LLC P.O. Box 641944 Pittsburg PA 15264-1944 United States | | | APWKLY | | | | |
| | | | | 00798708 | | 00171990 | Oct/31/2004 | | 0.00 | USD | | 71,584.24 USD |
| | | | | 00796510 | | 00172744 | Nov/08/200 | | 435 | 0.00 USD | 16,540.51 USD | 16,540.51 USD |
| | | | | | | | | | | 0.00 USD | 1,233.55 USD | 1,233.55 USD |
| 00249383 | 12/23/04 | RE | P | 00798978 | INTERNATIONAL SALT COMPANY, LLC P.O. Box 641944 Pittsburg PA 15264-1944 United States | 00174425 | Nov/24/200 | APWKLY | 438 | 0.00 USD | 2,491.13 USD | 2,491.13 USD |
| 00250476 | 12/20/04 | RE | P | 00804804 | INTERNATIONAL SALT COMPANY, LLC P.O. Box 641944 Pittsburg PA 15264-1944 United States | 173027 | Dec/14/200 | APWKLY | 440 | 0.00 USD | 135,873.92 USD | 135,873.92 USD |
| | | | | 00806053 | | 00174736 | Nov/30/200 | | | 0.00 USD | | 14,445.26 USD |
| | | | | 00806030 | | 00174735 | Nov/30/200 | | | 0.00 USD | | 23,076.08 USD |
| | | | | 00806028 | | 00174734 | Nov/30/200 | | | 0.00 USD | | 22,090.19 USD |
| | | | | 00806026 | | 00174670 | Nov/30/200 | | | 0.00 USD | | 34,852.85 USD |
| | | | | 00806021 | | 00174663 | Nov/30/200 | | | 0.00 USD | | 34,806.23 USD |
| | | | | 00806019 | | 00174622 | Nov/30/200 | | 445 | 0.00 USD | 335,600.11 USD | 6,603.31 USD |
| 00233509 | 1/14/05 | RE | P | 00812150 | INTERNATIONAL SALT COMPANY, LLC P.O. Box 641944 Pittsburg PA 15264-1944 United States | 00177929 | Dec/23/200 | | | 0.00 USD | | 2,431.04 USD |
| | | | | 00812149 | | 00179290 | Dec/31/200 | | | 0.00 USD | | 2,496.23 USD |

Unit  BOSTN

Report ID: APY2000

**PeopleSoft Accounts Payable**

**DETAILED PAYMENT HISTORY BY VENDOR**

From: 7/1/99     To: 6/30/07

Page No. 3
Run Date   Oct/01/2007
Run Time   3:25:48 PM

Remit Vendor:  BOSTN   000007369
Payment Currency:  USD
Bill Account:  CITIZ   110305385

Remit to:
INTERNATIONAL SALT COMPANY, LLC
P.O. Box 641944
Pittsburg
PA    15264-1944
United States

