UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| INTERNATIONAL SALT COMPANY, LLC, ) | |
| ) | |
| Plaintiff, ) | Docket No.05-cv-10921-RGS |
| ) | |
| v. ) | |
| ) | |
| CITY OF BOSTON, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF LAW OF DEFENDANT CITY OF BOSTON IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The Defendant, City of Boston ("the City") moves for entry of an order for judgment on all counts brought by the Plaintiff, International Salt Company, LLC ("ISCO"). In support of its motion, the City states as follows:

This matter arises out of a contract the City awarded to ISCO pursuant to Massachusetts General Laws Chapter 30B and the City of Boston Charter for delivery of approximately 75,000 tons of sodium chloride rock salt ("Rock Salt") at $36.42 per ton ("the Contract"). The total Contract price was $2,731,500.00.

Due to numerous snow emergencies, during the winter of 2004/2005, the City required additional Rock Salt. The City informed ISCO of its needs. ISCO agreed to supply extra salt, but asserted that it would deliver the additional salt at the prevailing fair market value. ISCO delivered 27,000 tons of additional Rock Salt beyond the 75,000 estimated in the Contract. ISCO now contends that the market value of the excess salt was approximately $56.37 per ton. The City paid ISCO $36.42 per ton in accordance with the Contract, and ISCO is now seeking the difference.

It is undisputed that ISCO and the City had a contractual relationship governed by G.L. c. 30B and the Charter. It is also undisputed that under the Contract ISCO was obligated to deliver Rock Salt at $36.42 per ton. Based on the plain meaning of the terms of the Contract, and the statutory requirements of G.L. c. 30B and the City of Boston Charter, ISCO's claims for breach of contract, quantum meruit, and declaratory judgment fail as a matter of law. Accordingly, the Court should enter an order granting judgment in favor of the City on all of ISCO's claims.

## ARGUMENT

**I.     SUMMARY JUDGMENT STANDARD**

This Court must award summary judgment "if the pleadings, depositions, answer to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986); Villanueva v. Wellesley College, 930 F.2d 124, 127 (1st Cir.), cert. denied, 502 U.S. 861 (1991); Desmond v. Federal Deposit Insurance Corp., 798 F. Supp. 829 (D. Mass. 1992). To avoid summary judgment, an opposing party must demonstrate the existence of a genuine dispute over a material fact. An issue is genuine if evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); McConnell v. Texaco, Inc., 727 F. Supp. 751, 755 (D. Mass. 1990).

A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial for purposes of granting summary judgment. Celotex Corp., 477 U.S. at 325; Conway v. Boston Edison Co., 745

F. Supp. 773 (D. Mass. 1990).  Once such a shortcoming in the evidence is demonstrated, the non-moving party may avoid summary judgment only by establishing specific, definite and competent evidence to rebut the alleged failure of proof. Sheinkopf v. Stone, 927 F.2d 1259, 1261 (1st Cir. 1991); Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992).  "This evidence 'cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial.'" Id. (quoting Mack v. Great Atl. & Pac. Tea. Co., 871 F.2d 179, 181 (1st Cir. 1989)).

## II.   STATUTORY REQUIREMENTS OF THE CHARTER MUST BE FOLLOWED FOR A VALID CONTRACT WITH THE CITY OF BOSTON

The City is not liable to ISCO because the mayor did not endorse an additional contract for Rock Salt at $42.36 per ton requested by ISCO in February 2005 or the price of $56.37 per ton listed as the market value per the Complaint.  (See Statement of Facts, Exhibit B and Exhibit C).  The City Charter requires that all contracts of a value in excess of $10,000, and amendments to those contracts must be approved in writing by the mayor in order to be enforceable. St. 1890, c. 418, §6 as amended by St. 1939, c. 156, §2 and St. 1998, c. 262, §1.[1]  A contract with a city is not valid unless the statutory requirements have been satisfied. Lumarose Equip. Corp. v. Springfield, 15 Mass.App.Ct. 517, 519-520 (Mass.App.Ct. 1983); United States Leasing Corp. v. Chicopee, 402 Mass. 228, 231

---

[1] The Charter provides, that:
> All contracts made by a department of the city of Boston…shall, when the amount involved is $10,000 or more…be in writing, and no such contract shall be deemed to have been made or executed until the approval of the mayor in writing of said city has been affixed thereto in writing and the auditor of the city has certified thereon that an appropriation is available therefore…
>
> [And] no such contract shall be altered except by a written agreement of the contractor, the sureties on his or their bond, and the officer, board or official making the contract, with the approval of the mayor affixed thereto…

St. 1890, c. 418, §6 as amended by St. 1939, c. 156, §2 and St. 1998, c. 262, §1.

