## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **INTERNATIONAL SALT CO, LLC**<br><br>**Plaintiff,**<br><br>v.<br><br>**CITY OF BOSTON**<br><br>**Defendants.** | **Docket No: 05-CV-10921-RGS** |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE MOTION FOR SUMMARY JUDGMENT

Plaintiff International Salt Co., LLC hereby opposes the Defendant City of Boston's Motion for Leave to File Motion for Summary Judgment for the reasons set forth below:

**A.     The Motion for Summary Judgment is Untimely.**

The motion is late filed.  By Order dated November 2, 2006, the Court set January 19, 2007 as the date by which all dispositive motions in this case, if any, were to be filed. The Defendant has offered no rationale nor excuse for why it failed to abide by the Court's Order or to timely seek an extension.  Now that trial is scheduled for January 7, 2008, there is insufficient time to fully brief an opposition, schedule a hearing and allow the court sufficient time to decide the motion in a time frame which obviates the parties from incurring the expense of trial preparation.

**B.    Defendant Failed to Abide By Local Rule 7.1(A)(2)**

Before filing and serving the motion, the Defendant failed to satisfy the requirements of Local Rule 7.1(A)(2) by conferring with opposing counsel in an effort to resolve or narrow the issues raised by the Defendant's motion. Had counsel for the City of Boston done so, a meaningful discussion may have been possible concerning the reasons why this matter is not amenable to disposition by way of summary judgment. Those reasons are set forth below.

**C.    This Matter is Not Amenable to Disposition By Summary Judgment**

Contrary to the assertions of the Defendant, there are material facts which are in dispute such that this matter cannot be resolved by way of summary judgment.

There are two principal sets of factual issues in dispute: In summary, those factual issues concern (a) the meaning and construction of the contract which contains internally ambiguous terms and (b) whether the circumstances extant in the Winter of 2005, presented an emergency condition which justified a circumvention of statutory requirements under the provisions of General Laws Chapter 30B, Section 8, which provides, in summary, that when the time required to comply with the formalities of Chapter 30B would endanger the health or safety of the people or their property, a procurement officer may make an emergency procurement without following the statutory requirements. The Boston City Charter, St. 1909, Chapter 486, § 16 contains an analogous provision.

Briefly stated, the evidence adduced in the course of discovery established the following relevant facts: International Salt Co, ("ISCO) entered into a contract with the City of Boston ("Boston") by which it agreed to supply rock salt to the City over the

2004-2005 winter season. The contract followed a competitive bid process under which the City sought firm proposals for the purchase of 75,000 tons of salt. The contract executed by the parties called for ISCO to supply up to 75,000 tons of salt during the contract term. The contract included a provision stating that the amount for which the City was liable was "not to exceed $2,731,500.00," a number which correlated with the quantity of 75,000 tons at the stated price per ton. The contract contained other provisions stating that the total bid price was for 75,000 tons.

The City's witnesses testified uniformly that rock salt is absolutely necessary to maintain the safety of the City's streets, roadways and highways during and following snowstorms. In the absence of sufficient quantities of salt, the City is at risk of dangerous, life threatening traffic accidents and public health is at risk because emergency fire and ambulance vehicles are unable to navigate the City's streets in order to gain access to those in need. Thus, the absence of sufficient rock salt with which to respond to a snow storm presents a substantial risk to public health and safety.

The 2004-2005 season witnessed an unprecedented amount of snow fall in Boston and throughout the northeast. By mid-winter, salt became in short supply as cities and towns throughout the region exhausted their inventories. Boston was no different. By mid February, at the height of the winter storm season, ISCO had shipped the full complement of 75,000 tons of salt called for under the contract. The City needed additional salt in order to ensure its ability to respond to the imminent threat of additional snow storms occurring during the balance of the winter.

ISCO's salt originates in Chile from where it supplies salt to the American East Coast, including Boston. As it does every year, in anticipation of the coming winter

season, ISCO entered into bulk shipping contracts covering approximately 75% of its potential outside delivery obligation, recognizing that its customers were well within their discretion to order and take delivery of quantities of salt below their contract limitations. For shipments of salt in excess of this 75% of maximum exposure, ISCO customarily turns to the ocean freight spot market.

Not only was salt in extraordinary demand during the 2004-2005 season, the costs of shipping salt on the ocean freight spot market went through the proverbial roof during that same period. As a result of rising fuel costs and burgeoning commerce with China, spot market shipping rates rose from approximately twelve – fifteen dollars per ton to over thirty dollars per ton.

