UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTERNATIONAL SALT CO, LLC<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BOSTON<br><br>Defendants. | Docket No: 05-CV-10921-RGS |

## STIPULATION OF FACTS

For purposes of trial, the parties to this action hereby stipulate to the following facts:

1. On August 23, 2004, the City of Boston ("City") advertised an invitation for bids to supply the City with road maintenance salt, including sodium chloride bulk, or "rock salt." The advertisement sought bids for a quantity of "75,000 tons of sodium chloride bulk" and three additional "items" including sodium chloride 80# or 100# bags, calcium chloride 80# bags and industrial grade urea pellets.

2. Bids were publicly opened and read on September 8, 2004. The low bidder for rock salt was International Salt Company, LLC ("International Salt"). The city notified International Salt of its successful bid by Fax dated September 23, 2004. The notification stated, in part, "The following items have been awarded to your company: Item 1." **Exhibit 1.**

3. On October 20, 2004, International Salt Company, LLC, entered into a written contract number 15878-05 to provide rock salt to the City of Boston. **Exhibit 2.**

1

4. The written contract number 15878-05 incorporates the invitation for bids and International Salt's responses. The term of the contract was for the period of October 1, 2004 through June 30, 2005.

5. The contract incorporated the bid provision, including a provision which reads as follows: "PRICE WILL BE HELD FOR THE TERM OF THE CONTRACT AND SHALL NOT BE LIMITED TO THE ESTIMATED NUMBER OF ITEMS." **Exhibit 2**. In 2003, the City added this provision which the City which it incorporated from the contract of another municipality. The bid documents did not, in any other place, describe the quantity sought to be purchased as an "estimate." Deposition Testimony of William Hannon, **Exhibit 22,** ("Hannon Dep"). pp. 68.

6. The parties disagree as to the meaning and their intentions with respect to the above referenced provision that "price will be held for the term of the contract and shall not be limited to the estimated number of items."

7. International Salt had no hand in drafting the substantive provisions of the bid documents; nor were any of the contract provisions contained therein subject to revision. The only contract provision over which the vendor had any control was the bid price. International Salt made no inquiries of the City's purchasing department regarding the meaning of the above referenced provision that, "Price will be held for the term of the contract and shall not be limited to the estimated number of items."

8. The City's Purchasing Department has, since this dispute has arisen, changed the language of this provision. Hannon Dep. pp. 153-155.

9. The contract contains, among others, the following provisions: On the signature page, a specification that the "TOTAL AMOUNT NOT TO EXCEED is $2,731,500;" a further entry that "total bid price for this contract is: Thirty-six dollars forty-two cents per ton = two million seven hundred thirty-one thousand five hundred dollars no cents" and a further entry that "the price components of the bid price are: Total contract. Based upon 75,000 tons." See **Exhibit 2.**

10. The written contract number 15878-05 was approved in writing by Thomas M. Menino, the Mayor of Boston, on October 20, 2004. It was approved as to the availability of appropriation by Dennis Coughlin. See Exhibit 2.

11. During winter of 2004-2005, Boston experienced 3.9 inches of snow in November, 7.2 inches of snow in December, 43.3 inches in January, 2005; 17.7 inches of snow in February 2005, and 14.5 inches of snow in March, 2005. See Exhibits **3-8.**

12. During winter snow and ice storms, road salt is of critical importance to public safety. In responding to snow and ice storms, the City's Public Works Department applies salt to the City's streets and highways before, during and after the storms in order to control and reduce snow and ice accumulations. Without road salt, the City's streets become dangerous to vehicles and pedestrians. Absence of salt contributes to the potential for automobile accidents, road congestion, gridlock and the inability of police, fire and medical vehicles and personnel to respond to emergencies, creating significant threats to public health and safety. Deposition Testimony of Commissioner Joseph Casazza, **Exhibit 23,**

("Casazza Dep.") pp.31-32, Hannon Dep. pp. 83-85; Deposition Testimony of Vincent Caiani, Exhibit 24, (Caiani Dep), p. 59-61.

13. **Exhibit 9** is a spreadsheet based on data supplied by the City which accurately reflects the dates during the 2004-2005 season on which the City plowed snow and applied salt to the City roadways, the quantity of salt used, by district, and in total amount of salt used for each day, each month, and for the entire period.

14. **Exhibit 10** is a further spreadsheet reflecting the amount of salt the City used to respond to each storm and the resulting inventory.

15. By February 4, 2005, International Salt had delivered 70,848 tons of salt to the City. As of February 7, 2005, the City of Boston had an inventory of approximately 28,117 tons of rock salt on hand at its storage yards. **Exhibit 11.**

16. On February 7, 2005, Mr. Thompson faxed a letter to Vincent Caiani stating that, in reference to contract number 15878-05, due to increases in ocean freight rates, International Salt would raise the price of salt to $46.36 per ton effective with any shipments over 75,000 tons. **Exhibit 12.**

17. On February 7, 2005, Vincent Caiani, an Assistant Purchasing Agent for the City of Boston, placed a telephone to Daniel Philip Thompson, Vice President of Highway Bidding at International Salt. During the phone call Mr. Caiani requested that International Salt provide the City with additional quantities of salt in excess of 75,000 tons at the price of $36.42 per ton.

