UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTERNATIONAL SALT CO, LLC<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BOSTON<br><br>Defendants. | Docket No: 05-CV-10921-RGS |

### PLAINTIFF'S PRETRIAL MEMORANDUM

**I.    INTRODUCTION AND FACTUAL BACKGROUND**

This action arises out of a dispute between the Plaintiff, International Salt Co., LLC and the Defendant City of Boston concerning a contract for the provision to rock salt during the 2004 – 2005 winter season. The relevant facts are as set forth in the Joint Stipulation of Facts filed by the parties in advance of trial.

In brief, the contract called for the provision of 75,000 tons of salt. As the winter of 2004-2005 was an extraordinarily severe winter, the City exhausted the 75,000 tons of salt by mid February, 2005. It thereupon demanded, through its Commissioner of Public Works and its purchasing department, that International Salt continue to make salt deliveries. In doing so, the City's representatives, most notably Commissioner Casazza, represented that the deliveries were necessary to meet an imminent and continuing need in order to avoid risks to public health and safety.

International Salt explained that, for quantities of salt delivered in excess of the contact amount of 75,000 tons, it needed to raise its price in order to cover increases in ocean freight

{K0361002.1}

costs (from Chile to Boston). The City refused to agree to a price increase, and International Salt thereupon continued to deliver salt to the City under a reservation of a right to seek a higher price either by way of subsequent mutual agreement or by way of judicial determination. The City's refusal to agree to a price increase over the rate specified in the contract necessitated this law suit.

The City maintains that, under its contract, it was entitled to purchase salt from the Plaintiff in excess of 75,000 tons at the original contract rate – that it was entitled to purchase even three times the contract amount, so long as it did so during the contract term. International Salt maintains that it fulfilled its contractual obligation once it delivered the 75,000 tons specified in the contract and that, as the parties failed to reach agreement as to a price for quantities above 75,000 tons, the Court may determine a reasonable price for such quantities.

## II.  LEGAL ANALYSIS:

### A.  The Contract Language is Unambiguous as to Scope and Should Be Construed According to its Plain Meaning

This matter arises out of a contract entered into by Plaintiff International Salt Company, LLC ("ISCO") and the City of Boston ("the City") pursuant to Mass. Gen. Laws c. 30B. Under the contract, ISCO was obligated only to supply 75,000 tons of rock salt to the City at the fixed price of $36.42 per ton for a total contract price of $2,731,500.00. That the scope of ISCO's supply obligation was limited to 75,000 tons is made clear by the terms of the contract itself. The total contract price was expressly stated and the contract makes clear that the price to be paid is in exchange for a quantity not to exceed 75,000 tons of rock salt. This number is not an approximation as suggested by the City, rather, it is a finite, fixed amount. The definiteness of the terms is further underscored by the inclusion of the "not to exceed" provision.

{K0361002.1}

The City argues that a single sentence contained in the contract, which states that "[p]rice will be held for the term of the contract and shall not be limited to the estimated number of items," effectively converts the agreed-upon fixed purchase amount from a requirement into a mere approximation. This proposition essentially allows for unfettered increases in quantity at the contract price. Any attempt to characterize the 75,000 tons of rock salt as an estimate or "estimated number of items" is completely without merit. If 75,000 tons was an estimated amount it should have been so stated in the initial request for bids, as required by M.G.L. c. 30B, §12(c)(1). In fact, the purchase amount was not described as an estimate in the bid documents; it was construed as a required amount not to be exceeded and treated as such.

Where the terms of the contract are plain and unambiguous they must be construed in their plain and ordinary sense. See Rogaris v. Albert, 431 Mass. 833, 835 (2000). Contract language becomes ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable difference of opinions as to the meaning of the words employed and the obligations undertaken. See Suffolk Construction Co. v. Lanco Scaffolding, 47 Mass. App. Ct. 726, 729 (1999). However, an ambiguity is not created in a contract simply because a controversy exists between the parties, each favoring an interpretation contrary to the other's. See Suffolk Constr. Co., 47 Mass. App. Ct. at 729. If the court concludes that a contractual ambiguity does exist, ultimate resolution of it turns on the parties' intent as discerned by the fact finder from the circumstances surrounding the ambiguity and from reasonable inferences as may be available. See Lanier Professionals Services, Inc. v. Rizzi, 192 F.3d 1, 4 (1st Cir. 1999). Where the language of the contract is susceptible to more than one interpretation, courts should construe the contract in the light of the situation and relation of the parties at the time it was made, and, if possible, accord it a reasonable and sensible meaning,

consonant with its dominant purpose. See <u>Video Central, Inc. v. Data Translation, Inc.</u>, 925 F.Supp. 867, 872 (D.Mass.,1996). The parties' intent "is to be gathered, not from [a] single sentence ..., but from the whole instrument read in the light of the circumstances existing at the time of negotiations leading up to its execution." <u>Id.</u> citing <u>Miller v. Robertson</u>, 266 U.S. 243, 251, 45 S.Ct. 73, 76, 69 L.Ed. 265 (1924). Here, the contract, taken as a whole, supports the conclusion that the parties intended the 75,000 tons to be a fixed amount, in spite of the City's later contention, based on a single sentence, that it was merely an estimate.

Even if an ambiguity is found, however, it is well-established under Massachusetts law that any such ambiguity in a contract must be strictly construed against the drafter, and the drafter must be held to any reasonable interpretation of the ambiguous term which is relied on by the other party. <u>Merrimack Valley Nat'l Bank v. Barid</u>, 372 Mass. 721, 724-26 (1977); <u>Garnick & Scudder, P.C. v. Dolinsky</u> 45 Mass. App. Ct. 925 (1998)(*rescript*); <u>E.R. Holdings, Inc. v. Norton Company</u>, 735 F. Supp. 1094, (D. Mass. 1990). This contract was drafted by the City of Boston and any ambiguity as to its terms must be construed against it.

