UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 05-cv-10921-RGS

INTERNATIONAL SALT
COMPANY, LLC
   Plaintiff,

v.

CITY OF BOSTON
   Defendant.

## DEFENDANT CITY OF BOSTON'S MOTION
## FOR JUDGMENT ON THE PLEADINGS

The Defendant, City of Boston ("City"), hereby moves pursuant to Fed. R. Civ. P. 12(c), for Judgment on the Pleadings dismissing all counts of the Plaintiff's Complaint. Judgment in the City's favor is appropriate because the Plaintiff, International Salt Company LLC, has not alleged, nor will it be able to prove, that the purported contract it is suing under was in writing or was approved in writing by the mayor. These failures are complete legal bars to recovery in contract or quantum meruit.

1

Respectfully submitted,
DEFENDANT, CITY OF BOSTON
William F. Sinnott
Corporation Counsel
By its attorney:

Date: January 7, 2007        ___/s/ Adam N. Cederbaum_____
Scott C. Holmes, BBO #544545
Adam N. Cederbaum, BBO #661549
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4042 (SH)
(617) 635-4030 (AC)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 05-cv-10921-RGS

| | |
|---|---|
| INTERNATIONAL SALT COMPANY, LLC<br>    Plaintiff,<br><br>v.<br><br>CITY OF BOSTON<br>    Defendant. | |

**DEFENDANT CITY OF BOSTON'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

The Plaintiff, International Salt Company LLC ("International Salt"), filed a complaint against the City of Boston ("City") alleging breach of contract and quantum meruit. Because the complaint fails to allege any claims upon which the City could be found to be liable, judgment in favor of the City based on the pleadings alone is appropriate.

International Salt's complaint stems from the parties' sale and purchase of rock salt in the winter of 2004-2005. International Salt had a contract to supply rock salt to the City for $36.42 per ton. Although the City denies it, International Salt alleges in its complaint that it was only obligated to supply the city with up to 75,000 tons at that price. The City ordered more than 75,000 tons of rock salt, and International Salt delivered it. International Salt alleges that the City either verbally or implicitly entered into a new contract to buy salt in excess of 75,000 tons at some price not agreed upon that exceeded the previous contract price. The City paid International Salt $36.42 per ton for the salt.

3

Based on its allegation that the parties entered into a new contract to provide salt in excess of 75,000 tons at an undetermined but higher price, International Salt alleges a breach of contract.

The breach of contract claim should be dismissed based on the pleadings because International salt has not alleged that the purported contract complied with clear statutory requirements that only a contract made in writing and approved in writing by the Mayor of Boston is enforceable against the City. International Salt's allegations that the City faced an emergency situation with respect to its salt inventory is not relevant to the laws requiring written contracts signed by the mayor. International Salt's complaint also states a claim against the City for quantum meruit. This claim, too, should be dismissed at this stage because a plaintiff cannot recover in quantum meruit from a city in Massachusetts. Finally, because the previous two claims should be dismissed, the Plaintiff's declaratory judgment claim should be dismissed.

## I. STANDARD OF REVIEW

The standard of review for a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is the same as that for a motion to dismiss under Fed.R.Civ.P. 12(b)(6). <u>Collier v. City of Chicopee</u>, 158 F.3d 601, 602 (1st Cir.1998). In considering the City's motion, the court must take the allegations in International Salt's complaint as true and make all reasonable inferences in International Salt's favor. See <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir.1993). The City is entitled to judgment in its favor n the pleadings only if it appears beyond doubt that International Salt can prove no set of facts which would entitle it to relief. <u>Miranda v. Ponce Federal Bank</u>, 948 F.2d 41, 44 (1st Cir.1991).

II.	ARGUMENT

A.	The Court Should Enter Judgment for the City on Count I of the Plaintiff's Complaint (Breach of Contract) Because There is No Set of Facts it Could Prove That Would Establish an Enforceable Contract with the City.

