UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 05-cv-10921-RGS

INTERNATIONAL SALT
COMPANY, LLC
   Plaintiff,

v.

CITY OF BOSTON
   Defendant.

## DEFENDANT CITY OF BOSTON'S REQUESTS FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Defendant, City of Boston (the "City"), in the above captioned action submits the following Requests for Findings of Fact and Conclusions of Law:

### I.   Requested Conclusions of Law.

1. The standard of proof in this civil action is that the Plaintiff, International Salt Company, LLC("International Salt"), bears the burden to prove all the essential elements of its claims by a fair preponderance of the evidence.

2. To prove the existence of an enforceable contract for the City of Boston to purchase salt at a price in excess of $36.42 per ton, the Plaintiff must demonstrate that the officer who allegedly entered the contract on the City's behalf was duly authorized to create such a binding agreement on behalf of the City. Haffner v. Director of Public Safety of Lawrence, 329 Mass. 709, 712 (1953). (Memo pp. 5, 14)

3. It is the responsibility of a party dealing with a public employee to ascertain the extent of the statutory contracting authority possessed by the employee. Sancta Maria Hospital v. City of Cambridge, 369 Mass. 586, 595 (1976). (Memo p.14.)

4. City officials only have legal authority to purchase goods, such as salt, pursuant to the procurement procedures of G. L. c. 30B. G. L. c. 30B, § 17. (Memo p.5)

5. Absent application of G. L. c. 30B, § 8, a contract made without public advertising, receipt of competitive bids, or complying with any other procedure

1

        laid out in G. L. c. 30B, shall not be enforceable and a city cannot make any payments under it.  G. L. c. 30B, § 17. (Memo pp. 5-7.)

6.     The "emergency" procurement provision of G. L. c. 30B, § 8, only creates authority to not comply with a specific statutory requirement where "the time required to comply with [that requirement] would endanger the health or safety of the people or their property."  (Memo pp. 5-7.)

7.     Procurements made pursuant to the emergency provisions of G. L. c. 30B, § 8, must comply with every provision of G. L. c. 30B, "to the extent practicable under the circumstances."  G. L. c. 30B, § 8. (Memo pp. 5-7, 11.)

8.     Procurements made pursuant to the emergency provisions of G. L. c. 30B, § 8, must be limited to the minimum quantity of goods necessary to meet the emergency.  G. L. c. 30B, § 8. (Memo pp. 6-7, 11.)

9.     A contract is only made pursuant to G. L. c. 30B, § 8, if the City's procurement officer exercises his discretion to do so, and the mere fact of an emergency alone is not enough to trigger its application.  G. L. c. 30B, § 8.  (Memo pp. 5-7, 12.)

10.     A contract, to be binding upon a city or town, must be entered into in strict conformity with statutory provisions comprising a city's charter.  U. S. Leasing Corp. v. City of Chicopee, 402 Mass. 228, 231 (1988) (Memo pp. 14-15.)

11.     The plaintiff must prove all essential elements of its claim, including compliance with each and every statutory requirement necessary to create a contract with the City.  Dos Santos v. City of Peabody, 327 Mass. 519, 520–21 (1951). (Memo pp. 13-14.)

12.     The Plaintiff cannot recover from the City unless its alleged contract was: (1) made in writing, and (2) approved in writing by the mayor.  Ma. St. 1890, c. 418, § 6, as amended by Ma. St. 1998, c. 262, § 1.  (Memo pp. 13-15.)

13.     A court may not impose liability on estoppel grounds when a plaintiff fails to prove compliance with statutory municipal contracting requirements, such as those found in Ma. St. 1890, c. 418, § 6, as amended by Ma. St. 1998, c. 262, § 1. Park Drive Towing v. City of Revere, 442 Mass. 80, 84 n.7 (2004). (Memo pp. 15-20.)

14.     A court may not impose liability on estoppel grounds unless a plaintiff proves: (1) a representation made by the estopped party to the plaintiff intended to induce reliance on the part of the plaintiff; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission.  Sullivan v. Chief Justice for Admin. and Management of Trial Court, 448 Mass. 15, 27-28 (2006).  (Memo pp. 18-20.)

15. A court may not impose liability on quantum meruit / unjust enrichment grounds when a plaintiff fails to prove compliance with statutory municipal contracting requirements, such as those found in Ma. St. 1890, c. 418, § 6, as amended by Ma. St. 1998, c. 262, § 1. Park Drive Towing v. City of Revere, 442 Mass. 80, 84 n.7 (2004). (Memo pp. 15-16, 20.)

16. There is no "emergency" exception to the writing and mayoral signature requirements imposed by Ma. St. 1890, c. 418, § 6, as amended by Ma. St. 1998, c. 262, § 1, and the statutory requirements must be met even when the City attempts to enter into a contract in order to respond to some emergency situation. See Quincy v. Brooks-Skinner, Inc., 325 Mass. 406, 413 n.3 (1950); Massachusetts General Hospital v. City of Revere, 385 Mass. 772, (1982), *reversed on other grounds* City of Revere v. Massachusetts General Hospital, 463 U.S. 239 (1983). (Memo pp. 20-28.)