| Payment Ref | Date | Handling | Status | Voucher ID | Invoice ID | Invoice Date | Pay Cycle | Seq | Discount Taken | Payment Amount | Unit | Paid Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 00812148 | 00175854 | Dec/08/200 | | 0.00 | 0.00 USD | | BOSTN | 1,395.25 USD |
| | | | | 00811561 | 00171835 | Oct/27/2004 | | 0.00 | 0.00 USD | | BOSTN | 37,146.21 USD |
| | | | | 00811560 | 00171752 | Oct/26/2004 | | 0.00 | 0.00 USD | | BOSTN | 55,789.25 USD |
| | | | | 00811559 | 00171728 | Oct/26/2004 | | 0.00 | 0.00 USD | | BOSTN | 36,914.58 USD |
| | | | | 00811558 | 00171140 | Oct/18/2004 | | 0.00 | 0.00 USD | | BOSTN | 36,849.39 USD |
| | | | | 00811550 | 00177597 | Dec/21/200 | | 0.00 | 0.00 USD | | BOSTN | 43,878.82 USD |
| | | | | 00815549 | 00173781 | Dec/21/200 | | 0.00 | 0.00 USD | | BOSTN | 54,571.36 USD |
| | | | | 00811548 | 00173699 | Nov/17/200 | | 0.00 | 0.00 USD | | BOSTN | 4,482.94 USD |
| | | | | 00811378 | 00172682 | Nov/17/200 | | 0.00 | 0.00 USD | | BOSTN | 11,479.95 USD |
| | | | | 00811377 | 00172307 | Nov/02/200 | | 0.00 | 0.00 USD | | BOSTN | 28,328.57 USD |
| | | | | 00811376 | 00172306 | Nov/02/200 | | 0.00 | 0.00 USD | | BOSTN | 1,281.62 USD |
| 0025756142 | 1/28/05 | | P | 00813375 | 00171858 | Oct/27/2004 | APWKLY | 448 | 0.00 | 273,009.43 USD | BOSTN | 18,554.90 USD |
| | | | | 00816796 | 181224 | Jan/13/2005 | | 0.00 | 0.00 USD | | BOSTN | 1,303.47 USD |
| | | | | 00816745 | 00180309 | Jan/09/2005 | | 0.00 | 0.00 USD | | BOSTN | 15,161.65 USD |
| | | | | 00816744 | 00180293 | Jan/09/2005 | | 0.00 | 0.00 USD | | BOSTN | 1,240.47 USD |
| | | | | 00816743 | 00178699 | Dec/31/200 | | 0.00 | 0.00 USD | | BOSTN | 12,968.80 USD |
| | | | | 00816738 | 00179641 | Dec/31/200 | | 0.00 | 0.00 USD | | BOSTN | 1,307.48 USD |
| | | | | 00816737 | 00180125 | Jan/06/2005 | | 0.00 | 0.00 USD | | BOSTN | 36,311.10 USD |
| | | | | 00816736 | 00179532 | Jan/06/2005 | | 0.00 | 0.00 USD | | BOSTN | 24,070.34 USD |
| | | | | 00816733 | 00179868 | Dec/31/200 | | 0.00 | 0.00 USD | | BOSTN | 34,294.53 USD |
| | | | | 00816732 | 00178857 | Dec/31/200 | | 0.00 | 0.00 USD | | BOSTN | 15,853.99 USD |
| | | | | 00816731 | 00178856 | Dec/31/200 | | 0.00 | 0.00 USD | | BOSTN | 16,844.98 USD |
| | | | | 00814751 | 00178012 | Dec/23/200 | | 0.00 | 0.00 USD | | BOSTN | 18,831.33 USD |
| | | | | 00814750 | 00179113 | Dec/31/200 | | 0.00 | 0.00 USD | | BOSTN | 39,206.49 USD |
| 025757514 | 2/4/05 | | P | 00814749 | 00171214 | Oct/19/2004 | APWKLY | 449 | 0.00 | 3,280.35 USD | BOSTN | 55,614.80 USD |

Report ID: APY2000

PeopleSoft Accounts Payable

# DETAILED PAYMENT HISTORY BY VENDOR

From: 7/1/99    To: 6/30/07

Page No. 4
Run Date Oct/01/2007
Run Time 3:25:48 PM

**Remit Vendor:** BOSTN 000000007369
**Payment Currency:** USD
**Bank Account:** CHFIZ 110303985

| Payment Ref | Date | Handling | Status | Voucher ID | Invoice ID | Invoice Date | Pay Cycle | Seq | Discount Taken | Payment Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 00258824 | 2/1/05 | RE | P | 00818155 | 00179763 | Jan/06/2005 | APWKLY | 451 | 0.00 USD | 479,137.49 USD |

Remit to: INTERNATIONAL SALT COMPANY, LLC
P.O. Box 641944
Pittsburg
PA        15264-1944
United States