3

(Mass. 1988); <u>KVS Information Systems, Inc. v. Tisbury</u>, 753 F.Supp 1020, 1022 (D.Mass. 1990). ISCO's increase in the price of Rock Salt is an alteration to the Contract, must be in writing, and requires mayoral approval.

Because a "precise" compliance with the statutory requirement was not met, ISCO cannot recover on a breach of contract claim against the City. <u>Id</u>. at 232; <u>Park Drive Towing, Inc. v. City of Revere</u>, 442 Mass. 80, 84 (Mass. 2004); <u>McGovern v. Boston</u>, 229 Mass. 394, 397 (Mass. 1918). In order to prove breach of contract ISCO must establish that it complied with all the relevant by-laws and the City Charter, St. 1890, c.418, § 6. <u>United States Leasing Corp.</u>, 402 Mass. at 231; <u>Adalian Brothers, Inc. v. Boston</u>, 323 Mass. 629, 632 (Mass. 1949); <u>KVS Information Systems, Inc.</u>, 753 F.Supp at 1022.

The purpose of the City Charter is to prevent waste, fraud, and abuse while ensuring unity and control of the city's commercial transactions. <u>United States Leasing Corp.</u>, 402 Mass. at 231. The City Charter, St. 1890, c.418, § 6, requirement for mayoral approval guarantees that the language of any agreement with the City is in accordance with other contracts used throughout the City. In addition, St. 1890, c.418, § 6 and G.L. c. 43 § 29 [2] limits a municipality's exposure if sued under a contract. ISCO's Contract required that any change, alteration or amendment to the Contract for the increase in price of Rock Salt above 75,000 tons must be in writing and signed by the mayor. St. 1890, c.418, § 6 and G.L. c. 43 § 29. The City is not liable to ISCO because a valid and

---

[2] G.L. c. 43, § 29 provides that:
…all contracts made by any department, board or commission where the amount involved is five thousand dollars or more shall be in writing, and no such contract shall be deemed to have been made or executed until the approval of the mayor…[And] no such contract shall be altered except by a written agreement…with the approval of the mayor…affixed thereto…

4

enforceable contract for additional Rock Salt at the price of $42.36 and/or $56.37 per ton did not exist. ISCO's adjusted price of $42.36 per ton required a mayoral approval to be valid and enforceable.[3] Additionally, ISCO cannot claim quantum meruit if the statutory requirements necessary to make a valid contract have not been satisfied. Central Tow Co. v. Boston, 371 Mass. 341, 345 (Mass. 1976); ISCO bears the burden of complying with statutory regulations when entering into an agreement with the City. Adalian Brothers, Inc., 323 Mass. at 631; KVS Information Systems, Inc., 753 F.Supp at 1023. As a result, ISCO cannot maintain an action in breach of contract or quantum meruit for an amount above the $36.42 per ton for the additional amount of Rock Salt above the 75,000 tons supplied by ISCO and ISCO's claims fail as a matter of law.

### III.   PRICES FOR CONTRACTS AWARDED UNDER MASSACHUSETTS GENERAL LAWS CHAPTER 30B CANNOT BE ALTERED

Massachusetts General Laws Chapter 30B requires that contracts in excess of $25,000 be awarded on the basis of advertised competitive bidding. G.L. c. 30B, §5.[4] The contract must be awarded to the lowest responsible bidder. Id. Moreover, under G.L. c. 30B, the awarding authority may increase the quantity of supplies specified in a contract only if the unit price remains the same or less. G.L. c. 30B, §13. In addition, G.L. c. 30B generally limits the increase in quantity to 25 percent of the contract amount, but excludes certain supplies, including rock salt from this limit.[5] Id.

---

[3] ISCO now claims that the market value of the excess Rock Salt was approximately $56.37 instead of the previously quoted price of $42.36.

[4] G.L. c. 30B § 5 provides that: (a) …award of procurement contracts in the amount of $25,000 or more…shall conform to the competitive sealed bidding procedures set forth in this section…

[5] G.L. c. 30B §13 provides that:
   The governmental body may increase the quantity of supplies or services or both specified in a contract provided: (1) the unit prices remain the same or less; [and]… (4) the increase in the total contract

5

The Contract at issue in this matter was awarded pursuant to G.L. c. 30B. The competitive bidding requirements of G.L. c. 30B mandate that the City award the Contract to the lowest responsible bidder and restricts the City to increasing the quantity estimated in a bid, if, and only if, the unit price stated in the bid remains the same or is lowered. In response to Bid #1253, to provide rock salt to the City through June 30, 2005, ISCO submitted a bid which stated a unit price of $36.42. Chapter 30B restricts the City from accepting an increase in price on this competitively bid contract. Had the City agreed with ISCO's February 7, 2005 proposed price increase, it would have been in violation of G.L. c. 30B.