ISCO contends that, in mid February 2005, as it was nearing completion of delivery of the 75,000 tons of salt called for under its contract, it received a communication from the City's purchasing department proposing a modification of the contract to increase the purchase limitation above 75,000. For its part, ISCO refused to ship any quantities of salt in excess of the contract amount of 75,000 tons absent the City's agreement to a higher purchase price which would take into consideration the rising supply and shipping costs occurring over the season. ISCO took the position that its contractual obligations were satisfied once it had shipped 75,000 tons of salt to the City.

In any event, the City's Commissioner of Public Works Joseph Casazza contacted ISCO's President and CEO, Robert Jones. Faced with the prospect of fighting impending snow storms with an inadequate inventory of salt, Casazza demanded that ISCO continue meeting Boston's supply demands or assume responsibility for the danger to public safety

and the potential loss of human life that might result were the City faced with salt inventories inadequate to meet the demands of snow storms then imminently threatening the area.

ISCO responded that it needed a price increase. The City, through Hannon, cited ISCO to General Laws Chapter 30B, claiming that he lacked the authority to agree to a price increase as the City had the authority, under the existing contract, to demand that ISCO supply quantiies of salt in excess of 75,000 tons. Indeed, Hannon testified at his deposition that, despite the contract language which included the phrase, "total not to exceed $2.7 million, under his interpretation of the agreement, there was no limit to the quantities of salt which ISCO was obligated to supply the City during the contract term.

In response to Commissioner Cacazza's demands and in reliance upon the emergency provisions of Chapter 30B, Section 8, ISCO agreed to continue supplying the City with Salt as necessary, reserving its right to either negotiate or litigate to a higher price for those amounts over 75,000 tons in order to recover a fair market price reflecting its increased shipping and delivery costs, a position supported by Section 2-305 of the Uniform Commercial Code, G.L. c. 106, § 2-305.

Through the balance of the contract term, ISCO delivered approximately 28,000 additional tons of salt above and beyond the original contract amount of 75,000 tons. The City paid ISCO for the additional salt at the original contract rate of $36.42 per ton. ISCO is seeking an amount from the City sufficient to make up the delta between the original price and the amount necessary to cover its increased freight costs. It alleges that the fair market price in effect in February and March 2005 and/or the amount above the

original contract price that would be sufficient to cover its increased shipping costs on the spot market equates to approximately twenty-dollars per ton.

Thus, the principal issues to be resolved are whether the City was entitled, under the contract, to purchase quantities of salt in excess of 75,000 tons at the original contract price per ton of $36.00 or whether ISCO was entitled to increase the price once it satisfied the contract quantity of 75,000 tons. The City contends that 75,000 tons was a mere estimate. ISCO contends that the term "estimate" referred to the City's right to order and take delivery of less than but not more than 75,000 tons. As the contract is internally inconsistent, the Court must resort to extrinsic evidence in order to resolve the preliminary issue of whether ISCO had satisfied its contractual obligations once it delivered 75,000 tons of salt or whether the City was entitled to order quantities in addition to that amount at the original price per ton.

A second issue then concerns whether the circumstances, heavy snow storms, depleted salt inventories, and Commissioner Casazza's delivery demands presented an emergency condition which justified circumvention of the formalities prescribed by Chapter 30B and the City Charter.

Finally, although it has proffered no evidence with which to do so, the City may dispute the amount of the price increase and corresponding increase in fair market price to which ISCO is entitled.

Clearly, the issues outlined above require reference to and reliance upon facts which are in dispute such that this matter is not amenable to summary judgment. Not only is the City's motion untimely, it will result in the unnecessary expenditure of

judicial resources and impose unnecessary litigation costs upon the Plaintiff if the Court improvidently grants the motion for leave to file the summary judgment motion..

### Conclusion

For the reasons cited above, the Plaintiff International Salt Co., LLC respectfully urges the Court to deny the City's Motion for Leave to File its Motion for Summary Judgment.

**INTERNATIONAL SALT CO., LLC**

By its attorneys,


/s/Bruce W. Edmands
Bruce W. Edmands (BBO# 151360)
ECKERT SEAMANS CHERIN & MELLOTT
One International Place
Boston, MA 02110
Tel: 617-342-6886


Date: October 12, 2007

---

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that a true and accurate copy of the above pleading was served on each other party in this action by and through the Court's Electronic Filing service on October 12, 2007.


/s/ Bruce W. Edmands

---