18. At this point, the parties were in disagreement over whether International Salt was obligated under the contract to provide salt in excess of 75,000 tons.

4

19. Under the City's normal procurement practices, it requires at least four to six weeks to process a competitive bid and contractual award on that basis when following the statutorily prescribed procedures. Hannon Dep. p. 65-67.

20. According to the deposition testimony of the City's Purchasing Agent, Williams Hannon, when faced with the need to make emergency procurements, the City follows the dictates of Massachusetts General Laws Chapter 30B Section 8. Hannon testified that there were no other written policies or other procedures in effect for governing such circumstances. Hannon Dep. pp. 80-81.

21. On February 8, 2005, William Hannon, the City's Purchasing Agent and Daniel Thompson held a phone conversation. Among other things, Hannon advised that Massachusetts General Laws Chapter 30B governed to preclude the City from agreeing to a price increase for shipments of salt in excess of 75,000 tons. In response, Thompson advised that International Salt had met its obligations once it delivered 75,000 tons of salt to the City and that, due to increased shipping costs, International Salt could not deliver salt in excess of 75,000 tons at $36.42 per ton.

22. On February 9, 2005, the City of Boston had an inventory of approximately 29,155 tons of rock salt on hand at its storage yards. By the end of the day on February 10, 2005, after the City used salt to respond to a snowfall, the City of Boston had an inventory of approximately 26,476 tons of rock salt on hand at its storage yards. **Exhibit 11.**

23. On February 10, 2007, William Hannon, Purchasing Agent for the City of Boston, sent a letter to Robert Jones, the Chief Executive Officer of International Salt. The letter states that the 75,000 ton figure referenced in the written contract was

an estimate, that the term of the contract was from October 1, 2004 through June 30, 2005, and that the City expected International Salt to provide rock salt to the City until June 30, 2005 at the contract price. The letter has been identified as **Exhibit 13**.

24. On February 10, 2005, Joseph Casazza, then Commission of Public Works for the City, placed a phone call to Robert Jones, Chief Executive Officer of International Salt. Mr. Hannon and Mr. Caiani were present in the Commissioner's Casazz'a office at the time. Mr. Thompson was present for the conversation and witnessed its contents via speaker phone. Mr. Casazza informed Jones that the City was in need of additional salt in excess of 75,000 tons and demanded written assurance from Jones that International Salt would continue to supply the City with salt after it completed delivery of the 75,000 tons. Hannon Dep. pp. 95-96; 100-106. See also **Casazza Dep., pp. 55-57** (Casazza recalled that his conversation was with Arthur Bush, a different representative of International Salt.)

25. In response, Mr. Jones agreed, but stated that International Salt would need to charge a higher price to meet increases in shipping costs.

26. By letter dated February 10, 2005 and faxed to Mr. Casazza on February 11, 2005, Mr. Jones referenced his phone call with Commissioner Casazza of February 10, 2005 and stated that International Salt would continue to provide salt to the City in excess of 75,000 tons. The letter stated that the price was "yet to be agreed to or determined," and stated that in the absence of agreement International Salt reserved the right "to have the price determined by court . . . on the basis of fair market value." The letter is included as **Exhibit 14**.

27. The next day, on February 11, 2005, counsel to International Salt sent a letter to William Hannon by fax and certified mail. Among other things, the letter stated that contract number 15878-05 (referred to in the letter as No. 1253) expressly obligated International Salt to provide only 75,000 tons of rock salt at $36.42 per ton, and that International Salt's contractual obligations would be satisfied once 75,000 tons were delivered. The letter also states that International Salt will supply salt beyond 75,000 tons at a price yet to be agreed to or determined and reserves the right to have the price determined by a court if the parties are unable to agree on a price. The letter is **Exhibit 15.**

28. On February 11, 2005, the City of Boston issued purchase order number 0000287141 to International Salt. The purchase order stated that the item requested was "Sodium Chloride Bulk Contract 15878," in a quantity of 25,000 tons. It explicitly stated a price of $36.42 per ton, or a total of $910,500 and specified a delivery date of 2/10/2005. The purchase order has been identified as **Exhibit 16.** The quantity of salt sought pursuant to the purchase order was in excess of the 75,000 tons already ordered and delivered to the City by International Salt. The purchase order bears a stamp indicating that it had been approved as to availability of appropriation by Sally Glora, the City's Auditor/Business Manager.