**B.   <u>Provision of Rock Salt Beyond the Scope of the Original Contract was Pursuant to the Emergency Provisions of M.G.L. c. 30B</u>**

To the extent that the city required more than the agreed-upon 75,000 tons of rock salt during the 2004 – 2005 winter season, the relationship between the parties is governed by the emergency provision provided for under M.G.L. c. 30B, § 8 and any failure to strictly adhere to standard bidding procedures is thus excusable. The statute expressly authorizes emergency procurement without compliance with statutory requirements whenever the time required for compliance "would endanger the health or safety of the people or their property...." M.G.L. c. 30B, § 8. Prior to its receipt of the full amount set forth in the contract, the City advised ISCO by letter and telephone calls that in light of severe weather conditions and a series of

extraordinary snow storms, it would require an amount of rock salt in excess of that provided for under the contract. To the extent that the City found it needed more rock salt, any additional tonnage was clearly outside the scope of the original contract. ISCO acknowledges that under ordinary circumstances, alteration to the original contract, increasing the amount of rock salt supplied to the City would typically governed by the public bidding and approval provisions of M.G.L. 30B, § 13 and the City Charter. However, taken as a whole, M.G.L. c. 30B gives the City's purchasing agent the authority to make emergency procurements without following the dictates of competitive bidding. Further, the statute expressly authorizes the purchasing agent to pay more than the original contract price when purchasing "road salt or other ice and snow control supplies" by specifically exempting such supplies from a limit imposed on the increase in total contract price. M.G.L. c. 30B, § 13(4). The City of Boston should be estopped from any attempt at denying the existence of emergency conditions because the City itself through its statements and conduct characterized the situation as an emergency both at the time of its request for additional rock salt and in documents filed in the instant litigation. See e.g. Bergeron v. Mansour 152 F.2d 27, 30 (1945) (A person is "estopped" from denying consequences of his conduct where that conduct has induced reasonable reliance on the representation made).

C. **Where No Price is Agreed Upon, The Court May Supply a Reasonable Price Term**

Under reservation of rights, ISCO agreed to provide the additional 27,021.84 tons of rock salt required by the City due to emergency conditions, in spite of the fact that the parties had not agreed on a price for the additional tonnage. The absence of an agreed upon price term in a contract for the provision of goods is not fatal to the contract itself. The Massachusetts Uniform Commercial Code expressly states that parties to a contract for sale of goods may conclude said contract even if the price is not settled. M.G.L c.106, §2-305. In such a case, where the price is

{K0361002.1}

left to be agreed upon by the parties and they fail to agree, the Code states that the price is determined to be "a reasonable price at the time for delivery." Id.

In determining whether an agreement which lacks definiteness in terms of price is nonetheless enforceable, courts should ask whether the parties intended to contract with one another and there is a reasonably certain basis for providing an appropriate remedy." Armstrong v. Rohm and Haas Co., Inc. 349 F.Supp.2d 71, 78 (D.Mass.,2004) (citations omitted). Where it is clear that the parties intended to enter into a contract, courts will, if reasonably possible, interpret a contract so as to make it valid and enforceable. See Shayeb v. Holland, 321 Mass. 429, 433 (1947) (where no price was specified in a contract for sale of land, Court implied a "fair and reasonable price" equivalent to the fair and reasonable value of the premises). When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court. See Fay, Spoffard & Thorndike, Inc. v. Massachusetts Port Authority, 7 Mass. App. Ct. 336, 342 (1979) (contract failed to deal expressly with the compensation to be received by plaintiff) (citing Restatement (Second) of Contract §204). Courts will then interpret the contract sensibly in light of the terms of the document taken as a whole. See Fay, Spoffard & Thorndike, Inc., 7 Mass. App. Ct. at 342. In those circumstances, a court will not base its decision on evidence of prior negotiations or agreements, but should supply a term which comports with community standards of fairness and policy rather than analyze a hypothetical model of the bargaining process. See President Fellows of Harvard College v. Peco Energy Co., 57 Mass. App.Ct. 888, 896 (2003) (citing Restatement (Second) of Contract §204).

{K0361002.1}

In spite of the fact that no price term was agreed upon, the circumstances taken as a whole make clear that ISCO and the City intended to form a contract for the provision of the additional rock salt. It is undisputed that the parties intended to form a contract, all that is in dispute is the price term that should be supplied in the absence of the parties' agreement on price.

A reasonable basis for providing a remedy to this dispute exists in an assessment of the reasonable market value of the goods at the time of delivery. ISCO salt supplies originate in Chile. Chile supplies its Boston based terminal (located in Charlestown) by contracting for shipments from Chile to Boston under long term bulk contracts, contracts of afreightment. ISCO was able to meet the Boston's initial requirement for 75,000 tons out of its existing salt inventory and its long terms shipping contracts. To replenish its current inventory for quantities of salt in excess of 75,000 tons, ISCO was dependent upon the ocean freight spot market, increasing its shipping costs by approximately $20.00 per ton. ISCO contends that, in setting a reasonable price for its salt deliveries to Boston in excess of 75,000 tons, the Court should add to the contract rate, the amount by which ocean freight spot market shipping costs exceeded ISCO's bulk shipping rate.

Respectfully submitted,

INTERNATIONAL SALT CO., LLC

By its attorneys,

/s/ Bruce W. Edmands
Bruce W. Edmands (BBO#151360)
Julia B. Vacek (BBO#664689)
ECKERT SEAMANS CHERIN & MELLOTT
One International Place
Boston, MA 02110

{K0361002.1}

Tel: 617-342-6886

Date: January 4, 2008

{K0361002.1}