Contracts with the City must be in writing, and bear written approval of the mayor and city auditor in order to be enforced. G. L. c. 30B, § 17 (a) states that "[a]ll contracts in the amount of five thousand dollars or more shall be in writing, and the governmental body shall make no payment for a supply or service rendered prior to the execution of such contract." The city Charter specifies that "[a]ll contracts made by any department of the City of Boston . . . shall, when the amount involved is $10,000 or more, . . . be in writing; and no such contract shall be deemed to have been made or executed until the approval of the mayor of said city has been affixed thereto in writing and the auditor of said city has certified thereon that an appropriation is available therefore or has cited thereon the statute under authority of which the contract is being executed without an appropriation." St. 1890, c. 418, § 6, as amended by St. 1939, c. 156 § 2 & St. 1998, c. 262, § 1.

Massachusetts courts – and federal courts applying Massachusetts law - "have consistently and punctiliously held that one dealing with a city or town cannot recover if statutory requirements such as are contained in the [city's] charter have not been observed." United States Leasing v. City of Chicopee, 402 Mass. 228, 231 (1988) (citations omitted). See also KVS Information Systems, Inc. v. Tisbury, 753 F.Supp 1020, 1022 (D.Mass. 1990). The requirement that the mayor approve the contract in writing in order for it to be enforceable "is not something which can be sloughed off as a mere ministerial act." Lumarose Equipment Corp. v. City of Springfield, 15 Mass. App.

5

Ct. 517, 519-520 (1983). A party dealing with a public employee must, "at its peril" ascertain the extent of statutory authority possessed by the employee. Potter & McArthur, Inc. v. City of Boston, 15 Mass. App. Ct. 454, 459 (1983), citing Wormstead v. Lynn, 184 Mass. 425, 428 (1903). A plaintiff cannot recover when those statutory requirements are not satisfied. Adalian Bros. v. City of Boston, 323 Mass. 629, 632 (1949).

While the City may enter into certain emergency contracts, St. 1890, c. 418, § 6, as amended by St. 1939, c. 156 § 2 & St. 1998, c. 262, § 1, still clearly requires that a contract be in writing, approved in writing by the mayor, and certified by the city auditor in order to be enforceable against the City of Boston. The statute's language is clear and unambiguous. The Legislature had an opportunity to allow for emergency exceptions, and it chose not to. Indeed, a court is especially incapable of writing an emergency provision into that statute because it was amended as recently at 1998, a date at which nobody could maintain that the Legislature had not contemplated the possibility of certain emergency procurements.

International Salt contends that "emergency" contracts do not need to be in writing or have mayoral approval to be enforced, but the Massachusetts Supreme Judicial Court has consistently treated those requirements as necessary even in cases of emergency. That position is clearly inconsistent with the statutory text. The statute imposing those requirements applies to "all" contracts made by any department, a term that includes emergency contracts – especially in light of the fact that the term "all" remains in the statute after its amendment in 1998. Moreover, the language of St. 1890, c. 418, § 6, as amended by St. 1998, c. 262, § 1, is tailored to apply even when officials

6

invoke emergency to exceed appropriations because it allows the city auditor to certify that instead of an available appropriation, there is statutory authority to exceed appropriations. (The City Auditor is required to either "certify thereon that an appropriation is available therefore or [cite] thereon the statute under authority of which the contract is being executed without an appropriation.") As mentioned previously, the Legislature chose not to include an emergency provision as recently as 1998.

Furthermore, the Supreme Judicial Court has already disposed of the question. In City of Quincy v. Brooks-Skinner, Inc., 325 Mass. 406 (1950), a contractor began building a temporary expansion for the city's hospital to meet what the city solicitor termed the "war emergency." Id. at 408-409. In that case, the SJC stated that the contract could not be enforced for failure to comply with a couple of statutory requirements, including a statute similar to St. 1890, c. 418, § 6, as amended by St. 1939, c. 156 § 2 & St. 1998, c. 262, § 1. The Court determined that the contract's potential "emergency" nature did not eliminate the need to comply with other contract requirements, stating that "[s]ince the contract, for reasons just stated, was not enforceable against the city, it is unnecessary to decide whether a 'special emergency' existed within the meaning of G.L. (Ter.Ed.) c. 43, § 28, so as to make the requirements of that section relating to advertising for bids inapplicable." Id. at 413, n.3.