17. To prove the existence of a separate enforceable contract at a price in excess of $36.42 per ton, the Plaintiff must prove that the "offer" it seeks to enforce was accepted. (Memo p.28.)

18. A "merchant" cannot accept an offer to purchase from a non-merchant but unilaterally propose a change of terms. Mass. Gen. L. c. 106 § 2-207(2). (Memo p.30.)

19. A plaintiff seeking to recover "fair market value" of goods has the burden of proving fair market value at trial. (Memo p. 30.)

## II.   Requested Findings of Fact.

In addition to those facts stipulated by the parties, the Defendant, City of Boston, requests that the Court make the following findings of fact based upon the testimony and evidence presented at trial.

1. The City did not face an "emergency" situation with respect to its salt inventories in February or March, 2005. (Memo pp. 7-10.)

2. The time required to fully comply with the public advertising and bid requirements of G .L. c. 30B, § 5, in procuring additional salt in 2005 would not have "endanger[ed] the health or safety of the people." (Memo pp. 7-10.)

3. The City could have solicited competitive quotes for the provision of additional salt without fully complying with the two week advertising period set forth in G. L. c. 30B, § 5, without "endanger[ing] the health or safety of the people." (Memo pp. 10-11.)

4.  The City could have executed a written contract for the provision of additional salt without "endanger[ing] the health or safety of the people." (Memo p. 11, 21-22.)

5.  27,000 tons of salt was not the minimum amount necessary to meet whatever "emergency" circumstances the City confronted in February or March 2005. (Memo pp. 11.)

6.  The City's procurement officer, William Hannon, did not attempt to enter into the alleged contract pursuant to G. L. c. 30B, § 8. (Memo p. 12.)

7.  The Plaintiff's alleged contract to supply the City with rock salt at a price higher than $36.42 per ton was not made in writing.

8.  The Plaintiff's alleged contract to supply the City with rock salt at a price higher than $36.42 per ton was not approved in writing by the Mayor of Boston.

9.  Public Works Commissioner Casazza did not have authority to enter into verbal contracts on behalf of the City in February 2005. (Memo pp. 5-7, 13-15.)

10. No City official ever represented to the Plaintiff that the City would pay more than $36.42 per ton of salt for quantities over 75,000 tons. (Memo pp. 18-19.)

11. It would have been unreasonable for the Plaintiff to rely on any representation by a City official that the City would pay more than $36.42 per ton of salt for quantities over 75,000 tons. (Memo pp. 19-20.)

12. The amount of time that would have been required to get the mayor's written approval for the alleged contract in writing would not have posed a threat to public safety. (Memo pp. 21-22.)

13. The City did not accept a verbal offer by Mr. Jones on February 10, 2005, to supply more salt at an unspecified increased price. (Memo pp. 28-29.)

14. The City did not accept written offers on February 10, 2005, and February 11, 2005 to supply more salt at an unspecified increased price. (Memo p. 29.)

15. The City did not accept a written offer on February 18, 2005 to supply more salt at an increased price. (Memo pp. 29-30.)

16. The salt bids documented by the Plaintiff for January, February, and March 2005 were not relevant to the fair market value of the additional salt supplied to the City. (Memo pp. 31-32.)

17. The Plaintiff did not prove that it sent a "spot" ship to New Jersey to replace a shipment diverted to Boston. (Memo pp. 32-34.)

18. The Plaintiff did not prove when, if ever, it sent a "spot" ship to New Jersey to replace a shipment diverted to Boston.  (Memo pp. 32-34.)

19. The Plaintiff did not prove that it paid a shipping rate of $30 per ton for the "spot" ship, if any, it sent to New Jersey to replace a shipment diverted to Boston. (Memo pp. 32-34.)

20. Fair market value of the additional salt supplied to the City exceeded $42.36 per ton.  (Memo pp. 30-34.)

                         Respectfully submitted,
                         DEFENDANT, CITY OF BOSTON
                         William F. Sinnott
                         Corporation Counsel
                         By its attorney:

February 15, 2005           ___/s/ Adam Cederbaum_____
                         Scott C. Holmes, BBO #544545
                         Adam N. Cederbaum, BBO #661549
                         Assistant Corporation Counsel
                         City of Boston Law Department
                         Room 615, City Hall
                         Boston, MA 02201
                         (617) 635-4042 (SH)
                         (617) 635-4030 (AC)

I, Adam Cederbaum, hereby certify that a copy of the above filing was served upon all parties using the Court's electronic notification system, on February 15, 2008.

                         ___/s/ Adam Cederbaum
                            Adam Cederbaum