| Unit | Voucher ID | Invoice ID | Invoice Date | Discount Taken | Paid Amount |
|---|---|---|---|---|---|
| BOSTN | 00818156 | 00181060 | Jan/13/2005 | 0.00 USD | 36,217.50 USD |
| BOSTN | 00821258 | 00181790 | Jan/18/2005 | 0.00 USD | 18,348.03 USD |
| BOSTN | 00821257 | 00180577 | Jan/10/2005 | 0.00 USD | 14,742.45 USD |
| BOSTN | 00821256 | 00180542 | Jan/10/2005 | 0.00 USD | 15,387.81 USD |
| BOSTN | 00821255 | 00180517 | Jan/10/2005 | 0.00 USD | 55,342.01 USD |
| BOSTN | 00821229 | 00184430 | Jan/26/2005 | 0.00 USD | 37,425.19 USD |
| BOSTN | 00821228 | 00182939 | Jan/23/2005 | 0.00 USD | 37,251.47 USD |
| BOSTN | 00821222 | 00181646 | Jan/17/2005 | 0.00 USD | 36,075.83 USD |
| BOSTN | 00821221 | 00182485 | Jan/20/2005 | 0.00 USD | 25,976.93 USD |
| BOSTN | 00818646 | 00182357 | Jan/20/2005 | 0.00 USD | 18,866.65 USD |
| BOSTN | 00821220 | 00181061 | Jan/13/2005 | 0.00 USD | 18,604.79 USD |
| BOSTN | 00823357 | 00181818 | Jan/8/2005 | 0.00 USD | 37,643.35 USD |
| BOSTN | 00821219 | 00181792 | 1/18/05 | 0.00 USD | 55,845.70 USD |
| BOSTN | 00821214 | 00181668 | 1/18/05 | 0.00 USD | 55,719.32 USD |
| BOSTN | 00821213 | 00181670 | 1/17/05 | 0.00 USD | 10,838.59 USD |
| BOSTN | 00821212 | 00180707 | 1/17/05 | 0.00 USD | 2,371.67 USD |
| BOSTN | 00821211 | 00180698 | Jan/11/2005 | 0.00 USD | 2,480.20 USD |
| BOSTN | 00819577 | 00180707 | Jan/11/2005 | 0.00 USD | |
| BOSTN | 00819576 | 00180699 | Jan/11/2005 | 0.00 USD | |
| BOSTN | 00819575 | 00180698 | Jan/11/2005 | 0.00 USD | |

| Payment Ref | Date | Handling | Status | | | | Pay Cycle | Seq | Discount Taken | Payment Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 00260094 | 2/18/05 | RE | P | | | | APWKLY | 455 | 0.00 USD | 392,940.48 USD |

Remit to: INTERNATIONAL SALT COMPANY, LLC
P.O. Box 641944
Pittsburg
PA        15264-1944
United States

| Unit | Voucher ID | Invoice ID | Invoice Date | Discount Taken | Paid Amount |
|---|---|---|---|---|---|
| BOSTN | 00823643 | 00185985 | Jan/31/2005 | 0.00 USD | 1,252.48 USD |
| BOSTN | 00823642 | 00185475 | Jan/31/2005 | 0.00 USD | 2,482.39 USD |
| BOSTN | 00823641 | 00182348 | Jan/20/2005 | 0.00 USD | 2,547.21 USD |
| BOSTN | 00823167 | 00187660 | Feb/03/2005 | 0.00 USD | 1,233.55 USD |

Report ID: APY2000

**PeopleSoft Accounts Payable**
**DETAILED PAYMENT HISTORY BY VENDOR**

From: 7/1/99          To: 6/30/07

Page No.    5
Run Date    Oct/01/2007
Run Time    3:25:48 PM

Remit Vendor:    BOSTN 000000739
Payment Currency:    USD
Bank Account:    CITIZ ... 110303985