The fact that G.L. c. 30B excludes contracts for Rock Salt from the 25 percent increase limit evidences an understanding by the Legislature that it is difficult to determine in advance the quantity of rock salt that will be needed, as this hinges on the weather. Therefore, G.L. c. 30B provides governmental bodies with the flexibility to increase the amount as needed, so long as the price remains the same or decreases. Here the City estimated that it would need 75,000 tons of rock salt for the winter of 2004-2005. Because it was a particularly rough winter the City in fact needed more rock salt.

The Contract sets forth a unit price of $32.46. Under G.L. c. 30B that price must remain $32.46. Against the background of this clear law, the Contract's already unambiguous terms even more clearly do not allow for a price hike; G.L. c. 30B allows the City to order as much Rock Salt as is needed, but does not allow it to enter into a contract that permits an increase of unit price per ton.

---

price does not exceed 25 percent but a contract for the purchase of gasoline, special fuel, fuel oil, road salt or other ice and snow control supplies shall not be subject to this limit; and…

6

## IV. UNDER THE PLAIN MEANING OF THE TERMS ISCO CANNOT ESTABLISH BREACH OF CONTRACT

The construction of written contract provisions is an appropriate matter for the court to consider at summary judgment and may be decided as a matter of law. See Urban Investment & Dev. Co. v. Turner Constr. Co., 35 Mass. App. Ct. 100, 107 n.6 (Mass.App.Ct. 1993) ("construction of [a] contract is an appropriate matter for the court and may be decided as matter of law"); see also Allstate Ins. Co. v. Bearce, 412 Mass. 442, 446-47 (Mass. 1992) (citing Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (Mass. 1982)) ("interpreting written contract provisions. . .is a matter of law"). Where the language of a contract is unambiguous, the construction of the contract provisions is a question of law only, and the court must enforce the contract in accordance with the plain meaning of its terms. See Freelander v. G. & K. Realty Corp., 357 Mass. 512, 515-16 (Mass. 1970) (holding that where the "the language of the documents involved is explicit," the construction "presents a question of law for the court"); KVS Information Systems, Inc., 753 F.Supp at 1024.

The Contract terms are plain and unambiguous. Under a plain reading of the terms, the City is not liable to ISCO for the moneys it seeks in the instant litigation. The terms of the Contract plainly show that ISCO agreed to deliver approximately 75,000 tons of Rock Salt at $36.42 per ton from October 2004 through June 2005. The words of the Contract are plain and unambiguous and must be construed in their usual and ordinary sense. Zarum v. Brass Mill Materials Corp., 334 Mass. 81, 84 (Mass. 1956); KVS Information Systems, Inc., 753 F.Supp at 1024. The Contract specifically states that the "PRICE WILL BE HELD FOR THE TERM OF THE CONTRACT AND SHALL NOT

7

BE LIMITED TO THE ESTIMATED NUMBER OF ITEMS." (City of Boston Contract No. 15878-05, Pricing Section page 1) (emphasis in original).

The bid and Contract documents evidence the parties' understanding that 75,000 tons was merely an estimate and that ISCO agreed to hold the price for Rock Salt open for the term of the Contract, which expired in June 2005.  The City paid ISCO for the additional 27,000 tons of Rock Salt at the contractually agreed-upon price of $36.42 per ton.  That is the price to which ISCO is entitled.

## CONCLUSION

In light of the above-referenced arguments, ISCO's claims fail as a matter of law.  As a result, this Court should enter an Order granting judgment to the City on all counts.

Respectfully submitted,
DEFENDANT, CITY OF BOSTON
By its attorneys:

William F. Sinnot
Corporation Counsel


/s/ Anouk Danan
Anouk Danan, BBO# 657821
Assistant Corporation Counsel
Scott C. Holmes, BBO# 544545
Senior Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
617.635.4034

Dated:  October 4, 2007

## **CERTIFICATE OF SERVICE**

I, Anouk Danan, certify that on this 4th day of October, 2007, a copy of the foregoing was served via the court's electronic service upon all counsel of record.

                                     /s/ Anouk Danan
                                     Anouk Danan