29. On February 16, 2005, International Salt delivered the 75,000th ton of salt to the City. It continued to make additional deliveries of salt on February 16th, 17th, 18th, and 19$^{th.}$

30. On February 18, 2005, Robert Jones sent a letter to William Hannon by fax and certified mail. Among other things, the letter states that International Salt will have satisfied its contractual obligations to the City by supplying 75,000 tons of rock salt. In the letter, Jones also offered to supply, under protest, rock salt in excess of 75,000 tons ordered by the City. For such deliveries, the letter states that the City will be invoiced at the price stated in the contract, $36.42 per ton, with International Salt reserving the right to seek a price increase from a court based on fair market value. Alternatively, the letter proposed that International Salt and the City enter a separate contract to supply the City with rock salt over 75,000 tons at a price of $42.36 per ton. The letter has been identified as **Exhibit 17.** The City did not reply to International Salt's letter of February 18, 2005.

31. On March 11, 2005, the City of Boston issued purchase order number 0000291021 to International Salt. The purchase order referenced contract number 15878-05, and ordered Sodium Chloride Bulk in a quantity of 3,000 tons. It explicitly stated a price of $36.42 per ton, or a total of $109,260. The purchase order again bears a stamp indicating that it had been approved as to the availability of appropriation by the City's Auditor/BPS Business Manager. The purchase order has been identified as **Exhibit 18**.

32. On April 15, 2005, the City of Boston issued purchase order number 0000297376 to International Salt. The purchase order referenced contract number 15878-05, and ordered Sodium Chloride Bulk in a quantity of 50 tons. It explicitly stated a

price of $36.42 per ton, or a total of $1,821. The purchase order has been identified as **Exhibit 19.**

33. On April 15, 2005, counsel to International Salt sent a letter by fax and mail to William Hannon regarding Bid/Contract No. 1253 for Rock Salt. Among other things, the letter stated that the City had not responded to International Salt's prior letters concerning price increases on Rock Salt over 75,000 tons, but had simply ordered more Rock Salt. "By placing orders in excess of contractually-established tonnage," the letter stated, "the City implicitly agreed to pay the fair market value for any amounts of Rock Salt in excess of 75,000 tons." The letter stated that International Salt had delivered 102,021.84 tons of rock salt, 27,021.84 tons over 75,000. It also stated that the average fair market value for rock salt in the Boston area during the period of the deliveries over 75,000 tons was $56.37 per ton, and that the amount the City owed International Sale for the 27,021.84 tons was $1,523,221.10. The letter is **Exhibit 20.**

34. On April 20, 2005, William Hannon sent a letter to International Salt's counsel. Among other things, Mr. Hannon's letter contends that Mr. Hannon and Mr. Caiani repeatedly and explicitly informed International Salt that the original contract allowed for purchase of rock salt in excess of 75,000 tons at $36.42 per ton, and that Massachusetts General Laws and City Charter provisions would not allow a price increase. The letter also contends that each purchase order for salt in excess of 75,000 tons explicitly stated a price of $36.42 per ton. The letter is **Exhibit 21.**

35. The City of Boston paid International Salt a total of $36.42 per ton for each ton of rock salt delivered by International Salt in 2004 and 2005 including the amounts in excess of 75,000 tons.

36. As of March 23, 2005, the City had a year end inventory of 29,236 tons of salt. **Exhibit 10.**

37. The City's Purchasing Agent William Hannon testified under oath that the City would not have ordered salt above the 75,000 amount had there not been a need for it. Hannon Dep. pp. 151-152.

38. In order to supply salt to customers in New England, International Salt maintains a facility in Charlestown. In order to supply salt to municipalities such as the City of Boston, International Salt derives the raw materials from a salt mine located in Chile and then ships the salt by ocean freighter to its destination. International Salt was able to meet the City's initial requirement for 75,000 tons of salt out of its current inventory on hand at the beginning of the 2004-2005 season and under its long term bulk shipping contracts of afreightment.

39. In order to meet the City's demand for salt in excess of 75,000 tons, International Salt needed to turn to the ocean freight "spot market" in order to replenish its inventory.

| | |
|---|---|
| **CITY OF BOSTON** | **INTERNATIONAL SALT CO., LLC** |
| By its attorneys | By its attorneys, |
| William F. Sinnott<br>Corporation Counsel | |
| /s/ Scott C. Holmes<br>Scott C. Holmes (BBO#544545)<br>Senior Assistant Corporation Counsel<br>Adam N. Cederbaum (BBO#661549)<br>Assistant Corporation Counsel<br>City of Boston Law Department<br>Room 615, City Hall<br>Boston, MA 02201<br>617-635-4042 | /s/ Bruce W. Edmands<br>Bruce W. Edmands (BBO#151360)<br>Julia B. Vacek (BBO#664689)<br>ECKERT SEAMANS CHERIN & MELLOTT<br>One International Place<br>Boston, MA 02110<br>Tel: 617-342-6886 |

Date: January 4, 2008

ISCO V BOSTON-Stipulation of Facts-Final(2008-01-03).doc