The SJC again indicated that emergency circumstances do not eliminate the need for a written contract approved by the mayor. In Massachusetts General Hospital v. City of Revere, 385 Mass. 772 (1982), the Revere police shot a fleeing robbery suspect then rushed him to Massachusetts General Hospital for treatment of his wounds. Id. at 773. The hospital sought to recover the cost of treatment in contract, but the Court held that it

7

could not because a variety of statutory requirements for enforceable municipal contracts analogous to those of the Boston City Charter had not been met. Most relevant to the instant case, the SJC treated the writing and mayoral signature requirements as distinct and unaffected by operation of provisions for emergency contracting. "[E]ven if the police had the authority to contract," it stated, "several statutory requirements for a valid contract were not met. All contracts made by city departments in excess of $2,000 must be in writing and approved by the mayor. G.L. c. 43, s 29. Except in an emergency, a city department could not incur liabilities in excess of its appropriation. G.L. c. 44, s 31. In an emergency, arguably the case here, the city council must approve the expenditure. G.L. c. 44, s 31." Id. at 775.

B.     The Quantum Meruit Claim Should Be Dismissed

It is legally impossible to recover from the City on this basis. Contracts with municipalities are enforceable only if made in accordance with municipal contracting statutes, and "a party cannot evade the statutory limitations on a municipality's contracting powers by rendering services and subsequently seeking recovery based on alternative theories." Park Drive Towing v. City of Revere, 442 Mass. 80, 84, n.7 (2004). See also, Central Tow Co., Inc. v. City of Boston, 371 Mass. 341, 345 (1976); Adalian Bros., Inc. v. City of Boston, 323 Mass. 629, 632 (1949).

C.     Declaratory Judgment

International Salt cannot obtain the declaratory judgment it requests because it is not entitled to judgment on either of the previous two counts.

*Therefore,* for the reasons stated above, the Defendant City of Boston, requests that this court issue judgment as on the pleadings dismissing all counts of International Salt's complaint.

|  |  |
|---|---|
|  | Respectfully submitted,<br>DEFENDANT, CITY OF BOSTON<br>William F. Sinnott<br>Corporation Counsel<br>By its attorney: |
| Date: January 7, 2007 | ___/s/ Adam N. Cederbaum_____<br>Scott C. Holmes, BBO #544545<br>Adam N. Cederbaum, BBO #661549<br>Assistant Corporation Counsel<br>City of Boston Law Department<br>Room 615, City Hall<br>Boston, MA 02201<br>(617) 635-4042 (SH)<br>(617) 635-4030 (AC) |

**Massachusetts General Laws**

**G. L. c. 30B, § 17**

Westlaw.

Page 1

M.G.L.A. 30B § 17

C

**Effective: [See Text Amendments]**

MASSACHUSETTS GENERAL LAWS ANNOTATED
PART I. **ADMINISTRATION OF THE GOVERNMENT** (CH. 1-182)
TITLE III. **LAWS RELATING TO STATE OFFICERS** (CH. 29-30B)
CHAPTER 30B. **UNIFORM PROCUREMENT ACT**
→ **§ 17. Writing requirement; invalidation of contracts; forfeiture; civil actions**

(a) All contracts in the amount of five thousand dollars or more shall be in writing, and the governmental body shall make no payment for a supply or service rendered prior to the execution of such contract.

(b) Subject to the provisions of section three A of chapter forty, a contract made in violation of this chapter shall not be valid, and the governmental body shall make no payment under such contract. Minor informalities shall not require invalidation of a contract.