| Payment Ref | Date | Unit | Handling | Status | Voucher ID | Remit to | Invoice ID | Invoice Date / Pay Cycle | Seq / Discount Taken | | Payment Amount / Document Sequence | | Paid Amount | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 00225571 | | BOSTN | | P | 00822571 | INTERNATIONAL SALT COMPANY, LLC P.O. Box 641944 Pittsburg PA 15264-1944 United States | 00186520 | Jan/31/2005 APWKLY | 457 | USD | 144,336.84 | USD | | |
| | | BOSTN | | | 00822572 | | 00186521 | Jan/31/2005 | 0.00 | USD | 36,577.70 | USD | | |
| | | BOSTN | | | 00822573 | | 00186522 | Jan/31/2005 | 0.00 | USD | 36,567.87 | USD | | |
| | | BOSTN | | | 00822580 | | 00186523 | Jan/31/2005 | 0.00 | USD | 15,768.77 | USD | | |
| | | BOSTN | | | 00822574 | | 00185911 | Jan/31/2005 | 0.00 | USD | 6,430.32 | USD | | |
| | | BOSTN | | | 00822581 | | 00185912 | Jan/31/2005 | 0.00 | USD | 46,015.58 | USD | | |
| | | BOSTN | | | 00822582 | | 00185910 | Jan/19/2005 | 0.00 | USD | 22,749.75 | USD | | |
| | | BOSTN | | | 00822587 | | 00182026 | Jan/17/2005 | 0.00 | USD | 20,674.54 | USD | | |
| | | BOSTN | | | 00822588 | | 00000102251CM/00018166 | Jan/17/2005 | 0.00 | USD | 109,647.14 | USD | | |
| | | BOSTN | | | 00822613 | | | | 0.00 | USD | 36,472.44 | USD | | |
| | | | | | | | | | 0.00 | USD | 54,520.74 | USD | | |
| 00261551 | 2/25/05 | BOSTN | RE | P | 00826088 | INTERNATIONAL SALT COMPANY, LLC P.O. Box 641944 Pittsburg PA 15264-1944 United States | 00185913 | Jan/31/2005 | 460 | | 62,020.35 | USD | 73,643.43 | USD |
| | | BOSTN | | | 00826089 | | 00185466 | Jan/31/2005 | 0.00 | | | | 36,661.83 | USD |
| | | BOSTN | | | 00826090 | | 00185518 | Jan/31/2005 | 0.00 | | | | 34,031.58 | USD |
| 00262789 | 3/4/05 | BOSTN | RE | P | 00828282 | INTERNATIONAL SALT COMPANY, LLC P.O. Box 641944 Pittsburg PA 15264-1944 United States | 00186874 | Feb/09/200 | 466 | | 221,846.97 | USD | 14,734.44 | USD |
| | | BOSTN | | | 00828706 | | 00187580 | Feb/03/200 APWKLY | 0.00 | | | | 47,285.91 | USD |
| 00265683 | 3/18/05 | BOSTN | RE | P | 00834471 | | 00189343 | Feb/16/200 | 0.00 | USD | | | 55,528.48 | USD |
| | | BOSTN | | | 00834477 | | 00189425 | Feb/17/200 | 0.00 | USD | | | 39,920.69 | USD |
| | | BOSTN | | | 00834478 | | 00189512 | Feb/20/200 | 0.00 | USD | | | 21,510.74 | USD |

Report ID: APY2000

**PeopleSoft Accounts Payable**

# DETAILED PAYMENT HISTORY BY VENDOR

From: 7/1/99    To: 6/30/07

Page No. 6
Run Date  Oct/01/2007
Run Time  3:25:48 PM

Remit Vendor: BOSTN 000000736963
Payment Currency: USD
Bank Account: CITIZ 110303985

Remit to:
INTERNATIONAL SALT COMPANY, LLC
P.O. Box 641944
Pittsburg    PA    15264-1944
United States