(c) A person who causes or conspires with another to cause a contract to be solicited or awarded in violation of a provision of this chapter shall forfeit and pay to the appropriate governmental body a sum of not more than two thousand dollars for each violation. In addition, the person shall pay double the amount of damages sustained by the governmental body by reason of the violation, together with the costs of any action. If more than one person participates in the violation, the damages and costs may be apportioned among them.

(d) The inspector general shall have authority to institute a civil action to enforce paragraph (c) if authorized by the attorney general.

Current through Ch. 218, of the 2007 1st Annual Session.

© 2007 Thomson/West

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

**Massachusetts Acts and Resolves**

Ma. St. 1890, c. 418, § 6, as amended by Ma. St. 1939, c. 156 § 2 & Ma. St. 1998, c. 262, § 1.

# ACTS
### AND
# RESOLVES

PASSED BY THE

# General Court of Massachusetts,

IN THE YEAR

# 1890,

TOGETHER WITH

THE CONSTITUTION, THE MESSAGES OF THE GOVERNOR,
LIST OF THE CIVIL GOVERNMENT, TABLES SHOWING
CHANGES IN THE STATUTES, CHANGES OF
NAMES OF PERSONS, ETC., ETC.

---

PUBLISHED BY THE
SECRETARY OF THE COMMONWEALTH.

---



BOSTON:
WRIGHT & POTTER PRINTING CO., STATE PRINTERS,
No. 18 Post Office Square.
1890.

370

1890. — CHAPTERS 417, 418.

Construction of 1888, 288.

SECTION 6. Chapter three hundred and eighty-eight of the acts of the year eighteen hundred and eighty-eight shall not be construed to apply to licensed pawnbrokers, nor to have repealed or affected section thirty-four of chapter one hundred and two of the Public Statutes.

Repeal of 1885, 232.

SECTION 7. Chapter two hundred and fifty-two of the acts of the year eighteen hundred and eighty-five is hereby repealed.

*Approved June 16, 1890.*

Chap. 417 AN ACT TO AMEND AN ACT TO INCORPORATE THE CITY HOSPITAL IN THE CITY OF QUINCY.

*Be it enacted, etc., as follows:*

Amendment to 1884, 107, § 2.

SECTION 1. Section two of chapter one hundred and eighty-seven of the acts of the year eighteen hundred and eighty-nine is hereby amended by inserting after the word "hospital", in the sixth line thereof, the words: — and said corporation may also, subject to said limitation of amount, purchase and hold real estate in the city of Quincy. — so that said section as amended shall read as follows: — *Section 2. Said corporation may receive and hold real and*

May hold real estate granted, etc., to it not exceeding $500,000.

*personal estate which may, from time to time, be given, granted, bequeathed or devised to it, and accepted by the corporation, to an amount not to exceed five hundred thousand dollars, for the uses and purposes of said hospital; and said corporation may also, subject to said limitation of amount, purchase and hold real estate in the city of Quincy, provided always that both the principal and income thereof shall be appropriated according to the terms of the donation, devise or bequest.*

SECTION 2. This act shall take effect upon its passage.

*Approved June 16, 1890.*

Chap. 418 AN ACT RELATING TO OFFICERS AND DEPARTMENTS IN THE CITY OF BOSTON.

*Be it enacted, etc., as follows:*

Officers in charge of departments may hold office, not exceeding three years, as may be determined by ordinance.

SECTION 1. Every person now or hereafter having sole or joint charge of a department of the city of Boston shall hold office for such term, not exceeding three years, beginning with the first day of May if the year of his appointment, as the city council may by ordinance determine, and until his successor is appointed and confirmed: *provided however*, that all members of boards and all trustees shall hold office for such terms as may be specified in the stat-

1890. — CHAPTER 418.

371

utes creating them and until their respective successors are appointed and confirmed, but such terms shall begin with the first day of May in the year of appointment. All officers, except election officers and those above named, appointed by the mayor and confirmed by the board of aldermen of said city, shall hold office for terms of one year beginning with the first day of May in the year of appointment and until their respective successors are appointed and confirmed. Any officer appointed by the mayor and confirmed by the board of aldermen of said city may be removed by the mayor for such cause as he shall deem sufficient and shall assign in his order for removal.