| Payment Ref | Date | Handling | Status | Unit | Voucher ID | Invoice ID | Pay Cycle / Invoice Date | Seq | Discount Taken | Payment Amount | Document Sequence | Paid Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 00267433 | 3/25/05 | RE | P | | | | | | | | | |
| | | | | BOSTN | 00834470 | 00189342 | Feb/16/200 | | 0.00 USD | | | 19,121.96 USD |
| | | | | BOSTN | 00834469 | 00188968 | Feb/13/200 | | 0.00 USD | | | 8,815.83 USD |
| | | | | BOSTN | 00834411 | 00189658 | Feb/22/200 | | 0.00 USD | | | 73,271.94 USD |
| | | | | BOSTN | 00834354 | 189852 | Feb/23/200 | | 0.00 USD | | | 2,546.12 USD |
| | | | | BOSTN | 00834353 | 189421 | Feb/17/200 | | 0.00 USD | | | 1,131.21 USD |
| | | | | | | | APWKLY | 469 | | 396,289.30 | USD | |
| | | | | BOSTN | 00834478 | 00190012 | Feb/24/200 | | 0.00 USD | | | 55,751.74 USD |
| | | | | BOSTN | 00835479 | 00190503 | Feb/28/200 | | 0.00 USD | | | 21,783.53 USD |
| | | | | BOSTN | 00835480 | 00191913 | Mar/02/200 | | 0.00 USD | | | 17,136.34 USD |
| | | | | BOSTN | 00835481 | 00187219 | Feb/02/200 | | 0.00 USD | | | 4,926.17 USD |
| | | | | BOSTN | 00835525 | 00191394 | Mar/01/200 | | 0.00 USD | | | 3,644.19 USD |
| | | | | BOSTN | 00835646 | 00191175 | Feb/28/200 | | 0.00 USD | | | 18,365.51 USD |
| | | | | BOSTN | 00836140 | 00190501 | Feb/28/200 | | 0.00 USD | | | 73,257.01 USD |
| | | | | BOSTN | 00836519 | 00191610 | Mar/02/200 | | 0.00 USD | | | 1,247.75 USD |
| | | | | BOSTN | 00836520 | 00191441 | Feb/28/200 | | 0.00 USD | | | 33,993.70 USD |
| | | | | BOSTN | 00836521 | 00191176 | Feb/28/200 | | 0.00 USD | | | 18,729.71 USD |
| | | | | BOSTN | 00836522 | 00190502 | Feb/28/200 | | 0.00 USD | | | 35,557.57 USD |
| | | | | BOSTN | 00836539 | 00189419 | Feb/17/200 | | 0.00 USD | | | 33,314.47 USD |
| | | | | BOSTN | 00836540 | 00189827 | Feb/28/200 | | 0.00 USD | | | 11,657.31 USD |
| | | | | BOSTN | 00836541 | 00190371 | Feb/28/200 | | 0.00 USD | | | 12,930.56 USD |
| | | | | BOSTN | 00837288 | 00192543 | Mar/06/200 | | 0.00 USD | | | 27,734.92 USD |
| | | | | BOSTN | 00837289 | 00192849 | Mar/06/200 | | 0.00 USD | | | 18,673.26 USD |
| | | | | BOSTN | 00837290 | 00192966 | Mar/07/200 | | 0.00 USD | | | 7,585.56 USD |
| | | | | | | | | 472 | | 505,679.31 | USD | |
| 00268803 | 4/1/05 | RE | P | | | | | | | | | |
| | | | | BOSTN | 00839739 | 00193974 | Mar/13/200 | | 0.00 | | | 72,817.78 USD |
| | | | | BOSTN | 00839740 | 00194373 | Mar/14/200 | | 0.00 | | | 36,831.55 USD |

Report ID: APY2000

**PeopleSoft Accounts Payable**
**DETAILED PAYMENT HISTORY BY VENDOR**

From: 7/1/99    To: 6/30/07

| | |
|---|---|
| Page No. | 7 |
| Run Date | Oct/01/2007 |
| Run Time | 3:25:48 PM |

Remit Vendor: BOSTN 000000007369
Payment Currency: USD
Bank Account: CITIZ 110109385

Remit to:
INTERNATIONAL SALT COMPANY, LLC
P.O. Box 641944
Pittsburg
PA    15264-1944
United States

**Payment Ref**

| Date | Handling | Status | Pay Cycle | Seq | Payment Amount | Document Sequence |
|---|---|---|---|---|---|---|
| 4/8/05 | RE | P | APWKLY | 474 | 349,279.82 USD | |
| 4/15/05 | RE | P | APWKLY | 476 | 7,208.61 USD | |