Removal from office by the mayor.

SECTION 2. The term "subordinate" in this act, and in all other acts relating to the city of Boston or its departments, shall be construed to include only assistants, deputies, clerks and other officers, appointed by an officer or board in charge of a department, and paid a yearly salary.

Term "subordinate" construed.

SECTION 3. Every subordinate of a department of said city shall continue to hold his office until removed by the officer or board in charge of the department, for such cause as he, or it, shall deem sufficient, and shall assign in the order of removal.

Subordinates to hold office until removed.

SECTION 4. Every officer or board in charge of a department in said city, when authorized to erect a new building or to make structural changes therein, shall make contracts therefor, not exceeding five, each contract to be subject to the approval of the mayor; and when about to do any work or to make any purchase, the estimated cost of which amounts to or exceeds two thousand dollars, shall, unless the mayor give a written authority to do otherwise, invite proposals therefor by advertisements in not more than four daily newspapers published in said city, such advertisements to state the time and place for opening the proposals in answer to said advertisements, and reserving, in such invitations the right to the officer or board to reject any or all proposals.

Contracts to be made for building, etc.

SECTION 5. Every proposal for doing such work or making such sale shall be accompanied by a suitable bond, certified check or certificate of deposit, for the faithful performance of such proposal, and all such proposals shall be kept by the officer or board inviting the same, and shall be open to public inspection after said proposals have been accepted or rejected.

Proposals to be accompanied by a bond, etc.

## 372    1890. — CHAPTER 419.

**Contracts amounting to $2,000 to be in writing.**

SECTION 6. All contracts made by any department of the city of Boston shall, when the amount involved is two thousand dollars or more, be in writing, and no such contract shall be deemed to have been made or executed until the approval of the mayor in writing is affixed thereto.

**Contracts to be accompanied by a bond or deposit.**

All such contracts shall be accompanied by a suitable bond or deposit of money or other security for the faithful performance of such contracts, and such bonds or other security shall be deposited with the city auditor until the contract has been carried out in all respects; and no such contract shall be altered except by a written agreement of the contractor, the sureties on his or their bond, and the officer or board making the contract, with the approval of the mayor affixed thereto.

**Treasurer to invite proposals for loans.**

SECTION 7. The treasurer of said city, when authorized to issue any bonds or certificates of indebtedness of said city, except for a loan in anticipation of taxes for the year in which the loan is made shall, unless the commissioners of the sinking funds or persons having charge of any trust funds of said city purchase the same, invite proposals for the purchase thereof by advertisements in four daily newspapers published in said city, reserving to himself the right to reject any and all bids; in case no such proposal is accepted, the treasurer may, with the approval of the mayor, award or give any part of the loan, or the entire loan in parts to any other person or party, provided only it be at a price or sum not less than par. The rate of interest on such certificates of indebtedness for a loan in anticipation of taxes shall be fixed by said treasurer.

**Rate of interest to be fixed by treasurer.**

**Repeal of 1885, 266, § 5.**

SECTION 8. Section five of chapter two hundred and sixty-six of the acts of the year eighteen hundred and eighty-five is hereby repealed.

SECTION 9. This act shall take effect upon its passage.

*Approved June 16, 1890.*

---

**Chap. 419** AN ACT TO CONFIRM THE PROCEEDINGS OF CERTAIN TOWN MEETINGS.

*Be it enacted, etc., as follows:*

**Proceedings made valid.**

SECTION 1. The proceedings of town meetings of the several towns heretofore held shall not be invalid for the reason that the tellers appointed at said meetings were sworn by the moderators instead of being sworn by the town clerks.