**Voucher detail**

| Unit | Voucher ID | Invoice ID | Invoice Date | Discount Taken | Paid Amount |
|---|---|---|---|---|---|
| BOSTN | 00839738 | 00193953 | Mar/13/200: | 0.00 USD | 35,974.95 USD |
| BOSTN | 00839728 | 00193952 | Mar/13/200: | 0.00 USD | 37,062.81 USD |
| BOSTN | 00839727 | 00193760 | Mar/13/200: | 0.00 USD | 7,742.53 USD |
| BOSTN | 00839726 | 00193367 | Mar/09/200: | 0.00 USD | 32,349.70 USD |
| BOSTN | 00839723 | 00179116 | Mar/09/200: | 0.00 USD | 17,949.23 USD |
| BOSTN | 00839722 | 00179115 | Dec/31/200: | 0.00 USD | 36,637.06 USD |
| BOSTN | 00839721 | 00179112 | Dec/31/200: | 0.00 USD | 71,726.64 USD |
| BOSTN | 00839711 | 00185519 | Jan/31/2005 | 0.00 USD | 50,578.64 USD |
| BOSTN | 00839710 | 00179118 | Dec/31/200: | 0.00 USD | 20,951.33 USD |
| BOSTN | 00839709 | 00179117 | Dec/31/200: | 0.00 USD | 30,560.39 USD |
| BOSTN | 00839703 | 00194453 | Mar/31/200: | 0.00 USD | 36,421.09 USD |
| BOSTN | 00839702 | 00194413 | Mar/14/200: | 0.00 USD | 18,075.61 USD |
| BOSTN | 00841418 | 190629 | Feb/28/200: | 0.00 USD | 2,326.87 USD |
| BOSTN | 00841419 | 00193051 | Mar/07/200: | 0.00 USD | 2,442.69 USD |
| BOSTN | 00841420 | 194174 | Mar/13/200: | 0.00 USD | 2,439.05 USD |
| BOSTN | 00845551 | 0019050000000010638C? | Feb/28/200: | 0.00 USD | 31,864.95 USD |
| BOSTN | 00845550 | 00189841 | Feb/23/200: | 0.00 USD | 73,024.28 USD |
| BOSTN | 00845540 | 00185517 | Jan/31/2005 | 0.00 USD | 55,134.05 USD |
| BOSTN | 00845539 | 00179147/000000101190 | Dec/31/200: | 0.00 USD | 26,663.81 USD |
| BOSTN | 00845465 | 00190389 | Feb/28/200: | 0.00 USD | 67,899.63 USD |
| BOSTN | 00845378 | 00190370 | Mar/29/200: | 0.00 USD | 22,491.90 USD |
| BOSTN | 00845489 | 00195489 | Feb/28/200: | 0.00 USD | 18,207.09 USD |
| BOSTN | 00837603 | 00190370 | Feb/28/200: | 0.00 USD | 18,207.09 USD |
| BOSTN | 00837602 | 00190828 | Feb/28/200: | 0.00 USD | 18,147.36 USD |
| BOSTN | 00837601 | 00191174 | Feb/28/200: | 0.00 USD | 12,486.96 USD |

PEOPLE

Report ID: APY2000

PeopleSoft Accounts Payable

**DETAILED PAYMENT HISTORY BY VENDOR**

From: 7/1/99    To: 6/30/07

Page No. 8
Run Date    Oct/01/2007
Run Time    3:25:48 PM

Remit Vendor: BOSTN 0000007369
Payment Currency: USD
Bank-Account: CHTZ 110303285

| Payment Ref | Date | Handling | Status | Remit to | Pay Cycle | Seq | Discount Taken | Payment Amount | Document Sequence |
|---|---|---|---|---|---|---|---|---|---|
| 0272591 | 4/22/05 | RE | P 00837600 | 00191649 INTERNATIONAL SALT COMPANY, LLC P.O. Box 641944 Pittsburg PA 15264-1944 United States | Mar/02/200: APWKLY | 0.00 478 | 34,797.85 USD | 23,359.79 USD | |

| Unit | Voucher ID | Invoice ID | Invoice Date | Discount Taken | Paid Amount |
|---|---|---|---|---|---|
| BOSTN | 00847122 | 00195490 | Mar/29/200: | 0.00 USD | 18,805.83 USD |
| BOSTN RE P | 00846128 | 00195485 | Mar/29/200: APWKLY | 0.00 482 1,820.27 USD | 15,992.02 USD |

| 0275461 | 5/6/05 | RE | P | INTERNATIONAL SALT COMPANY, LLC P.O. Box 641944 Pittsburg PA 15264-1944 United States | | | | | |

| Unit | Voucher ID | Invoice ID | Invoice Date | Discount Taken | Paid Amount |
|---|---|---|---|---|---|
| BOSTN | 00852527 | 00195490 A | Mar/29/200: | 0.00 USD | 1,820.27 USD 1,820.27 USD |

Total for CHK Payments

Total for Bank Account:  3,748,668.01 USD

Total For Currency  3,748,668.01 USD

3,748,668.01 USD

End of Report