---

## 1890. — CHAPTER 416.    369

**Borrower to be given a receipt, etc.**

SECTION 2. Every person engaged in the business mentioned in section one shall give to each borrower or depositor a receipt, ticket or card, inscribed with the name of the lender, the article or articles pledged, the description of the property as required in section one, the name of the borrower or depositor, the amount of the loan, the date when made, the date when payable; which said receipt, ticket or card shall be numbered to correspond with the number of the transaction on said book.

**Record book to be open to inspection of the police, etc.**

SECTION 3. Said book shall at all times be open to the inspection of the board of police, the superintendent and chief inspector of police, of the city of Boston, the chief of the district police and the chief of police and selectmen of their respective cities or towns, or any or either of them, or to any officer who shall be specially authorized in writing for that purpose by any or either of them, and who exhibits such written authority; and the property described in said book shall be exhibited to said officers or either of them on their demand.

**Penalties for refusing inspection, etc.**

SECTION 4. Every person engaged in said business as aforesaid, or his agent or other person in charge thereof, who fails or refuses to allow the inspection of said book, or who wilfully hinders, obstructs or prevents such officer or officers from making said inspection or from examining said property as provided in the preceding section, or wilfully violates any other provisions of this act, shall be punished by fine not exceeding two hundred dollars or by imprisonment not exceeding one year, or by both such fine and imprisonment.

**Articles pledged to be retained if they appear to have been stolen.**

SECTION 5. If it shall appear to any of the officers mentioned in section three of this act that any articles pledged to any person as herein provided have been stolen, such officer may give to such person a notice in writing to hold such articles so pledged, and the same shall thereafter be held by such person for sixty days (unless said notice shall be recalled in writing by the officer giving the same), subject to inspection and examination at all reasonable times; and the same shall be produced upon notice or summons by the district-attorney or other prosecuting officer before any grand jury or court of justice, when the question of the larceny of the same is under legal investigation, and said person shall not be held liable in damages or otherwise to any one for or on account of such detention.

# ACTS
### AND
## RESOLVES

PASSED BY THE

## General Court of Massachusetts

IN THE YEAR

## 1939

TOGETHER WITH

TABLES SHOWING CHANGES IN THE STATUTES, ETC.

PUBLISHED BY THE
SECRETARY OF THE COMMONWEALTH



BOSTON
WRIGHT & POTTER PRINTING COMPANY
1939

128                     ACTS, 1939. — CHAP. 156.

*Chap.*156  AN ACT RELATING TO CONTRACTS ENTERED INTO ON BEHALF OF THE COUNTY OF SUFFOLK.

*Be it enacted, etc., as follows:*

SECTION 1. Chapter four hundred and eighty-six of the acts of nineteen hundred and nine is hereby amended by striking out section thirty and inserting in place thereof the following: — *Section 30.* Every officer or board in charge of a department in said city and every officer, board or official of the county of Suffolk having power to incur obligations on behalf of said county in cases where said obligations are to be paid for wholly from the treasury of said city, when authorized to erect a new building or to make structural changes in an existing building, shall make contracts therefor, not exceeding five, each contract to be subject to the approval of the mayor, and when about to do any work or to make any purchase, the estimated cost of which alone, or in conjunction with other similar work or purchase which might properly be included in the same contract, amounts to or exceeds one thousand dollars, shall, unless the mayor gives written authority to do otherwise, invite proposals therefor by advertisements in the City Record. Such advertisements shall state the time and place for opening the proposals in answer to said advertisement, and shall reserve the right to the officer, board or official to reject any or all proposals. No authority to dispense with advertising shall be given by the mayor unless the said officer, board or official furnishes him with a signed statement which shall be published in the City Record giving in detail the reasons for not inviting bids by advertisement.

SECTION 2. Chapter four hundred and ninety is hereby amended by striking out section six and inserting in place thereof the following: — *Section 6.* All contracts made by any department of the city of Boston or by any officer, board or official of the county of Suffolk having power to incur obligations on behalf of said county in cases where said obligations are to be paid for wholly from the treasury of the city of Boston, shall, when the amount involved is two thousand dollars or more, be in writing, and no such contract shall be deemed to have been made or executed until the approval of the mayor in writing is affixed thereto. All such contracts shall be accompanied by a suitable bond or deposit of money or other security for the faithful performance of such contracts, and such bonds or other security shall be deposited with the city auditor until the contract has been carried out in all respects; and no such contract shall be altered except by a written agreement of the contractor, the sureties on his or their bond, and the officer, board or official making the contract, with the approval of the mayor affixed thereto.

SECTION 3. This act shall take effect upon its passage.

*Approved April 26, 1939.*

---

ACTS, 1939. — CHAP. 157.                     129

*Chap.*157  AN ACT RELATIVE TO THE RECORDS OF THE COURTS AND THE DISPOSAL OF SUCH OF THEIR PAPERS AS ARE OBSOLETE AND USELESS.

*Be it enacted, etc., as follows:*

SECTION 1. Section thirteen of chapter two hundred and eighteen of the General Laws, as amended by chapter fifty-nine of the acts of nineteen hundred and thirty-seven, is hereby further amended by striking out the first paragraph. [G. L. (Ter. Ed.), 218, § 13, etc., amended.]

SECTION 2. Chapter two hundred and twenty-one of the General Laws is hereby amended by striking out section twenty-seven, as appearing in the Tercentenary Edition, and inserting in place thereof the following: — *Section 27.* The supreme judicial court shall by rule or order direct in what manner and to what extent, if any, the papers in causes which are entered in any court of the commonwealth shall be extended upon the records, after final judgment or otherwise, and what shall be a final record. Such rule or order shall specify whether such extension shall be in whole or in part, shall be in long hand, typewriting, print or otherwise, or shall consist of the filing of original papers in such causes by loose leaf system or otherwise. [G. L. (Ter. Ed.), 221, § 27, amended. Extension of papers on records.]

SECTION 3. Said chapter two hundred and twenty-one is hereby further amended by inserting after section twenty-seven, as amended by section two of this act, the following new section: — *Section 27A.* The supreme judicial court may by rule or order provide for the disposal by destruction or otherwise of obsolete and useless papers in causes which have been entered in any court of the commonwealth and of obsolete and useless notes of testimony that have been preserved in any such court, but subject, except with respect to such notes, to the following requirements: — [G. L. (Ter. Ed.), 221, new section 27A, inserted. Rules pertaining to destruction of obsolete papers.]

(1) The cause to which the papers relate shall have been finally disposed of for more than twenty years.

(2) No original paper bearing date or known to have been filed earlier than the year eighteen hundred shall be destroyed.

(3) Reasonable notice to the public shall be given before any such disposal is made of any paper.

Any rule or order under authority of this section may provide for the method of proof in other causes of the contents of papers disposed of hereunder, and shall govern such proof, notwithstanding any statutory provision requiring any different method of proof.

SECTION 4. This act shall take effect upon its passage, except that section one shall take effect with respect to any district court upon the effective date of a rule or order adopted or made by the supreme judicial court under authority of section three, providing for the disposal of obsolete and useless papers in causes entered in such district court. [Effective date.]

*Approved April 26, 1939.*

# ACTS
AND
# RESOLVES

PASSED BY THE
**General Court of Massachusetts**
IN THE YEAR

# 1998

VOLUME II

PUBLISHED BY
**William Francis Galvin**
SECRETARY OF THE COMMONWEALTH



Chapter 262. AN ACT RELATIVE TO CERTAIN CONTRACTING PROCEDURES IN THE CITY OF BOSTON.

Be it enacted, etc., as follows:

SECTION 1: Section 6 of chapter 418 of the acts of 1890 is hereby amended by striking out the first sentence, as most recently amended by section 1 of chapter 373 of the acts of 1992, and inserting in place thereof the following sentence:- All contracts made by any department of the city of Boston or by any officer, board or official of the county of Suffolk having power to incur obligations on behalf of said county in cases where said obligations are to be paid for wholly from the treasury of said city, shall, when the amount involved is $10,000 or more, or when the contract comes within section 30 of chapter 486 of the acts of 1909, be in writing; and no such contract shall be deemed to have been made or executed until the approval of the mayor of said city has been affixed thereto in writing and the auditor of said city has certified thereon that an appropriation is available therefor or has cited thereon the statute under authority of which the contract is being executed without an appropriation.

SECTION 2. Section 24 of chapter 486 of the acts of 1909 is hereby repealed.

SECTION 3. This act shall take effect upon its passage.

Approved August 10, 1998.

Chapter 263. AN ACT AUTHORIZING FRANKLIN REGIONAL COUNCIL OF GOVERNMENTS TO CONVEY CERTAIN LAND IN THE TOWN OF WHATELY.

Whereas, The deferred operation of this act would tend to defeat its purpose, which is forthwith to immediately authorize the conveyance of certain land, therefore it is hereby declared to be an emergency law, necessary for the immediate preservation of the public convenience.

Be it enacted, etc., as follows:

SECTION 1. The Franklin Regional Council of Governments may convey a certain parcel of land located in the town of Whately, presently used for open space and recreational purposes, to the town of Whately, for nominal consideration, to be used for recreational purposes. Said parcel is shown as parcel 1 on a plan of land entitled "Plan of Land in Whately (Franklin Co.) MA" prepared by C. T. Male Associates, P. C., of Greenfield, Massachusetts which is on file in the offices of said Franklin Regional Council of Governments. The precise configuration of said parcel may be established by a subsequent land survey. Said Franklin Regional Council of Governments may release for nominal consideration, any other property interests it holds in the property to be conveyed to the town of Whately hereunder.

SECTION 2. The Franklin Regional Council of Governments may convey two parcels of land located in the town of Whately, presently used for open space and recreational

Chap. 263

purposes, to the commonwealth, for nominal consideration to be used for recreational purposes. Said conveyance shall include a right of way for access to said parcels. Said Franklin Regional Council of Governments are hereby further authorized to release, for nominal consideration, any other property interests it holds in the property to be conveyed to the commonwealth of Massachusetts hereunder. Said land shall be placed under the care and control of the department of environmental management. Said parcels are shown as parcels 2 and 3 on the plan of land described in section 1.

SECTION 3. Notwithstanding the provisions of subsection (f) of section 567 of chapter 151 of the acts of 1996 or any other general or special law to the contrary, the town of Whately may release, for nominal consideration, any leasehold or other property interests it holds in the property to be conveyed to the commonwealth hereunder.

Approved August 10, 1998.

Chapter 264. AN ACT PROVIDING FOR AN INCREASE IN THE REQUIREMENTS FOR NOMINATION AS A CANDIDATE FOR ELECTIVE OFFICE IN THE CITY OF MALDEN.

Be it enacted, etc., as follows:

SECTION 1. Chapter 169 of the acts of 1881 is hereby amended by striking out section 4 and inserting in place thereof the following section:-

Section 4. All candidates for election to municipal office shall be nominated in accordance with the requirements of chapter 53 of the General Laws; provided, however, nomination papers of candidates for the office of ward councillor shall be signed in the aggregate by not less than 50 voters qualified to vote in said ward in the next municipal election; provided, further, nomination papers for candidates for mayor, school committee and councillor-at-large shall be signed in the aggregate by not less than 200 persons qualified to vote in the next municipal election.

SECTION 2. Section 2 of chapter 550 of the acts of 1955 is hereby repealed.

SECTION 3. This act shall be submitted to the voters of the city of Malden at the regular municipal election to be held in the year 1999 in the form of the following question which shall be placed on the official ballot to be used for the election of city officers at said election "Shall an act passed by the general court in the year 1998 entitled, 'An Act providing for an increase in the requirements for nomination as a candidate for elective office in the city of Malden', be accepted?"

If a majority of the votes cast in answer to said question is in the affirmative, this act shall take effect, but not otherwise.

Approved August 10, 1998.